SIDLEY AUSTIN LLP
Lee S. Attanasio (LA-3054)
John G. Hutchinson (JH-9328)
Teresa H. Chan (TC-9061)
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

– and –

Peter H. Kang
555 California St., Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200
Fax: (415) 772-7400

Counsel for LG Electronics Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| SILICON GRAPHICS, INC. et al., | Case Nos. 06-10977 (BRL) |
| Debtors. | (Jointly Administered) |

**MOTION OF LG ELECTRONICS INC. FOR (I) RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO SECTION 362(D)(1) OF THE
BANKRUPTCY CODE; AND (II) CONFIRMATION THAT THE AUTOMATIC STAY
DOES NOT APPLY TO PROCEEDINGS RELATED TO POST-PETITION CLAIMS**

    LG Electronics Inc. ("LGE"), by and through its undersigned counsel, hereby

moves (the "Motion") this Court for an order, (i) pursuant to section 362(d)(1) of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules for the Bankruptcy

Court for the Southern District of New York (the "Local Rules"), for relief from the automatic

stay so that LGE may proceed against Silicon Graphics, Inc. ("SGI") in the appropriate district court (the "District Court") for an action seeking damages for pre-petition infringements of certain LGE patents, and (ii) confirming that the automatic stay does not apply to LGE's ability to commence a proceeding against SGI in respect of SGI's continuing, post-petition infringement of such patents. The facts and circumstances supporting this Motion are set forth herein and in the Declaration of Peter H. Kang (the "Kang Decl."), which has been filed concurrently with this Motion. In further support of this Motion, LGE respectfully represents as follows:

## PRELIMINARY STATEMENT

1. By this Motion, LGE seeks relief from the automatic stay in order to commence an action in the District Court against SGI for damages arising from SGI's historic infringements of LGE's patents, an action that would be joined with LGE's claims for post-petition infringement and for injunctive relief prohibiting further infringement by SGI of LGE's patents as to which the automatic stay is inapplicable (the "District Court Action"). For the past six years, SGI has been aware that certain of its products infringe certain LGE patents. Although SGI has seemingly acknowledged that LGE is a creditor in these chapter 11 cases by mailing LGE a proof of claim form, SGI has otherwise ignored LGE's claim: not only has SGI failed to list LGE in its schedules, but the original Disclosure Statement filed by SGI contained no mention of LGE's potential infringement action.[1] LGE therefore files this Motion so that this highly complex patent dispute between LGE and SGI can be resolved in the appropriate forum.

---

[1] In response to the Objection of LG Electronics Inc. to Disclosure Statement For Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 389], SGI added the following language to the Disclosure Statement: "In December 2000, SGI was informed by LG Electronics ("LGE") that LGE believed SGI was infringing eight patents owned by LGE. SGI does not believe that the claims of LGE are meritorious. During the past several years, the parties have exchanged correspondence and held numerous meetings. Although LGE has made a money demand to settle its claims, no formal action has yet been filed. LGE is currently in the process of litigating similar patent claims with several

2

## BACKGROUND

**General Background**

2. LGE is a manufacturer of electronic products, and operates worldwide. LGE maintains its headquarters in Seoul, Korea (Kang Decl. at ¶ 2).

**SGI's Infringements of LGE Patents**

3. SGI is a provider of high-performance computing servers, storage products and services. SGI operates through three business segments: High-Performance Systems, Software and Storage and Global Services (Disclosure Statement, § III.C.1). As part of its High-Performance Systems business, SGI designs and manufactures supercomputers (Disclosure Statement, § III.C.2).[2]

4. On or about August 31, 2000, Su Young Ham, Vice President of LGE, sent a letter to SGI, notifying SGI that certain of SGI's products infringed the following patents owned by LGE (collectively, the "Patents"):

    a.    U.S. Patent No. 4,654,484 (the "484 Patent"): this patent is entitled "Video Compression and Expansion System;"

    b.    U.S. Patent No. 4,747,070 (the "070 Patent"): this patent is entitled "Reconfigurable Memory System;"

    c.    U.S. Patent No. 4,918,645 (the "645 Patent"): this patent is entitled "Computer Bus Having Page Mode Memory Access;"

    d.    U.S. Patent No. 4,926,419 (the "419 Patent"): this patent is entitled "Priority Apparatus;"

---

other system manufacturers and has indicated to SGI that it is reserving all rights concerning its claims pending the resolution of that litigation. SGI has not received any further correspondence from LGE since an April 5, 2004 letter indicating that the lawsuits against the other companies were still pending and that LGE would continue licensing discussions at any time. No further communications regarding the potential action have taken place since that letter."

[2] The description of SGI's businesses in the Disclosure Statement differs slightly from the description on its website, where SGI indicates, among other things, that it also produces servers and clusters as part of its "High-Performance Computing," and that it also maintains a "Visualization" business segment, which markets "LINUX Systems" and "IRIX Workstations." See Kang Decl. at ¶ 4.

e. U.S. Patent No. 4,939,641 (the "641 Patent"): this patent is entitled "Multi-Processor System with Cache Memories;"

f. U.S. Patent No. 5,077,733 (the "733 Patent"): this patent is entitled "Priority Apparatus Having Programmable Node Dwell Time;"

g. U.S. Patent No. 5,379,379 (the "379 Patent"): this patent is entitled "Memory Control Unit With Selective Execution of Queued Read and Write Requests;" and

h. U.S. Patent No. 5,892,509 (the "509 Patent"): this patent is entitled "Image Processing Apparatus Having Common and Personal Memory And Capable Of Viewing And Editing An Image Commonly With a Remote Image Processing Apparatus Over A Network."

(Kang Decl. at ¶ 3).

5. For almost three years, LGE and SGI engaged in discussions regarding the appropriate licensing terms for the Patents. An agreement on licensing terms was not reached, and formal discussions between LGE and SGI were discontinued in mid-2003 because SGI insisted on waiting for the outcome of then-pending patent lawsuits filed by LGE against third parties alleging infringement of most, but not all, of the Patents (the "Infringement Actions") (Kang Decl. at ¶ 5).[3]

6. Since 2003, LGE has continued to provide SGI with notice regarding the status of the Infringement Actions and, in 2004, reiterated its charges of infringement against SGI (Kang Decl. at ¶ 6).

---

[3] In 2000, LGE filed complaints against several third parties in which LGE asserted that certain products and activities of certain computer manufacturers from Taiwan infringed LGE's 645, 641, 733, 379 and 509 Patents. On January 31, 2005, the District Court in the Infringement Actions entered final judgment against LGE on both non-infringement and patent exhaustion defenses, after earlier granting summary judgment on various issues. LGE appealed this judgment to the United States Court of Appeals for the Federal Circuit (the "Federal Circuit"), and the defendants cross-appealed on several issues. On July 7, 2006, the Federal Circuit vindicated LGE's positions, and vacated the District Court's grant of summary judgment on non-infringement and on patent exhaustion, rejecting the defendants' implied license defense, reversing several patent claim construction rulings as requested by LGE and remanding the case for further proceedings. The net effect was that the Federal Circuit rejected most, if not all, of the arguments SGI had asserted as defenses in the licensing discussions with LGE.

**The Chapter 11 Proceedings**

7. On May 8, 2006 (the "Petition Date"), SGI and certain of its direct and indirect subsidiaries in the above-captioned case (collectively, the "Debtors") commenced voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. On May 19, 2006, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors (the "Creditors' Committee").

9. On June 21, 2006, the Debtors filed their schedules of assets and liabilities (the "Schedules"). These Schedules do not reference LGE.

10. On June 30, 2006, the Debtors filed their First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), and their Disclosure Statement to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"). Although the Plan contemplates a restructuring of the Debtors' business that would continue the apparently profitable business segment based on technology that infringes the Patents, neither the Plan nor the Disclosure Statement provides a means for resolving the patent dispute.

**JURISDICTION AND VENUE**

11. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

12. The statutory predicates for the relief sought herein are section 362(d)(1) of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules and Rule 4001-1 of the Local Rules.

**RELIEF REQUESTED**

13. Pursuant to section 362(d)(1) of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules and Rule 4001-1 of the Local Rules, LGE requests that this Court enter an order for relief from the automatic stay "for cause" so that LGE may proceed against SGI in the District Court for damages and injunctive relief related to historic, pre-petition infringements of LGE's Patents. In an abundance of caution, LGE also seeks confirmation that the automatic stay of section 362 does not restrict LGE's ability to commence the District Court Action as it relates to SGI's continuing, post-petition infringement. Upon obtaining relief from the stay to proceed against SGI with respect to pre-petition infringement, the District Court Action would become part of an action addressing post-petition acts of infringement.

**ARGUMENT**

**I. Cause Exists To Grant Relief From the Automatic Stay as to the Pre-petition Infringement Claims**

14. Section 362(d)(1) of the Bankruptcy Code provides that a court must grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). Although the term "for cause" is not defined in the Bankruptcy Code, the Second Circuit has adopted twelve factors to consider in determining whether to grant relief from the stay in order to allow litigation to

proceed in another forum.[4]  See Schneiderman v. Bogdanovich (In re Bogdanovich), 292 F.3d 104, 110 (2d Cir. 2002); see also Sonnax Indus. v. Tri Component Products Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1286 (2d Cir. 1990).  Courts have been clear that not every factor will be relevant in each case, and that every factor need not be assigned equal weight.  See In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 2004).  Indeed, the ultimate determination of whether relief from the stay should be granted is dependent on the particular facts of each case.[5]  See In re Bogdanovich, 292 F.3d at 110.

15. In the present case, the most relevant factors are:

   a. whether relief would result in a partial or complete resolution of the issues;

   b. the interests of judicial economy and the expeditious and economical resolution of the litigation;

   c. whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; and

   d. the impact of the stay on the parties and the balance of harms.

As set out more fully below, each of these factors clearly weighs in favor of granting LGE relief from the automatic stay.

---

[4] The twelve factors are as follows:  (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for a defense; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.  In re Bogdanovich, 292 F. 3d at 110; In re Sonnax Indus., 907 F.2d at 1286.

[5] Although the movant must initially make a showing of "cause" on a motion for relief from the stay, the debtor bears the ultimate burden of disproving the existence of "cause."  See In re Sonnax Indus., 907 F.2d at 1285; see also In re Touloumis, 170 B.R. at 828.

**The Requested Relief Will Result In Complete And Efficient Resolution of the Issues**

16.     The District Court will be able to provide a complete and efficient resolution of the issues between LGE and SGI.  As discussed below, LGE does not require relief from the automatic stay to pursue its post-petition infringement claims in the District Court and, upon the requested clarification from this Court, intends to bring such infringement claims in the District Court.  Relief from the automatic stay would ensure that all of these claims – regardless of whether arising pre- or post-petition – would be heard together.  Not only will this allow for the complete resolution of the issues between LGE and SGI, but also will enable the most efficient, economical resolution of such issues, and avoid inconsistent findings on the same Patents.

17.     Indeed, the District Court Action will involve the same factual circumstances, the same legal issues and the same witnesses for both the pre- and post-petition acts of infringement.  If the stay is not lifted, both LGE and SGI will be forced to try the same facts twice, once in District Court and once in this Court.  More particularly, if the stay is not lifted, both the District Court and this Court would have to hold patent claim construction, or so-called <u>Markman</u>, hearings to interpret the patent claims at issue and make rulings on the proper meaning of the patent claims.  While the Federal Circuit decision in the Infringement Actions has resolved many of the claim construction issues – rulings that would apply in the District Court Action – it is possible that SGI could raise other claim construction issues not addressed by the Federal Circuit.  Moreover, SGI is likely to assert defenses in both forums, requiring two courts to understand the prior art, the file histories of the prosecution of the LGE patents and the level of ordinary skill in the art if there is no lifting of the stay.

18.     The LGE Patents and the SGI products involve complex computer hardware and software technology.  It would be extremely inefficient for two courts to expend

the judicial resources to understand the technology involved and for the parties to expend resources litigating duplicative issues in both forums, and then risk inconsistent results. Accordingly, the interests of judicial economy weigh heavily in favor of lifting the automatic stay so that both the pre- and post-petition infringements of the Patents can be litigated at the same time. See In re Anton, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) (court lifted stay to allow litigation to proceed because of, inter alia, judicial economy, stating that a "[m]ultiplicity of suits involving unnecessary time and expense…should be avoided"); see also In re Marvin Johnson's Auto Service, Inc., 192 B.R. 1008, 1015 (Bankr. N.D. Ala. 1996) (court lifted stay to allow litigation to proceed based on, inter alia, principles of judicial economy that require that "without good reason" judicial resources should not be spent on duplicative litigation).

**The District Court Has the Necessary Expertise to Resolve the District Court Action**

19. At the same time, the resolution of the claims in the District Court Action will require the analysis of a highly specialized area of the law. The District Court Action will involve complex issues relating to patent claim construction, understanding the prior art, legal defenses under the Patent Act (35 U.S. Code), and incorporating and understanding the Federal Circuit's recent opinion in the Infringement Actions. As such, the District Court Action will require significant consideration and interpretation of domestic patent law, and will involve highly technical expert testimony and discovery not typically before bankruptcy courts. The District Court, which has original jurisdiction over such issues pursuant to section 1338(a) of title 28 of the United States Code, clearly has the necessary expertise to resolve these highly specialized issues and, indeed, is a universally recognized forum specializing in patent litigation.

20. In fact, courts have held that issues of patent law should not be resolved by bankruptcy courts, but by district courts. See Singer Co. B.V. v. Groz-Beckert KG (In re

Singer Co., N.V.), 2002 WL 243779 (S.D.N.Y. 2002). In Singer, the defendant moved the court to withdraw the reference for an adversarial proceeding involving patent law issues. The plaintiff argued that withdrawal was not mandatory because, inter alia, the proceeding only involved the "'routine application' of non-complex federal case law." Singer, 2002 WL 243779, at *2. The court disagreed with the plaintiff, finding that, since the proceeding involved "substantial and material consideration" of patent law, the district court was the proper forum for the dispute. Id., at *3. The court therefore withdrew the reference.

21. Although the Singer case arose in the context of a withdrawal of the reference, it is clear that the underlying principle is equally applicable to the present case: proceedings that require the "substantial and material consideration" of patent law, as is the case here, have no place in bankruptcy court. Indeed, bankruptcy courts have granted relief from the automatic stay in other kinds of intellectual property cases in order for an action to proceed in a court with more specialized knowledge. See In re G.S. Distribution, Inc., 331 B.R. 552 (Bankr. S.D.N.Y. 2005) (court lifted automatic stay to allow trademark infringement case to proceed in District Court because, inter alia, such court had the necessary expertise to decide the matter). The specialized nature of these claims therefore provides further grounds for cause to lift the automatic stay.

**The Balance of Harms Favor Granting Relief From the Stay**

22. Finally, the balance of harms clearly weighs in favor of granting LGE relief from the stay. LGE has a strong interest in ensuring that its property rights are protected from unauthorized use: LGE has the exclusive right to sell and use the technology embodied by the Patents. Allowing SGI to continue to infringe these Patents not only harms such rights, but also encourages others to infringe LGE's Patents. Indeed, as courts have made clear, granting

relief from the automatic stay is consonant with the purposes of the Bankruptcy Code "when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." International Bus. Machines v. Fernstrom Storage and Van Co. (In re Fernstrom Storage), 938 F.2d 731, 735 (7th Cir. 1991). Here, SGI is responsible for "creating the problems" that would be at issue in the District Court Action. SGI has infringed, and continues to infringe, the Patents, in spite of being on notice of such infringements for the past six years. It would be highly inequitable to allow SGI to continue to benefit from these infringements and, more egregiously, to use LGE's property as part of its efforts to emerge from these chapter 11 cases to the detriment of LGE, which has sustained and will continue to sustain damages unless SGI is permanently enjoined from further infringing the Patents.

**The Other Factors Are Insufficient to Offset**
**the Factors in Favor of Granting Relief From the Stay**

23. Most of the other factors set out in In re Sonnax Indus. are irrelevant to the facts of this case, and need not be addressed in this Motion. Although there are certain factors that weigh against granting relief from the stay – such as the connection of the District Court Action to the bankruptcy case and the parties' readiness for trial – these two factors are insufficient to offset the fact that (1) the District Court Action will lead to a final resolution of the issues between LGE and SGI; (2) there will be complex, duplicative litigation if the stay is not lifted; (3) the District Court has the necessary expertise and resources to resolve the District Court Action; and (4) LGE has been and will continue to be harmed if SGI is not enjoined from further infringements. These factors are determinative in this case, and mandate that LGE be granted relief from the automatic stay. See Touloumis, 170 B.R. at 828 (not every factor will be relevant in each case and not every factor need be assigned equal weight).

## II. The Automatic Stay Does Not Apply To Actions in Respect of Post-Petition Acts of Infringement

24. With each day that passes since the Petition Date, SGI produces, markets and sells products that infringe the LGE Patents. Courts have been clear that, for purposes of patent law, each act of patent infringement gives rise to a new cause of action. See, e.g., A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1031 (Fed. Cir. 1992); see also Augustine Med., Inc. v. Progressive Dynamics, Inc., 194 F.3d 1367, 1371 (Fed. Cir. 1999). Although few courts have considered this issue in the context of bankruptcy law, courts that have – including the court most recently to have ruled – have generally held that each act of patent infringement gives rise to a new claim. See Hazelquist v. Guchi Moochie Tackle Co., Inc., 437 F.3d 1178, 1180 (Fed. Cir. 2006); see also Baldwin Tech. Corp. v. Dahlgren Int'l, Inc. (In re Dahlgren Int'l, Inc.), 147 B.R. 393, 404 n. 16 (N.D.Tex. 1992) (treating pre- and post-confirmation acts of infringement as separate causes of action); Voice Systems and Services Inc. v. VMX Inc., 26 U.S.P.Q. 2d 1106 (N.D. Okla. 1992) (pre- and post-petition acts of patent infringement independent of each other). Thus, SGI's infringing activities can be separated into pre- and post-petition claims.

25. Courts have also been clear that parties do not need relief from the automatic stay in order to proceed against debtors for post-petition acts of infringement.[6] See Pension Benefit Guaranty Corp. v. LTV Corp. (In re Chateaugay Corp.), 86 B.R. 33, 37-38 (S.D.N.Y. 1988) (automatic stay "does not apply to claims that arise post-petition"); Larami Ltd.

---

[6] Further support for this proposition can be found in 28 U.S.C. § 959(a), which provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury." See Voice Sys., 26 U.S.P.Q. 2d at 1113 (automatic stay does not enjoin action to prohibit post-petition acts of patent infringement pursuant to section 959(a)).

v. Yes! Entertainment Corp., 244 B.R. 56, 58 (D.N.J. 2000) (automatic stay does not enjoin action for damages related to post-petition acts of patent infringement). Accordingly, LGE does not need relief from the automatic stay in order to proceed with the District Court Action with respect to the post-petition acts of infringement.

26. Based on the foregoing, and out of an abundance of caution, LGE requests that this court confirm that the automatic stay does not apply to LGE's ability to bring the District Court Action in respect of SGI's post-petition acts of infringement.

## WAIVER OF MEMORANDUM OF LAW

27. This Motion includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, LGE respectfully requests that the Court waive the requirement under Rule 9013-1(b) of the Local Rules that a separate memorandum of law be submitted.

## NO PRIOR RELIEF

28. No prior request for the relief sought herein has been made by LGE to this or any other Court.

## NOTICE

29. Notice of this Motion has been provided to (i) counsel to the Debtors; (ii) the U.S. Trustee; (iii) counsel to the Creditors' Committee; (iv) counsel to the ad hoc committee of the Debtors' senior noteholders; (v) counsel to Wells Fargo Foothill, Inc., the Debtors' pre-petition secured lender; (vi) counsel to Morgan Stanley Senior Funding, Inc., the agent for the Debtors' post-petition credit facility; (vii) attorney for U.S. Bank National Association, indenture trustee for the Debtors' senior noteholders; (viii) counsel to JPMorgan Chase Bank, indenture trustee for the Debtors' subordinated noteholders; and (ix) those parties entitled to notice

pursuant to this Court's order, dated May 31, 2006, establishing notice procedures for these chapter 11 cases. LGE submits that no other or further notice need by provided.

WHEREFORE, LGE respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: August 3, 2006
       New York, New York

/s/ Lee S. Attanasio
Lee S. Attanasio (LA-3054)
John G. Hutchinson (JH-9328)
Teresa H. Chan (TC-9061)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

– and –

Peter H. Kang
555 California St., Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200
Fax: (415) 772-7400

Counsel for LG Electronics Inc.