WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer, Esq. (GH 7732)
Stephen A. Youngman, Esq. (*pro hac vice*)
Adam P. Strochak, Esq. (AS 4104)
Shai Y. Waisman, Esq. (SW 6854)

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                   :
                                        :        **Chapter 11 Case No.**
                                        :
**SILICON GRAPHICS, INC.,** *et al.*,        :        **06-10977 (BRL)**
                                        :
                    **Debtors.**              :        **(Jointly Administered)**
                                        :
---------------------------------------------------------------x

**DEBTORS' OBJECTION TO THE MOTION OF LG ELECTRONICS
INC. FOR (i) RELIEF FROM THE AUTOMATIC STAY PURSUANT
TO SECTION 362(d)(1) OF THE BANKRUPTCY CODE; AND
(ii) CONFIRMATION THAT THE AUTOMATIC STAY DOES NOT
APPLY TO PROCEEDINGS RELATED TO POSTPETITION CLAIMS**

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Silicon Graphics, Inc. ("Silicon Graphics") and its direct and indirect

subsidiaries in the above-referenced chapter 11 cases, as debtors and debtors in possession

(collectively, the "Debtors" and, together with their non-debtor subsidiaries, "SGI") object to

the motion of LG Electronics, Inc. ("LGE") for (i) relief from the automatic stay pursuant to

section 362(d)(1) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

to proceed with certain patent infringement claims against the Debtors in the appropriate

district court and (ii) confirmation that the automatic stay is inapplicable to LGE's ability to commence a proceeding in a district court against Silicon Graphics with respect to Silicon Graphics' alleged postpetition infringement of certain of LGE's patents (the "Stay Relief Motion").  In support of their objection to the Stay Relief Motion, the Debtors respectfully submit:

## Preliminary Statement

1.      LGE is long on indignation about being "ignored" in these chapter 11 cases, but short on substantive grounds for relief from the automatic stay and purposefully vague about the true nature of the alleged patent infringement claims and the lawsuit LGE wants to commence.  The relief LGE seeks is, in point of fact, quite extraordinary.  LGE seeks not to resume a pending lawsuit brought to a halt by the automatic stay, but rather to *commence an entirely new lawsuit* against Silicon Graphics in an unspecified federal district court.  It seeks this relief on the eve of the confirmation process in these fast-moving chapter 11 cases; the Stay Relief Motion is set for hearing just three weeks before the Court will consider confirmation of a plan of reorganization and a little more than a month before the Debtors are likely to emerge from chapter 11 if the plan is confirmed.

2.      The fast pace of these chapter 11 cases alone rebuts any suggestion that stay relief is necessary to protect LGE's rights.  Even a cursory analysis of the circumstances of LGE's claims discredits its assertions that denial of stay relief would be "highly inequitable" and "egregious[]".  Stay Relief Motion at ¶ 22.  Silicon Graphics manufactures and sells high performance computers.  LGE, in contrast, manufactures and sells consumer electronics.  The companies are not direct, or even indirect competitors, and nothing Silicon Graphics does poses any competitive risk to LGE's business.  The patent

dispute between LGE and Silicon Graphics is not about the survival of LGE's business, or even any single product it sells. It is about money. LGE would like Silicon Graphics to pay to license its patents and uses the threat of costly and burdensome litigation in an attempt to get it to do so regardless of the lack of merit, or detail, to its infringement arguments.

3.      Nothing could make this clearer than the timing of LGE's purported lawsuit. LGE's allegations of infringement are not new. They are ancient. For *six years* LGE has been threatening Silicon Graphics with litigation over the eight patents identified in its motion (two of which have since expired and one of which has been invalidated, negating any suggestion of postpetition infringement as to these three patents). Yet in those six years LGE has never brought any lawsuit against Silicon Graphics, nor sought to join it to a series of pending patent infringement lawsuits it commenced in 2001 against several other computer manufacturers in the United States District Court for the Northern District of California. There simply is no urgency to LGE's claims.

4.      Nor would the commencement of a lawsuit now do anything to expedite or facilitate the completion of these chapter 11 cases. LGE's existing lawsuits in the Northern District of California have been pending since 2001 and still are nowhere near final judgment.[1] Starting a new lawsuit now against Silicon Graphics will do nothing other than distract the Debtors' management from their most important task – confirmation of the plan

---

[1] The United States District Court for the Northern District of California granted summary judgment of non-infringement on all asserted patents in favor of the defendants in that action in January 2005. Recently, the Court of Appeals for the Federal Circuit set aside the District Court's summary judgment orders, finding that certain triable issues of fact precluded the granting of summary judgment in those cases; however, trial dates with respect thereto have yet to be set and will likely not occur for at least a year. In addition, a petition for rehearing *en banc* on whether the patent exhaustion doctrine precludes any of LGE's claims against the defendants based upon the use of certain licensed Intel components in the defendants' products was filed in July 2006 and is still pending.

of reorganization and successful completion of the bankruptcy cases. And, in comparison to adjudication (or estimation for allowance purposes)[2] of LGE's claims in this Court, it could substantially delay administration of the bankruptcy cases.

5. LGE falls far short of demonstrating cause to modify the automatic stay. Application of the *Sonnax* factors demonstrates that the stay should remain in effect, and LGE's claims should be liquidated in this Court as contemplated by the Bankruptcy Code. Indeed, virtually every one of the *Sonnax* factors weighs in favor of maintaining the stay.

6. Equally unavailing is LGE's effort to bootstrap stay relief for claims it concedes are prepetition in nature by seeking to join them with a threatened lawsuit for postpetition claims it alleges are not covered by the automatic stay. This argument misstates the law. Section 362(a)(1) of the Bankruptcy Code bars the "commencement or continuation" of any action or proceeding against the debtor that "was or *could have been commenced*" before the filing of the bankruptcy petition. LGE alleges that Silicon Graphics is engaged in a "continuing, postpetition infringement" of its patents. Stay Relief Motion at p. 2. It offers no argument, however, suggesting that it could not have sued on those claims before the bankruptcy filing. It could have done so as early as 2000 when it first contacted Silicon Graphics. All of LGE claims thus are subject to the automatic stay. *See In re Formica Corp.*, No. 02-10969 (BRL), Tr. of Oral Decision at 35-38 (Bankr. S.D.N.Y. March 26, 2002) (patent infringement action seeking to enjoin debtor's postpetition conduct held subject to the automatic stay) (copy attached as Exhibit A); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Lit.*, 140 B.R. 969, 978-79 (N.D. Ill. 1992) (same).

---

[2] As discussed at paragraph 20, below, the Debtors currently anticipate they will move to estimate LGE's claims for purposes of allowance and/or distribution.

## Background

7.      On May 8, 2006 (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 19, 2006, the Acting United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors.

8.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

9.      This Court has currently scheduled September 19, 2006 as the date to consider confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 27, 2006 (the "Plan").

## LGE's Patent Claims

10.      On or about August 31, 2000, Su Young Ham, Vice President of LGE, sent Silicon Graphics a cursory letter (i) informing Silicon Graphics that LGE owns certain computer technology patents, (ii) soliciting the purchase by Silicon Graphics of a license on the patents, and (iii) alleging that unspecified Silicon Graphics products infringe certain of the patents.  LGE asserted, in vague and conclusory fashion that Silicon Graphics products infringe upon eight patents, without specifying any particular products or providing any detail about how they might infringe.

11.      Two of the eight patents at issue (numbers 4,654,484 and 4,747,070) already have expired and another patent (number 4,918,645) has been declared invalid by the

United States Patent and Trademark Office,[3] so there can be no allegation of any continuing infringement as to those. Although it believes LGE's allegations of infringement are meritless, Silicon Graphics did engage in occasional correspondence and meetings with LGE between 2000 and 2004 in an attempt to better understand and potentially resolve the dispute by entry into a license. This is a common practice in the technology industry because the cost of litigating a patent infringement action – particularly one where the patented technologies alleged to be infringed are peripheral rather than central to the operation of the allegedly infringing products, as is the case here – often is far more than the cost of paying a nominal licensing fee. LGE ultimately failed to offer a license on terms acceptable to Silicon Graphics. From 2004, when the licensing discussions broke off, until filing the Stay Relief Motion on August 3, 2006, LGE never commenced any lawsuit against Silicon Graphics, apparently preferring to devote its resources to its pending lawsuits against other companies in the Northern District of California.

12. On or about August 3, 2006, LGE filed a proof of claim (Claim No. 623) against Silicon Graphics, whereby LGE asserts an unsecured, nonpriority, contingent and unliquidated claim for damages in an amount estimated by LGE to be not less than $75 million. Although LGE has never before asserted that any of the Debtors other than Silicon Graphics has infringed LGE's Patents, LGE filed protective proofs of claim (Claim Nos. 619, 620, 621, 622, 624, 625, 626, 627, 628, 629, 630, 631 and 632) against each of the other Debtors.

13. The Debtors filed an objection to the LGE's proofs of claim on August 25, 2006, which is attached hereto as Exhibit B.

---

[3] The United States Patent and Trademark Offices' invalidation of this patent is currently on appeal to the Board of Patent Appeals and Interferences.

## Argument

### A.     The Automatic Stay is a Fundamental Protection for the Debtors

14.     The automatic stay is one of the fundamental protections afforded Debtors under the Bankruptcy Code.  *See Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection,* 474 U.S. 494, 503 (1986).  The automatic stay provides the debtor with a "breathing spell" after the commencement of a chapter 11 case, shielding it from creditor harassment and from a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring.  *See, e.g., E. Refactories Co. v. Forty Eight Insulations,* 157 F.3d 169 (2d Cir. 1998); *Teachers Ins. & Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 64 (2d Cir. 1986); *Taylor v. Slick,* 178 F.3d 698, 702 (3d Cir. 1999), *cert. denied,* 528 U.S. 1079 (2000); *In re Univ. Med. Ctr.,* 973 F.2d 1065, 1074 (3d Cir. 1992).  The United States Court of Appeals for the Second Circuit has stated that the automatic stay

> is a crucial provision of bankruptcy law.  It prevents disparate actions against debtors and protects creditors in a manner consistent with the bankruptcy goal of equal treatment . . . by ensuring that no creditor receives more than an equitable share of the bankrupt's estate.

*Lincoln Sav. Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n)*, 880 F.2d 1540, 1545 (2d. Cir. 1989), *cert. denied,* 110 S.Ct. 869 (1990), quoted in*, In re Drexel Burnham Lambert Group, Inc.*, No. 90B-10421, 1990 WL 302177 at *5 (Bankr. S.D.N.Y. Dec. 14, 1990).

15.     Moreover, and what is particularly relevant in the instant case, the automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtors' estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  *See SEC v. Brennan*, 230 F.3d

65, 71 (2d Cir. 2000); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1992).

> **B.**      <u>**LGE Has Not Established Cause for Relief from the Stay**</u>

16.     LGE bears the burden of demonstrating "cause" exists to modify the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code. *See e.g., In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 45 (Bankr. S.D.N.Y. 1990). LGE has not and cannot meet this burden. In fact, it is the customary role of the Bankruptcy Court to adjudicate and liquidate disputed claims to expedite the economic administration of chapter 11 cases. No unique or special circumstances exist here to dictate a different result.

17.     While the Bankruptcy Code does not specify what constitutes "cause" to modify the automatic stay, the Second Circuit has developed a list of 12 factors to be considered when determining whether the stay should be modified to permit litigation of a prepetition claim in another forum. *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (listing the 12 factors to be considered); *see also In re Bogdanovich*, 292 F.3d 104, 110 (Bankr. S.D.N.Y. 2005) (same); *In re New York Med. Group, P.C.*, 265 B.R. 408, 412-13 (Bankr. S.D.N.Y. 2001) (same). These factors are as:

> (i)     whether relief from the stay would result in a partial or complete resolution of the issues;
>
> (ii)     whether the Proposed Action has any connection with or interferes with the bankruptcy case;
>
> (iii)     whether the stayed proceeding involves the debtor as a fiduciary;
>
> (iv)     whether a specialized tribunal has been established to hear the stayed cause of action;
>
> (v)     whether the debtors' insurer has assumed full responsibility for defending the stayed action;

(vi)     whether the stayed action primarily involves third parties;

(vii)    whether litigation in another forum would prejudice the interests of other creditors;

(viii)   whether any judgment claim arising from the Proposed Action would be subject to equitable subordination;

(ix)     whether the movant's success in the stayed action would result in a judicial lien avoidable by the debtor;

(x)      whether the interests of judicial economy and the expeditious and economical resolution of litigation are served by lifting the stay;

(xi)     whether the parties are ready for trial in the Proposed Action; and

(xii)    the impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  Not all of these factors are relevant to every instance in which relief from the stay is sought.  *Bogdanovich*, 292 F.3d at 110.

18.     In *In re Formica Corporation*, Case. No. 02-10969 (BRL), Tr. of Oral Decision at 35-38 (Bankr. S.D.N.Y. March 26, 2002), a claimant sought relief from the automatic stay to continue a *pending* patent litigation against the debtor, contending, as does LGE here, that it was entitled to an injunction against postpetition infringement.  This Court found the claimant failed to satisfy its burden, reasoning that: (i) the pending patent litigation would interfere with the debtor's reorganization, (ii) the injunctive relief sought as part of the patent litigation would preclude the debtor from manufacturing and selling certain products, (iii) the claimant would suffer no real hardship if the stay remained in effect, (iv) the claimant had failed to seek injunctive relief in the five months that the patent litigation had been pending, (v) the claimant failed to show that the balance of the harms weighed in favor of modification of the stay, and (vi) the interests of judicial economy and a speedy determination of the patent litigation supported a denial of the claimant's request for relief

from the stay. Application of the *Sonnax* factors to this matter compels the same result as in *Formica*. We discuss below each of the factors pertinent here.

### Sonnax Factors 1, 2 and 10 -- Modifying the Stay Will Result in Only Partial Resolution of the Dispute, Will Interfere with the Chapter 11 Cases and Will Not Promote Judicial Economy

19.     In determining whether relief from the stay should be granted to allow litigation to proceed in a non-bankruptcy forum, one of the most important factors to consider is the effect of such litigation on the administration of the debtor's estate. "Even slight interference with the [chapter 11] administration may be enough to preclude relief in the absence of a commensurate benefit." *In re Curtis*, 40 B.R. 795, 803-807 (Bankr. D. Utah 1984).

20.     Pursuant to section 6.3 of the Debtors proposed Plan, within 45 days after service of the notice of confirmation of the Plan, the Debtors will make the first distribution to holders of allowed claims in Class 6 (General Unsecured Silicon Graphics Claims). Generally, pursuant to section 4.6 of the Plan, each holder of an allowed claim in Class 6 (General Unsecured Silicon Graphics Claims) is entitled to receive its ratable proportion of $9 million in cash. As LGE's patent claims would be treated as disputed claims under the Plan, the Debtors currently intend to move this Court for estimation of LGE's claims for allowance and distribution purposes in order to determine the appropriate reserve, if any, to attribute to LGE's claims. Because the Plan is a "pot plan," the recoveries of the Debtors' other creditors will be significantly affected until LGE's claims and other disputed claims are liquidated. Accordingly, it is critical that LGE's claims be determined expeditiously, either through the claims objection process or estimation. LGE's proposed lawsuit would take years to resolve, and would delay administration of the estate.

21.	One claimant's wish to commence a complex patent litigation against the Debtors should not be allowed to dictate the claims process of these chapter 11 cases and threaten the Debtors' reorganization efforts, particularly where the Court is well-suited to address these issues promptly and efficiently in accordance with the intent and purpose of the Bankruptcy Code.  What LGE wants is to be treated different from every other holder of a disputed claim in these cases.  Given its own lack of urgency in pursuing litigation in the six years preceding the bankruptcy, there is no reason whatsoever to do so.

22.	Nor would LGE's proposed lawsuit result in complete resolution of the matter.  Because general unsecured claims against SGI will be paid from a limited fund, this Court likely would be called upon to estimate LGE's claims even if a separate lawsuit were pending.  Accordingly, LGE's proposed course of action would multiply the proceedings necessary for resolution of its claims, not reduce them.  This is not a situation where allowing the matter to proceed in district court would obviate the need for this Court to address the claims in some fashion.

23.	Judicial economy is served by consolidating the claims allowance process in this Court.  Centralized claims adjudication in a chapter 11 case is designed to promote the efficient and expeditious administration of chapter 11 cases.  *See, e.g., Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (referring to the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court"); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1992) (same).

**Sonnax Factor 4 – No Specialized Tribunal**

24.     LGE argues this Court does not have the necessary expertise to resolve the patent claims because patent litigation involves "highly technical expert testimony and discovery not typically before bankruptcy courts." Stay Relief Motion ¶ 19. This misperceives the inquiry under *Sonnax*. The federal district court is a court of general jurisdiction, not a specialized tribunal, such as an arbitration panel composed specially for the dispute in question, or a court with special subject matter expertise, like the Delaware Chancery Court, which is recognized for its proficiency in resolving corporate governance disputes. Thus, the very court in which LGE wishes to proceed is not a specialized tribunal.

25.     Bankruptcy judges frequently deal with highly technical legal issues, expert testimony, and complex discovery in a wide variety of substantive areas of the law, just as do federal district judges.[4] Adjudication of the "allowance or disallowance of claims against the estate" is a core proceeding that this Court is authorized to hear and determine. 28 U.S.C. § 157(b)(2)(B). The Court has jurisdiction to adjudicate patent infringement claims, as well as expertise, experience, and a panoply of procedural devices very similar to those available in district court to facilitate expeditious resolution of disputed claims. *See*, *e.g.*, Fed. Rules of Bankr. Proc. 7026-7037, 7056, 9014. Accordingly, this factor does not weigh in favor of relief from the stay.

---

[4] *In re G.S. Distribution, Inc.*, 331 B.R. 552 (Bankr. S.D.N.Y. 2005), cited at ¶ 21 of LGE's motion, does not stand for the proposition that stay relief invariably is warranted in intellectual property cases because district courts have more specialized knowledge. Judge Gropper in *G.S. Distribution* simply found in that case that the *Sonnax* factors as a whole justified modification of the stay.

**Sonnax Factor 6 – Litigation**
**Not Involve Primarily Third Parties**

26.     The litigation LGE proposes to commence involves only its claims against the Debtors.  No non-debtor party would be included in the action.  This factor too weighs against lifting the stay.

**Sonnax Factor 7 – Litigation in Another**
**Forum Would Prejudice Other Creditors**

27.     Litigation of claims in a forum other than this Court would be prejudicial to the interests of other creditors.  Distributions to general unsecured creditors of SGI cannot be completed until the aggregate amount of all claims is known.  Therefore, final distributions likely would be delayed while LGE pursues what could be years of litigation in another forum.  And because distributions to general unsecured creditors of SGI will come from a limited fund, it is the other creditors who are the real parties in interest with respect to LGE's prepetition claims.  Litigating these claims in a distant forum, rather than in the centralized bankruptcy claims process, would impair the ability of other creditors to appear and participate in the proceedings, rights they have as parties in interest in the chapter 11 cases.  This factor counsels against lifting the stay.

**Sonnax Factor 11 – The Case Is Not Trial Ready**

28.     LGE's proposed lawsuit, having never been filed in the six years since LGE first contacted Silicon Graphics on this matter, could not be further from trial ready.  LGE concedes this factor weighs against stay relief, but attempts to brush it off as "insufficient" to outweigh other factors.  Stay Relief Motion ¶ 23.  But this factor is not insignificant.  Indeed, in the *Formica* case this Court declined to modify the stay to allow a patent infringement lawsuit to proceed even though the case had been filed substantially in

advance of the petition date. If the *Formica* dispute was not far enough along to warrant stay relief, then LGE's request here is even less meritorious.

**Sonnax Factor 12 – The Balance of Harms Favors the Debtors**

29.     The balance of harms in this matter is decidedly in favor of maintaining the stay. The risks of harm to the Debtors and other parties in interest are numerous and obvious:

- Distraction of senior management from reorganization efforts at a critical time in the restructuring;

- Significant expense to the estate in defending complex patent litigation;

- Inability of creditors to effectively participate in major litigation that could dramatically affect their recoveries;

- Possibility of delayed distributions to creditors;

- Risk that relief from stay in this matter will open the floodgates to requests by other holders of disputed claims to litigate in other forums, vitiating the economic and practical benefits of the centralized claims resolution process contemplated by the Bankruptcy Code and rules.

30.     In contrast, LGE has presented no compelling reason why the balance of harms should be struck in its favor. LGE will have ample opportunity to protect its alleged property rights regardless whether its claims are litigated in this Court or somewhere else. By operation of the Bankruptcy Code, the forum for resolution of all claims (with certain exceptions not applicable here, such as personal injury torts) is this Court. This treatment, enacted into law by Congress and equally applicable to all similarly-situated creditors, hardly imposes any particular hardship on LGE. Every holder of a disputed claim

has an interest in vindicating its rights. If all a creditor had to do was assert that it had a "strong interest" in vindicating its rights in connection with a disputed claim, then the automatic stay would be meaningless.

31.     Equally unavailing is LGE's suggestion that stay relief is appropriate because the Debtors are responsible for "creating the problems" at issue. Whether there is a problem at all (*i.e.*, whether Silicon Graphics has infringed any of LGE's patents) is the very dispute LGE seeks to adjudicate. LGE cannot bootstrap itself into stay relief simply by repeating the same unfounded allegations that it asserts as the basis for its claim. The debtor is *always* the party alleged to have created the problems at issue in any disputed claim. Again, the automatic stay would be meaningless if all one had to do to get relief was allege that the debtor was responsible for the problem at hand.

32.     The problem at hand is the existence of a disputed claim at a time when the Debtors are focused intently on the plan process. Having had knowledge of the alleged infringement for six years and done nothing to commence any lawsuit against Silicon Graphics until now, it is LGE that bears responsibility for "creating the problem." LGE will suffer no harm whatsoever by resolving its claims in this Court in a claims resolution process that will follow confirmation of the plan.

**B.      The Automatic Stay Applies to Allegations
of Continuing Postpetition Infringement**

33.     LGE asserts that the Debtors' alleged infringement of its patents, which it has known about since 2000, are continuing and therefore give rise to separate, postpetition claims not subject to the automatic stay. It is wrong as a matter of law.

34.     As a threshold matter, conspicuously absent from LGE's argument is any reference to the text of section 362 of the Bankruptcy Code. Section 362(a)(1) expressly

provides that the filing of a bankruptcy petition automatically stays "the commencement or continuation. . .of an action or proceeding against the debtor that was or *could have been commenced* before the commencement of the [bankruptcy] case. . ." 11 U.S.C. § 362(a)(1) (emphasis added). There can be no doubt that LGE's proposed lawsuit, whether it relates to alleged prepetition or postpetition acts of infringement, is one that "could have been commenced" before the bankruptcy. Accordingly, under the plain language of section 362(a)(1), it is subject to the stay.

35. The cases LGE cites for the proposition that claimants do not need relief from the stay to proceed against debtors for postpetition acts of infringement are inapposite. *Pension Benefit Guarantee Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33 (S.D.N.Y. 1988), did not even involve a patent claim, either pre- or postpetition, and thus says nothing on the issue. *Larami, Ltd. v. Yes! Entertainment Corp.*, 244 B.R. 56, 58-59 (D.N.J. 2000), also does not further LGE's argument. In *Larami*, the patent in question was not even issued until 90 days *after* the bankruptcy filing. Thus, it is obvious that the patent infringement claims in that case could *not* have been commenced before the bankruptcy and therefore were not subject to section 362(a)(1). The situation here is distinguishable from *Larami*; each of the LGE patents was issued long before the bankruptcy and LGE could have sued on any or all of them prepetition, but elected not to for its own reasons.

36. There are decisions directly contradicting LGE's assertions, including one from this Court. In *Formica*, this Court rejected exactly the argument LGE makes here and concluded that that an action seeking to enjoin alleged postpetition acts of infringement was subject to the automatic stay. *Formica*. Tr. at 35-38. In *Formica*, the Court found persuasive Judge Easterbrook's decision in *Mahurkar*, 140 B.R. 969. The *Mahurkar* court

had concluded that "the continuation during bankruptcy of conduct (such as the sale of catheters) that begun beforehand is most certainly one in which an action was or could have been commenced before the commencement of the case under this title." *Marhurkar*, 140 B.R. at 976. Although the litigant in *Marhurkar* was seeking relief based solely on the postpetition sale of catheters, the court concluded that the action implicated a prepetition claim because the complained of conduct was initiated prepetition. *See also MGM v. MAI Sys. Corp.* (*In re Adv. Computer Servs. of Michigan, Inc.*), 161 B.R. 771, 774-75 (E.D. Va. 1993) (holding that the automatic stay is applicable and bars the commencement of a postpetition antitrust action for declaratory and injunctive relief with respect to conduct that commenced prepetition but continued postpetition).

37.    In *Formica*, this Court noted that 28 U.S.C. section 959(a)[5] is not an automatic exception to the stay where a debtor's postpetition activity is at issue because a bankruptcy court has discretion to stay the prosecution of such action if it would "embarrass, burden, delay or otherwise impede the reorganization proceedings." *Formica*, Tr. at 33. Accordingly, this Court held that requiring the debtor to defend the patent litigation for its alleged postpetition infringement would unduly burden the estate and impede its reorganization. *Id.* at 34-35; *see also In re Telegroup, Inc.*, 237 B.R. 87, 95 (Bankr. D.N.J.

---

[5] Section 959(a) of title 28 of the United States Code provides:

> Trustees, receivers or managers of any property, including **debtors in possession, may be sued, without leave of the court appointing them, with respect to** any of **their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice**, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a) (emphasis added).

1999) (exercising equitable power to enjoin prosecution of postpetition patent infringement suit where the creditor was seeking to liquidate a postpetition claim that could properly be determined in the bankruptcy court); *In re Television Studio School of N.Y.*, 77 B.R. 411, 413 (Bankr. S.D.N.Y. 1987) (exercising discretion to enjoin lawsuit based on postpetition claims when debtor was on the cusp of reorganizing because "management would be forced to divert its attention away from the reorganization process to focus on defending th[e] lawsuit" and the plaintiff would be prejudiced only slightly by the delay); *In re Neuman*, 71 B.R. 567, 572-74 (S.D.N.Y. 1987) (affirming bankruptcy court's decision to enjoin pending state action notwithstanding possible inapplicability of the automatic stay because the state action would interfere with and delay the administration of the debtor's estates, as well as create uncertainty among creditors due to inconsistent rulings in different forums); *Jaytee-Penndel Co. v. Bloor* (*In re Investors Funding Corp.*), 547 F.2d 13, 16-17 (2d Cir. 1976) (affirming bankruptcy court's exercise of discretion to enjoin state court action because it would embarrass, burden, delay or otherwise impede the reorganization proceedings).

    38. To the extent the Court finds that section 959(a) authorizes a lawsuit against the Debtors for a patent infringement that is alleged to have commenced long before the petition date but continued postpetition, it should exercise its discretion to bar LGE from commencing any such action until after consideration of the plan of reorganization on September 19, 2006.

## **Conclusion**

39.     For the foregoing reasons, the Court should deny the Stay Relief

Motion in its entirety.

Dated:  August 28, 2006
        New York, New York

Respectfully submitted,

/s/ Adam Strochak_____
Gary T. Holtzer, Esq. (GH 7732)
Stephen A. Youngman, Esq. (*pro hac vice*)
Adam P. Strochak, Esq. (AS 4104)
Shai Y. Waisman, Esq. (SW 6854)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

and

Ronald S. Lemieux, Esq.
Terry D. Garnett, Esq.
Vincent K. Yip, Esq.
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
25th Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

PROPOSED SPECIAL INTELLECTUAL PROPERTY
COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

# EXHIBIT A

## FORMICA TRANSCRIPT

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK


-----------------------------------------x

             In the Matter
               of                    Case No.
                                     02-10969

FORMICA CORPORATION,

                Debtors.

----------   ------------------------x


                   March 26, 2002

                   United States Custom House
                   One Bowling Green
                   New York, New York 10004


Fnl hrg on DIP financing; hrg on obj, if any,
authorizing Weil, Gotshal & Manges as attorneys for
Debtors; initial case conference; hrg on objs, if
any, to retain claims and noticing agent; mtn to lift
stay by Alloc, Inc.


B E F O R E:

              HON. BURTON R. LIFLAND,

                   Bankruptcy Judge.

1200.1

```
 1              FORMICA CORPORATION

 2

 3   A P P E A R A N C E S :

 4

 5        WEIL, GOTSHAL & MANGES LLP

 6                  Attorneys for Debtors

 7                  767 Fifth Avenue

 8                  New York, New York

 9

10        BY:   STEPHEN KAROTKIN, ESQ., of Counsel

11                      -and-

12        BY:   SCOTT J. FRIEDMAN, ESQ., of Counsel

13

14

15

16

17        DEWEY BALLANTINE LLP

18                  Attorneys for Creditors' Committee

19                  1301 Avenue of the Americas

20                  New York, New York

21

22        BY:   GERALD C. BENDER, ESQ., of Counsel

23

24

25
```

```
1              FORMICA CORPORATION

2

3    A P P E A R A N C E S (Continued):

4

5         BAKER & McKENZIE, ESQS.

6              Attorneys for Alloc, Inc.

7              805 Third Avenue

8              New York, New York

9

10   BY:   JOSEPH SAMET, ESQ., of Counsel

11              -and-

12   BY:   DANIEL J. O'CONNOR, ESQ., of Counsel

13              -and-

14   BY:   SHIMA ROY, ESQ., of Counsel

15

16

17

18        KAYE SCHOLER LLP

19              Attorneys for The Lenders

20              425 Park Avenue

21              New York, New York

22

23   BY:   BENJAMIN MINTZ, ESQ., of Counsel

24

25
```

4

1                    FORMICA CORPORATION

2

3    A P P E A R A N C E S (Continued) :

4

5         CAROLYN S. SCHWARTZ, ESQ.

6              United States Trustee

7              33 Whitehall Street

8              New York, New York

9

10       BY:    TRACY HOPE DAVIS,ESQ., of Counsel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              FORMICA CORPORATION

2            P R O C E E D I N G S

3              THE COURT:  Nobody seems to want to go

4       first.  Second call.

5              MR. KAROTKIN:  Good morning, Your Honor.

6       Stephen Karotkin of Weil, Gotshal & Manges for the

7       Debtors.  I think that there are only a few matters

8       on the calendar this morning, and perhaps we ought to

9       address the one or two that are uncontested, subject

10      to Your Honor's convenience.

11             THE COURT:  Sure.

12             MR. KAROTKIN:  In connection with the

13      hearing on the approval of the final

14      Debtor-in-Possession financing that was noticed in

15      accordance with the Interim Order, which was entered

16      by the Court on March 5, the only objection that was

17      received in connection with the final hearing was

18      filed by the Creditors' Committee.  I am pleased to

19      report that over the last few days, since the

20      objection was filed, there have been various

21      discussions among the financial advisors for the

22      Creditors' Committee, the Debtors and the attorneys

23      for the Debtor-in-Possession lenders, and all of

24      those objections have been resolved, and, to the

25      extent appropriate, have been reflected in a proposed

1          FORMICA CORPORATION

2     revised Order, which we are prepared to submit to the

3     Court.  We also have for the Court's convenience a

4     red lined or black lined copy of the Final Order as

5     compared to the Interim Order, which Your Honor

6     signed.

7              MR. BENDER:  With one caveat, Your

8     Honor.  Gerald Bender of Dewey Ballantine on behalf

9     of the Creditors' Committee.

10             Mr. Karotkin is correct for the most

11    part, that we did resolve all of the open issues with

12    respect to the committee's objection.  There was one

13    issue that we decided to leave in order to put on the

14    record of the hearing, more of a clarification than

15    the change to the Order.  We didn't want to mess up

16    Mr. Karotkin's pre-Order by over drafting it.  And

17    that has to do with the committee's objection

18    relating to the blanket approval of the payment of

19    the fees of the prepetition agent as well as the

20    language in the Order about the payment of the fees

21    of the DIP lenders and the agent.  We want to clarify

22    that there would be some limitation on the payment of

23    those fees on a current basis.  Although there are

24    two agents, many of the lenders are the same, there

25    are two agents and are both using the same counsel

DOYLE REPORTING, INC. - 212-867-8220

1    FORMICA CORPORATION

2    and both using the same financial advisor, and their

3    expectation, as I understand it, is that will

4    continue going forward under the circumstances.  That

5    may change.  But if it does change, the banks'

6    counsel has committed to let us know about it and

7    give us an opportunity to complain about it.  We

8    understand there are no investment bankers involved

9    on behalf of any of the lenders, and that right now

10   it's limited to one law firm and one financial

11   advisor, which is fine with us, and that the

12   individual DIP lender will not be retaining separate

13   counsel and financial advisors.

14        MR. MINTZ:  Banjamin Mintz of Kaye

15   Scholer, counsel for the lenders.

16        That's a correct representation at this

17   point in time.  Kaye Scholer is counsel for both the

18   prepetition bank agent and the postpetition bank

19   agent, and Alverez & Marsal is serving as the

20   financial advisor to both the pre and postpetition

21   administrative agent.  We have agreed with the

22   committee that to the extent that additional counsel

23   is necessary, an investment banker, or other

24   professionals are required by either the pre or

25   postpetition administrative agent, we will so advise

8

1        FORMICA CORPORATION

2    the committee, and if they have an issue with that,

3    they will have an opportunity to come before the

4    Court.

5            MR. BENDER:  Your Honor, there was one

6    other caveat.  We did resolve our general objections.

7    Our primary objection had to do with the payment of

8    current interest and fees, and we did add a

9    reservation of rights to the proposed Order that

10   would permit a recharacterization of those payments

11   if it turns out that the prepetition lenders are not

12   fully secured.  We also had had a concern that we

13   expressed in the objection --

14           THE COURT:  This case has endured a

15   workout period, has it not?

16           MR. BENDER:  No, it hasn't, Your Honor.

17           THE COURT:  Well, your colleague at the

18   table is nodding affirmatively.

19           MR. KAROTKIN:  I am not sure I

20   understand what you mean by a "workout period."

21           THE COURT:  There are periods of

22   negotiations with all of the parties prior to the

23   filing.

24           MR. KAROTKIN:  No, Your Honor.

25           MR. BENDER:  No, Your Honor.

1    FORMICA CORPORATION

2        THE COURT:  All right.

3        MR. BENDER:  Additionally, we did

4    express some concern about the use of DIP proceeds to

5    fund operations of non-Debtors, and particularly

6    foreign subsidiaries.  We did have discussionss with

7    the Debtors and their advisors about that.  Our

8    understanding is that the amount of the funds that

9    would be available to non-Debtors and foreign

10   subsidiaries would be limited by the loan agreement.

11   Our further understanding is that the foreign

12   subsidiaries, in particular, are net funders, not net

13   borrowers in this global business, and based on those

14   discussions and those representations for the time

15   being the committee is satisfied with the way this

16   financing has been structured.

17        It is actually quite complicated and the

18   committee and its advisors needs to learn about it as

19   time goes on.  Even to the extent we discover some

20   other issues relating to those fundings, we would

21   like to reserve our right to come back to the Debtors

22   and the Court as necessary.  But other than that, we

23   did resolve all of our issues with respect to our

24   objection, and we do support the financing.

25        MR. KAROTKIN:  May I approach?

1    FORMICA CORPORATION

2         THE COURT:  Yes, I will entertain the

3    Order.

4         MR. KAROTKIN:  (Handing.)

5         THE COURT:  Based upon this record, I

6    have approved the Order.

7         MR. KAROTKIN:   Thank you, sir.

8         I think the other matter, which is not

9    contested today, Your Honor, is our firm's retention

10   on a final basis.  I believe that the United States

11   Trustee is satisfied with whatever we submitted, and

12   of course we will update our affidavit as necessary

13   on an ongoing basis.

14        THE COURT:  Does anyone want to be

15   heard?

16        MS. DAVIS:  Your Honor, we have no

17   objection to the final retention.

18        THE COURT:  Do you have the Order?

19        MR. KAROTKIN:  I believe, Your Honor,

20   the original Order --

21        THE COURT:  Was self-executing.

22        MR. KAROTKIN:  Yes.  Thank you.

23        I think the remaining item on the

24   calendar is the contested motion by Alloc for relief

25   from the stay.

1    FORMICA CORPORATION

2        THE COURT:  Yes.

3        MR. SAMET:  Good morning.

4        THE COURT:   Good morning.

5        MR. SAMET:  Baker & McKenzie, by Joseph

6    Samet.  Your Honor, I would like to introduce two of

7    my colleagues from our Chicago office, please.  They

8    are Daniel J. O'Connor and Shima Roy.  They have been

9    counsel of record in the prior pending proceeding in

10   the Delaware patent infringement action, which had

11   been previously started prior to the filing of the

12   petition, and introducing them and ask that they be

13   admitted in this case pro hac vice.  Mr. O'Connor and

14   Ms. Roy are members of the Illinois Bar in good

15   standing.  Mr. O'Connor is also admitted in the 7th

16   Circuit, Federal Circuit in California in the

17   Northern and in the Central Districts, and Ms. Roy is

18   a member of the Illinois Bar, and we ask that both of

19   them be admitted for purposes of this case, Your

20   Honor.

21       THE COURT:  Your application is granted.

22       MR. SAMET:  Thank you.

23       MR. O'CONNOR:  Thank you, Your Honor.

24       THE COURT:  Subject to payment, of

25   course, of the admission tax.

1           FORMICA CORPORATION

2                MR. SAMET:  Yes.

3                Your Honor --

4                THE COURT:  I still don't know where

5      this money goes.  But that is beside the point.

6                MR. SAMET:  We won't perform a tracing

7      analysis.

8                Your Honor, I would like to just give a

9      brief introduction and then turn it over to Mr.

10     O'Connor.  This is a lift stay motion, pursuant to

11     Section 362(d) for cause because of the prior pending

12     complaint and civil lawsuit in Delaware before

13     District Judge Farnan.  A Scheduling Order has been

14     set up in that case only back in January with regard

15     to that case in which there was a Markman Hearing

16     scheduled for June 6 of this year, which is a hearing

17     in order to determine the basics of the patent

18     infringement to see if Summary Judgment could be

19     granted thereafter.

20               It does not take a huge amount of time

21     and effort between now and then for a Markman

22     Hearing, in that there are only two hours scheduled

23     for each side to present their case.  And we are

24     looking to lift the stay in order to seek an

25     injunction in order to liquidate the claim.  We are

FORMICA CORPORATION

1
2    not looking to enforce the judgment.  However, it has
3    been made apparent to us that the Debtors are
4    continuing, in our view, to infringe upon the patent;
5    and therefore, it's not just a question of
6    prepetition damages but also a question of
7    postpetition damages, which will give rise to an
8    administrative claim.
9              So we are looking to lift the stay,
10   because in order that the action be determined and in
11   order that these Debtors moves along in its Chapter
12   11 case, we have to have a liquidated claim.  And to
13   the extent we are entitled to an administrative
14   claim, which we believe will run into the millions of
15   dollars, that it is important that this lifting of
16   the stay occur so that there can be a determination,
17   and so that we can both be part of the process and
18   the Debtors can limit its exposure, if possible, to a
19   multi-million dollar damage claims.
20             Your Honor, I would ask if Mr. O'Connor
21   wishes to supplement what I have stated.  But we
22   believe that there is cause to lift the stay under
23   the present circumstances.
24             MR. O'CONNOR:  Good morning, Your Honor.
25   Daniel O'Connor.

1           FORMICA CORPORATION

2                As my partner said, we have a patent

3      infringement case pending in Delaware.  We filed it

4      late last year.  The case involves Formica, which

5      makes a great number of products.  This case involves

6      a new variety of one of their many products.  It's a

7      case that involves a flooring product that was

8      introduced by Formica about a year ago.  As far as we

9      know, they have two varieties of product that are

10     implicated by the case.  One was introduced about a

11     year ago as a tile product, and another introduced as

12     a flooring product in about September.

13               We don't know what percentage of the

14     business of Formica these products comprise.  They

15     have got a lot of products.  These are two new

16     products.  They are continuing to sell the product

17     where they compete with us directly.  One of their

18     largest customers is Lowes, to whom they are selling

19     product in large quantities.  We, through our

20     licensee, sell directly to Lowes as well.

21               I am not an expert in bankruptcy law,

22     Your Honor, I am a patent litigator.  I have read the

23     papers, though, and I am relying on Joe to correct me

24     if I am wrong.  What we would like to do is to go

25     forward in Delaware with relief of this Court.  As I

1       FORMICA CORPORATION

2    read the statute, I think we can proceed under

3    Section 959(a) on a going forward basis in terms of

4    what the Trustee is now doing, because the Trustee is

5    currently selling this product, which we consider to

6    be an ongoing and daily Cause of Action.  And so as I

7    read the cases, I think that there is no need to lift

8    the stay to the extent we are seeking relief going

9    forward, and that would include primarily injunctive

10   relief.  But we nonetheless would like direction and

11   an Order from this Court so we can go to the District

12   Court in Delaware by allowing us to go forward, at

13   least with respect to injunctive relief.

14           Judge Farnan in Delaware conducted a

15   scheduling conference in January where he laid out a

16   rather elaborate schedule where everybody had their

17   say, and the Court was pretty specific when he wanted

18   things to occur.  An important milestone in the case

19   in Delaware is this Markman Hearing, which is a

20   hearing on claim interpretation where it's decided

21   entirely as a matter of law.  There may or may not be

22   witnesses.  There usually are not.  The parties filed

23   a brief twenty-eight days before that hearing and

24   then the hearing itself is scheduled for four hours

25   in the first week of June in Delaware.  So the trial

FORMICA CORPORATION

1

2   of this case is set for about a year from now.

3   Commonly it is the case that after a Markman Hearing

4   the parties, one or the other party, also files a

5   motion for Summary Judgment, in part or in whole.

6         So we think we can go forward.  And we

7   respectfully would like leave of this Court to do so.

8   To the extent there is need to lift the stay, we

9   would ask that it be granted.  Again, I would suggest

10   that what is occurring here is an ongoing

11   infringement.  I don't think the Chapter 11 is

12   intended to allow a party to continue to engage in

13   tortious or otherwise unlawful activity, and that is

14   what we are dealing with here, Your Honor.

15         Thank you.

16         MR. KAROTKIN:  Your Honor, we filed a

17   brief opposition to the motion for relief from the

18   stay, and Mr. O'Connor alluded to the different

19   products that Formica is getting into.  And of course

20   since you have butcher block counters, they are not

21   getting you to buy some of their flooring product.

22         In any event, I think it's proper to put

23   it into context.  We have a litigation which was

24   pending on the date of the filing.  It was commenced

25   only in October.  I believe it was October 4, 2001.

1    FORMICA CORPORATION

2    And the litigation, from what we can tell and what we

3    had been advised by Formica's patent counsel, is

4    really in its very preliminary stages.  There has

5    been exceedingly limited discovery.  No depositions

6    have been taken.  And I believe it was contemplated

7    that many depositions be taken.  Interestingly, and I

8    think significantly, the moving party has not sought

9    any Preliminary Injunctive relief in connection with

10   the matter pending before Judge Farnan.

11          THE COURT:  I note that with great

12   interest, and if they are not to get an injunction

13   now, but they have done nothing ever since the suit

14   was started in Delaware for purposes of getting a TRO

15   or Preliminary Injunction.

16          MR. KAROTKIN:  Exactly.

17          THE COURT:  So what is pending in

18   Delaware is essentially declaratory relief.

19          MR. KAROTKIN:  Exactly.

20          Moreover, and I think again very

21   importantly, what Mr. O'Connor calls a Markman

22   Hearing - I am not a patent litigator - but from what

23   I had been told this is a very, very substantive

24   hearing.  This really is the key issue in the

25   litigation because it goes to the issue of the Alloc

1       FORMICA CORPORATION

2       patent infringement.  It is not a preliminary matter.

3       It is not an unimportant matter.  And more

4       importantly, it is a very expensive and costly matter

5       to litigate, because it is the heart of the issue.

6               And again, I think what Mr. O'Connor

7       neglected to mention is something else we alluded to

8       in our papers, there is a pending proceeding before

9       the International Trade Commission, and we were told

10      actually by Mr. O'Connor just this morning that the

11      decision by the Administrative Law Judge was affirmed

12      by the commission.  And again, from what we

13      understand, and we haven't reviewed the decision, but

14      the claims asserted by Alloc was resoundingly

15      defeated.  And of course we acknowledge that Formica

16      is not a party to those proceedings.  However, we

17      believe that the effect of that decision is extremely

18      important to this pending litigation.

19              All we are saying, Your Honor, is that

20      we filed for Chapter 11 three weeks ago.  We are

21      entitled to a breathing spell.  We understand the

22      allegation is that perhaps this can go forward under

23      959.  We understand that.  However, we also

24      understand the law is quite clear that Your Honor has

25      authority to stay effectively the impact of 959 and

1          FORMICA CORPORATION

2     keep a suit from going forward, at least on a

3     preliminary basis.  And what we are saying to Your

4     Honor, at this stage of the case let's not incur

5     those expenses.  It's expensive to have a Markman

6     Hearing.

7               Let's evaluate, and I think most

8     important, let's evaluate the impact of the recent

9     decision by the Commission and see if there might be

10    a way, in view of that decision, to avoid all these

11    costs and expenses.  And if this can't be resolved on

12    a consensual basis, what we would suggest, Your

13    Honor, is simply let's hold this in abeyance, we

14    suggest 120 days, ninety days would be fine with us,

15    where we can evaluate where we are going, make an

16    informed judgment, speak with these people as to

17    whether or not there is a way to settle these things

18    before the estate incurs unnecessary costs and

19    expenses.  That's simply our proposal.

20              MR. O'CONNOR:  Your Honor, may it please

21    the Court, first in terms of the lack of filing a

22    Preliminary Injunction motion, the Court should

23    understand that in patent cases injunctive relief is

24    unusual.  The right to exclude is the essence of

25    patent cases are clear.  By statute you are entitled

1    FORMICA CORPORATION

2    to injunction.  Nonetheless, in patent cases it is

3    unusual to file a motion for Preliminary Injunction.

4    It is the exception, not the rule.

5              Our need for injunctive relief in this

6    case is neither more or less emergent than in other

7    patent cases, but it is of primary importance in this

8    case, and in every patent case.  We filed this case

9    in the fourth quarter of last year, as counsel said.

10   We got a schedule from Judge Farnan, which gives us a

11   Markman Hearing in June and a trial date in the first

12   quarter of this year.  In a patent case that is

13   lightening speed.  It is twice as fast as a schedule

14   we would get, at least twice as fast as a schedule we

15   would expect to get in the Southern District of New

16   York.  There was no need for us to move for

17   Preliminary Injunction in light of that fast

18   schedule.

19             The fact we did not file a motion for

20   Preliminary Injunction has nothing to do with this

21   case.  We are entitled to injunctive relief and we

22   want that.  And as to the injunctive relief aspect of

23   our case, I think we are entitled to go forward with

24   it under 959, without relief from the stay.  But even

25   if there was required relief from the stay, I think

1                      FORMICA CORPORATION

2      it should be warranted here in light of the fact that

3      you have what is an ongoing violation here.  And for

4      counsel to say they need a breather, that is fine.

5      But they are continuing to sell this product in large

6      quantities, to ship it everyday.  From our point of

7      view, everyday that goes on, each shipment increases,

8      where what we believe one day will be damages and

9      injurious in a competitive sense, again, no more, no

10     less than any other patent case, but it's there and

11     it's the essence of our right.  And I think we should

12     be allowed to go forward.  At the very least, we

13     would like to go forward with the injunctive relief.

14     We could litigate the damages and agree not to

15     enforce any judgment.

16                  In terms of discovery.  On the day that

17     Formica filed, we were ready to ship about five or

18     six boxes of documents to them.  Their written

19     discovery was due to us the following week.  We

20     worked that out.  But discovery, we were right in the

21     midst of discovery.  We had depositions scheduled for

22     either last week or this week in the case, the first

23     round of Formica depositions, so it comes at a

24     critical point in the case.

25                  Again, I am not an expert in bankruptcy

1           FORMICA CORPORATION

2    law.  But my understanding of the Bankruptcy Code and

3    Chapter 11 is that it does not allow parties, such as

4    Formica, to hide behind the bankruptcy law and to

5    continue an ongoing tortious activity.  That is what

6    we see this as.

7              Your Honor, it seems to me under 959 we

8    could sue them today, bring a new suit.  If they

9    introduced a new product today that we thought

10   infringed on one of our patents, I think we can sue

11   them for infringement and there will not be a need to

12   lift the stay to prosecute that suit under 959.  That

13   is how I read it.  And this is no different than

14   that.  You can sue an infringer years after

15   infringement commenced.  We could sue them for

16   infringement tomorrow, and I don't think we would

17   need to be in front of Your Honor.  But we have a

18   pending case, and in light of that we would like an

19   Order from the Court.

20             I would be happy to answer any questions

21   the Court has.

22             (Conferring with Mr. Samet.)

23             MR. O'CONNOR:  I would also like to

24   refer to the ITC case.  That was a true red herring.

25   First of all, he said the claims were defeated in the

1                    FORMICA CORPORATION

2    ITC.  The validity of the patent was upheld.  There

3    are three cases, three patents before the ITC, one of

4    which was the same patent we are suing them for.  The

5    validity of that patent and the other two were

6    upheld.  The claimants were suing.  The validity was

7    challenged and the validity was upheld.

8              The ITC interpreted the claims in a way

9    that they think results in no infringement by the

10   parties to the ITC.  We think the ITC is wrong both

11   in terms of the interpretation and in terms of the

12   result on infringement.  But that has no bearing on

13   Formica.  Formica was not a party to the ITC case.

14   Formica's product is different from the parties in

15   the ITC case.  Furthermore, under established Federal

16   Circuit Court law a decision of the ITC is not

17   binding or conclusive in fact or law on any District

18   Court.

19             THE COURT:  They certainly are

20   instructive.

21             MR. O'CONNOR:  They are entitled to the

22   weight that the Court wishes to accord them, but on

23   fact of law, they are not issue preclusive, and claim

24   interpretation is law.  But nonetheless, that claim

25   interpretation will not result in the disposition of

1          FORMICA CORPORATION

2     the Formica case one way or the other, that was just

3     going to determine what the claim means.  Then there

4     follows the application of that interpretation to

5     Formica's product, which are infringement issues.

6     Counsel and I have discussed this.  We have a

7     different view of how they would come out.

8          All of this is before Judge Farnan.  I

9     will submit that if Formica believes that what is

10    going on in the ITC has any bearing on the schedule

11    of the case before Judge Farnan, that is Judge

12    Farnan's call.  He is very familiar with these kind

13    of cases, and with this case, and he knows what

14    weight to accord or not to accord.  He can size this

15    up.  And I would submit that he is in the best

16    position to make that judgment.

17          And they knew about the ITC case when

18    this case was filed.  They did not move when we were

19    having our scheduling conference.  They did not tell

20    Judge Farnan to hold your horses because of the ITC

21    case.  They could have done that.  They are not doing

22    that.

23          I would submit if they have that issue,

24    if they think that is an issue, they could raise that

25    before Judge Farnan.  He is in control of that

1            FORMICA CORPORATION

2    schedule.  He spent a great deal of time already

3    working on it and is very familiar with these cases.

4    He has had a lot of infringement cases in Delaware.

5            I would submit for purposes of this

6    Court, the focus should be on the ongoing activity.

7    We believe it is tortious.  We believe it is a

8    violation of our patent rights, and we believe that

9    they should not be allowed to continue.

10           I would be happy to answer any questions

11   for the Court.  Thank you.

12           MR. KAROTKIN:  Just very briefly, Your

13   Honor.  First, in connection with your comment as to

14   the weight to be given to a prior ruling of the

15   International Trade Commission, we refer to the Texas

16   Instrument case in our pleading and in addition to

17   the quote referred to on page 4 the Court also said,

18   "A subsequent panel will have powerful incentives not

19   to deviate from that prior holding short of the

20   thoroughly justified grounds."  We would acknowledge

21   it is not preclusive, but it is very, very, very

22   strong precedent.

23           I am told by our patent counsel, despite

24   what Mr. O'Connor said, it's not at all unusual in

25   patent cases to seek preliminary injunctive relief up

```
 1              FORMICA CORPORATION

 2     front.  And we think the reason they didn't do that

 3     is because their case is so weak they couldn't prove

 4     likelihood of success on the merits.

 5              In addition, in connection with the

 6     ruling, the recent ruling by the ITC, the claims

 7     urged by Alloc were rejected, and infringements were

 8     rejected; that is against, basically, the entire

 9     industry other than Formica, which is a very minor

10     player.

11              All we are saying is give us some time

12     to sort out this decision, to speak with them so the

13     estate doesn't have to incur the litigation expenses,

14     without prejudice to their right to come back at a

15     later date.  Maybe this whole thing will ago way.

16     Maybe we will save a lot of money.  And we think that

17     is the most prudent way to proceed at this moment,

18     and certainly believe that Your Honor has the

19     authority to do that notwithstanding 959.

20              Thank you.

21              MR. O'CONNOR:  I would just point out

22     what the portion of the Texas Instrument case that

23     counsel is reading from is taken a little out of

24     context.  What the Federal Circuit was saying there,

25     if you read the paragraph before that and after
```

1       FORMICA CORPORATION

2    counsel's statement, they said, "We have previously

3    held that the decisions by the ITC are not binding

4    nor issue preclusive on fact or law in any District

5    Court, and they are free to relitigate them and

6    should litigate them anew.  Further, we have held,"

7    they said, "that even when we affirmed the ITC, our

8    affirmance is not binding on the District Court."

9    That is an unusual ruling, I think, for the Federal

10   Circuit to say, but they said that.

11            What they said, obviously, raises the

12   question that if we find something, we affirm

13   something as a matter of law, the ITC and you, who is

14   a District Court Judge sitting out there, and an

15   issue comes up in front of you, how are you to view

16   our opinion?  And furthermore, when that case comes

17   up, how are we to take into account our own prior

18   ruling on what we have said is an issue of law?  And

19   they said, well, certainly we will be strongly

20   influenced by that.  We are not going to ignore our

21   prior ruling.  So the Federal Circuit was talking

22   there about how when they sit on an appeal are going

23   to view their own prior ruling on the same issue of

24   law.  That is what that Court has to do.  We are far

25   away from that here.  And moreover, Your Honor,

1    FORMICA CORPORATION

2    whatever the ITC said about this, we are a year away

3    from anything the Federal Circuit will say about

4    that.  If they want to convince Judge Farnan that he

5    should hold his case for a year to allow the Federal

6    Circuit to issue its opinion on appeal of the ITC

7    case, they are entitled to try that.  I don't know

8    how Judge Farnan will receive that.  I don't think he

9    would grant that myself because he would say you

10   want --

11             THE COURT:  Aren't you indulging in

12   speculation at this point?

13             MR. O'CONNOR:  I think we are, Your

14   Honor, as to what Judge Farnan would do.  And in

15   terms of whether or not we should have sort of a

16   Preliminary Injunction, counsel said it's common.

17   It's no more common in patent cases than in any other

18   case.  We are on a fast track in front of Judge

19   Farnan and we are happy with that and we would like

20   to proceed.

21             THE COURT:  If you are going to be

22   harmed or any party that is being harmed, the normal

23   action is to seek immediate relief.

24             Does anybody else want to be heard?

25             (No response.)

1          FORMICA CORPORATION

2          THE COURT:  I want to thank you for your

3     moving answering papers, which were all done on short

4     notice, and perhaps it's for that reason some key

5     cases were not discussed, or discussed on one side

6     and not the other, which are somewhat instructive,

7     especially the famous sturdy chair decision by 7th

8     Circuit Judge Easterbrook, which is also instructive

9     in a situation such as this, which was a patent case.

10         Alloc, Inc., Valinge Aluminum AB and

11    Berry Finance, N.V., collectively Alloc, or the

12    movants, have filed a motion to relief from the

13    Automatic Stay to proceed with its patent

14    infringement claim for damages and injunctive relief.

15    Formica Corp. has filed an objection.

16         Formica, or the Debtors, each filed

17    petitions under Chapter 11 of Title 11 of United

18    States Code on March 5, 2002.  On October 3, 2001,

19    Alloc commenced litigation for patent infringement

20    against Formica in the Delaware District Court

21    seeking an injunction and damages.  We will call that

22    the Patent Action or the Action.  Both Alloc and

23    Formica manufacture and sell in the United States

24    mechanically-locking laminate floor products.  Alloc

25    contends that Formica's sale and manufacture of these

1    FORMICA CORPORATION

2    mechanically-locking floor products constitutes a

3    violation of Alloc's rights as a patent-holder.

4              Alloc raises three arguments in support

5    of its motion.  First, Alloc argues that Section 362

6    of the Bankruptcy Code does not bar its claims for

7    injunctive relief to the extent that the Action seeks

8    to enjoin the alleged postpetition violation of

9    Alloc's patent.  Second, Alloc contends that 28

10   U.S.C. 959(a) creates an exception to the Automatic

11   Stay with respect to the Patent Action, to the extent

12   that the action seeks injunctive relief.  Third,

13   Alloc argues that to the extent the Action is stayed,

14   Alloc is entitled to relief from the Automatic Stay

15   "for cause."

16             Under the heading of the injunctive

17   relief sought to the Patent Action is subject to

18   Section 362(a) of the Bankruptcy Code, Alloc asserts

19   that to the extent the Patent Action seeks injunctive

20   relief for postpetition activity, it is not subject

21   to the Automatic Stay.  This Court disagrees.

22   Section 362(a) of the Bankruptcy Code provides that a

23   petition in bankruptcy "operates as a stay,

24   applicable to all entities of (1) the commencement or

25   continuation, including the issuance or employment of

1       FORMICA CORPORATION

2    process of a judicial action or proceeding against

3    the Debtor that was or could have been commenced

4    before the commencement of the case under this

5    title." 11 U.S.C. 362(a)(1). Because the Patent

6    Action is a judicial action or proceeding commenced

7    prior to the petition date, it is within the scope of

8    Section 362(a). In Mahurkar Double Lumen

9    Hemodialysis Catheter Patent patent litigation, known

10   as Mahurkar, 7th Circuit Judge Easterbrook, sitting

11   by designation, addressed the issue of whether

12   injunctive action lies outside of the scope of

13   Section 362(a)(1) At 140 B.R. 969 (Northern District

14   Illinois 1992). Mahurkar involved patent litigation

15   that had been commenced prepetition against a Chapter

16   11 Debtor, whereby the Plaintiff sought to enjoin the

17   Debtor from continuing its alleged postpetition

18   infringement. The Plaintiff argued that the

19   infringement action was not stayed, because a suit

20   seeking an injunction is not a "judicial action or

21   proceeding" within the meaning of Section 362(a)(1)

22   of the Bankruptcy Code. The Court, however,

23   concluded that "distinctions between law and equity

24   were abolished with the institution of the Rules of

25   Civil Procedure in 1938," and the "Bankruptcy Code.

1    FORMICA CORPORATION

2    following modern practice, speaks of an action or

3    proceeding rather than an action at law or equity."

4    140 B.R. 976.  The Court then concluded that because

5    nothing in Section 362(a)(1) suggests any difference

6    between legal and equitable relief, the Automatic

7    Stay applies to actions seeking an injunction against

8    the Debtor-in-Possession.  Accordingly, actions

9    seeking to enjoin a Debtor-in-Possession's

10   postpetition activity are stayed by Section 362(a),

11   so say Judge Easterbrook.

12           28 U.S.C. 959(a).  This section does not

13   constitute an automatic exception to 362(a) of the

14   Bankruptcy Code with respect to litigation involving

15   a Debtor-in-Possession's postpetition activity.

16   Section 959(a) provides:

17           "Trustees, receivers or managers of any

18   property, including Debtors-in-Possession, may be

19   sued without leave of the Court appointing them with

20   respect to any of their acts or transactions in

21   carrying on business connected with such property.

22   Such action shall be subject to the general equity

23   power of such Court so far as the same may be

24   necessary to the ends of justice, but this shall not

25   deprive a litigant of his right to a trial by jury.

1    FORMICA CORPORATION

2    (emphasis added).

3            In re Television Studio School of New

4    York, Judge Brozman of this Court, discussed the

5    application of 959(a) to the Automatic Stay and a

6    copyright infringement suit commenced against a

7    Debtor-in-Possession.  77 B.R. 411 (Bankruptcy

8    Southern District New York 1987).  The Court began by

9    noting that on its face, Section 959(a) seems to be

10   aimed toward conflicting goals.  See 77 B.R. 411.

11   However, the Court pointed out that the second

12   sentence of Section 959(a) reconciles the statute to

13   Section 362 of the Bankruptcy Code, as it permits

14   Courts to exercise discretion to stay the prosecution

15   of a claim "when necessary to the ends of justice."

16   77 B.R. 411. (concluding that "the policy behind the

17   second sentence is to limit the seemingly unfettered

18   power to bring suit against a Debtor-in-Possession,

19   where to do so would significantly interfere with the

20   orderly administration of the Debtor's estate.")

21   Accordingly, in determining whether Section 959(a)

22   operates to permit litigation against a Debtor, the

23   Court must exercise its "sound discretion to

24   determine whether the action would embarrass, burden,

25   delay or otherwise impede the reorganization

1   FORMICA CORPORATION

2   proceedings." Id. See also In re Telegroup Inc., 237

3   B.R. 87, 95 (Bankruptcy New Jersey 1999); In re

4   Neuman, 71 B.R. 567, 572 (Southern District New York

5   1987).

6           In the instant case, requiring the

7   Debtors to pursue a defense in the Patent Action at

8   this earlier stage of the case would unduly burden

9   the estate and impede the reorganization proceedings.

10  The Debtors commenced their bankruptcy case a mere

11  three weeks ago.  Although the Patent Action was

12  commenced in October 2001, the initial depositions of

13  Formica witnesses have not yet taken place, and

14  according to the Debtors, no Preliminary Injunction

15  has been sought.  See Formica's objection to Alloc

16  Inc.'s motion for relief from the Automatic Stay at

17  paragraph 1.  Further, the argument before this Court

18  recognizes that and concedes that no Preliminary

19  Injunction or stay has been sought in the Delaware

20  Action.

21          Moreover, the Delaware District Court

22  entered a Scheduling Order on January 16, 2002,

23  setting the trial date for April 22, 2003, more than

24  a year away.  In addition, Alloc has filed an action

25  against several entities in the International Trade

1    FORMICA CORPORATION

2    Commission, the ITC, in the matter of Certain

3    Flooring Products, Inv. number 337-TA-443, alleging

4    infringement of the same patent involved in the

5    Patent Action.  Although Formica is not a party to

6    those actions, the Debtors assert that the issues

7    pending in that litigation may have a significant

8    instructive impact on the Patent Action at issue.

9    See the Formica objection to Alloc's motion for

10   relief from the Automatic Stay at paragraphs 3 and 7

11   and this morning's argument.  Accordingly, permitting

12   the Patent Action, which is still in its infancy, to

13   proceed at such an early and critical point in the

14   Debtors' bankruptcy case would force the Debtors to

15   incur additional litigation expenses that may be

16   affected by or mitigated by the ITC proceedings,

17   which the Debtors asserts will be concluded long

18   before the 2003 scheduled trial date.  This Court

19   therefore exercises its discretion to deny the

20   availability of Section 959(a) to Alloc under its

21   equity powers proscribed by the second sentence of 28

22   U.S.C. 959(a).

23           I also find that the movant has not

24   demonstrated cause pursuant to Section 362(d) of the

25   Bankruptcy Code.

1      FORMICA CORPORATION

2          Section 362(d)(1) provides that on

3   request of a party in interest, and after notice and

4   a hearing, the Court shall grant relief from the

5   Automatic Stay for cause.  11 U.S.C. 362(d)(1).  The

6   burden of proof on a motion to modify or lift the

7   Automatic Stay is a shifting one.  Section 362(d)(1)

8   requires an initial showing of cause by the movant,

9   while Section 362(g) places the burden of proof on

10  the Debtor for all issues other than the Debtor's

11  equity in property.  11 U.S.C. 362(d)(1), 11 U.S.C.

12  362(g).  See also In re Sonnax Industries, (Sonnax)

13  at 907 F.2d 1280, 1285 (2d Circuit 1990).  "If the

14  movant fails to make an initial showing of cause,

15  however, the Court should deny relief without

16  requiring any showing from the Debtor that it is

17  entitled to continued protection."  Sonnax 907 F.2d

18  at 1285.  Sonnax provides a number of factors for a

19  Court to consider in determining whether cause exists

20  to lift the stay and permit prepetition litigation to

21  continue.  These factors include: (1) whether the

22  proceeding is connected to or might interfere with

23  the bankruptcy case; (2) whether the bankruptcy

24  petition was filed in bad faith; (3) the balance of

25  the harms; and (4) the interests of judicial economy

1    FORMICA CORPORATION

2    and the expeditious and economical resolution of

3    litigation.  See Sonnax 907 F.2d at 1286.

4         The Patent Action would certainly

5    interfere with the Debtors' reorganization

6    proceedings, which is in its early triage stage.  The

7    remedy sought in the Patent Action would bar the

8    Debtors from manufacturing and selling

9    mechanically-locking laminate floor products.

10   Moreover, Alloc has failed to assert that the

11   Debtors' petition was filed in bad faith.  The third

12   factor, the balance of harms, also fails to establish

13   cause for lifting the Automatic Stay.  Alloc has not

14   shown that it would suffer a real hardship if the

15   stay remains in effect.  Indeed, Alloc has not even

16   sought a Preliminary Injunction pendente lite, in any

17   Court, to enjoin the Debtors from manufacturing and

18   selling floor products during the five months that

19   the Patent Action has been pending.  Lastly, the

20   interests of judicial economy and speedy and

21   economical determination of litigation support a

22   denial of relief from the stay.  The litigation in

23   the Patent Action has not even progressed to the

24   discovery stage, and a trial date has been set for

25   April 2003.  Accordingly, Alloc has failed to meet

1               FORMICA CORPORATION

2      its burden to establish cause to lift or modify the

3      stay under Section 362(d) of the Bankruptcy Code.

4               For the above reasons, Alloc's motion

5      for relief from the Automatic Stay to proceed with

6      its patent infringement claim for injunctive relief

7      is denied without prejudice to renewal after ninety

8      days for factors or cause not currently extant.  It

9      is so ordered.

10              MR. KAROTKIN:  Thank you, sir.

11              MR. O'CONNOR:  Thank.

12              THE COURT:  You may submit an additional

13     Order or this bench ruling can suffice.

14              (No response.)

15              THE COURT:  Not having heard anything,

16     the ruling is so ordered.

17              MR. KAROTKIN:  Your Honor, I don't

18     believe there is anything else on the calendar this

19     morning.

20              THE COURT:  Thank you all.

21              MR. KAROTKIN:  Thank you, sir.

22

23

24

25

1

2

3              C E R T I F I C A T E

4
     STATE OF NEW YORK      )
5                          )  ss.:
     COUNTY OF NEW YORK     )
6

7              I, ROBERT PAYENSON, a

8       Shorthand Reporter and Notary Public within

9       and for the State of New York, do hereby

10      certify:

11             I reported the proceedings in the

12      within-entitled matter, and that the within

13      transcript is a true record of such

14      proceedings.

15             I further certify that I am not

16      related, by blood or marriage, to any of

17      the parties in this matter and that I am

18      in no way interested in the outcome of this

19      matter.

20             IN WITNESS WHEREOF, I have hereunto

21      set my hand this _3rd_ day of _April_____.

22      2001.

23      -----------------------------------------

                ROBERT PAYENSON

24

25

# EXHIBIT B

## DEBTORS' OBJECTION TO LGE CLAIMS

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer, Esq. (GH 7732)
Stephen A. Youngman, Esq. (*pro hac vice*)
Adam P. Strochak, Esq. (AS 4104)
Shai Y. Waisman, Esq. (SW 6854)

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                    :
                                                         :     **Chapter 11 Case No.**
                                                         :
**SILICON GRAPHICS, INC.,** *et al.*,                    :     **06-10977 (BRL)**
                                                         :
                                    **Debtors.**         :     **(Jointly Administered)**
                                                         :
-------------------------------------------------------------x

### NOTICE OF DEBTORS' OBJECTION TO CLAIMS
### OF LG ELECTRONICS, INC. (CLAIM NOS. 619 – 632)

PLEASE TAKE NOTICE THAT a hearing (the "Hearing") to consider the

objection, dated August 25, 2006 (the "Objection"), of Silicon Graphics, Inc. and its

subsidiaries in the above-referenced chapter 11 cases (collectively, the "Debtors"), to

certain proofs of claim filed by LG Electronics, Inc. (Claim No. 619-632), shall be held

before the Honorable Burton R. Lifland, United States Bankruptcy Judge, on **October 4,**

**2006, at 10:00 a.m. (prevailing Eastern Time)**, at the United States Bankruptcy Court,

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004

or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that responses, if any, to the

Objection must be in writing, must conform to the Federal Rules of Bankruptcy

Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New

York, must be filed with the Bankruptcy Court electronically in accordance with General

Order M-242 (General Order M-242 and the User's Manual for the Electronic Case

Filing System may be found at www.nysb.uscourts.gov, the official website for the

Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and

by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format (with a hard

copy delivered directly to Chambers), in accordance with General Order M-242, and any

objection must be served upon:  (i) Silicon Graphics, Inc., 1200 Crittenden Lane,

Mountain View, California 94043, Attention: Barry Weinert, Esq.; (ii) Weil, Gotshal &

Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153,

Attention:  Gary T. Holtzer, Esq. and Shai Y. Waisman, Esq.; (iii) the Office of the

United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st

Floor, New York, New York 10004, Attention:  Lisa L. Lambert, Esq.; (iv) Winston &

Strawn LLP, attorneys for the official committee of unsecured creditors, 200 Park

Avenue, New York, New York 10166, Attention:  David Neier, Esq. and 333 S. Grand

Avenue, Los Angeles, California 90071, Attention:  Eric Sagerman, Esq.; (v) Goodwin

Procter LLP , counsel to the *ad hoc* committee of the Debtors' secured noteholders, 599

Lexington Avenue, New York, New York 10022, Attention:  Allan S. Brilliant, Esq. and

Emanuel C. Grillo, Esq.; and (vi) Sullivan & Cromwell LLP, counsel to Morgan Stanley

Senior Funding, Inc., the agent for the Debtors' postpetition credit facility, 125 Broad

Street, New York, New York 10004-2498, Attention: Eric Lindauer, Esq. and 1888

Century Park East, Los Angeles, California 90067-1725, Attention: Hydee R. Feldstein,

Esq., so as to be received no later than **September 28, 2006, at 4:00 p.m. (prevailing**

**Eastern Time)**.

Dated: August 25, 2006
     New York, New York

              /s/ Adam Strochak
              Gary T. Holtzer, Esq. (GH 7732)
              Stephen A. Youngman, Esq. (*pro hac vice*)
              Adam P. Strochak, Esq. (AS 4104)
              Shai Y. Waisman, Esq. (SW 6854)
              WEIL, GOTSHAL & MANGES LLP
              767 Fifth Avenue
              New York, NY 10153-0119
              Telephone: (212) 310-8000
              Facsimile: (212) 310-8007

              ATTORNEYS FOR THE DEBTORS
              AND DEBTORS IN POSSESSION

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer, Esq. (GH 7732)
Stephen A. Youngman, Esq. (*pro hac vice*)
Adam P. Strochak, Esq. (AS 4104)
Shai Y. Waisman, Esq. (SW 6854)

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :  **Chapter 11 Case No.** |
| | : |
| **SILICON GRAPHICS, INC.,** *et al.*, | :  **06-10977 (BRL)** |
| | : |
| **Debtors.** | :  **(Jointly Administered)** |
| | : |

--------------------------------------------------------------x

### DEBTORS' OBJECTION TO CLAIMS OF
### LG ELECTRONICS, INC. (CLAIM NOS. 619 – 632)

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

      Silicon Graphics, Inc. ("Silicon Graphics") and its direct and indirect

subsidiaries in the above-referenced chapter 11 cases, as debtors and debtors in

possession (collectively, the "Debtors" and, together with their non-debtor subsidiaries,

"SGI") file this objection (the "Objection") to the claims filed against the Debtors by LG

Electronics, Inc. ("LGE"), as reflected in proofs of claim numbers 619–632 (the "LGE

Claims"), and respectfully represent as follows:

## **Background**

1.      On May 8, 2006 (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 19, 2006, the Acting United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Creditors' Committee").

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      On June 30, 2006, the Debtors filed their First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") and the Disclosure Statement for the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement").  On July 27, 2006, the Court entered an order approving the Disclosure Statement.  The hearing on confirmation of the Plan is set for September 19, 2006.

## **Jurisdiction**

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The LGE Claims

5.        On or about August 3, 2006, LGE filed a proof of claim against

each of the Debtors in their respective chapter 11 cases.  Each proof of claim asserts an

unsubstantiated, unsecured, nonpriority, contingent, and unliquidated claim relating to the

Debtors' alleged infringement of the following patents owned by LGE (collectively, the

"Patents"):

(a)        U.S. Patent No. 4,654,484 entitled "Video Compression and Expansion," *which expired on March 31, 2004*;

(b)        U.S. Patent No. 4,747,070 entitled "Reconfigurable Memory System," *which expired on May 24, 2005*;

(c)        U.S. Patent No. 4,918,645 entitled "Computer Bus Having Page Mode Memory Access," *which has been declared invalid upon reexamination by the U.S. Patent and Trademark Office and is currently on appeal to the Board of Patent Appeals and Interferences*;

(d)        U.S. Patent No. 4,926,419 entitled "Priority Apparatus;"

(e)        U.S. Patent No. 4,939,641 entitled "Multi-Processor System with Cache Memories;"

(f)        U.S. Patent No. 5,077,733 entitled "Priority Apparatus Having Programmable Node Dwell Time;"

(g)        U.S. Patent No. 5,379,379 entitled "Memory Control Unit with Selective Execution of Queued Read and Write Requests;" and

(h)        U.S. Patent No. 5,892,509 entitled "Image Processing Apparatus Having Common and Personal Memory and Capable of Viewing and Editing an Image Commonly with a Remote Image Processing Apparatus Over a Network."

6.        In connection with the LGE Claims, on or about August 3, 2006,

LGE filed a motion seeking (i) relief from the automatic stay pursuant to section

362(d)(1) of the Bankruptcy Code to proceed with certain patent infringement claims

against the Debtors in the a district court selected by LGE and (ii) confirmation that the automatic stay is inapplicable to LGE's ability to commence a proceeding in the district court against Silicon Graphics with respect to Silicon Graphics' alleged postpetition infringement of certain of the Patents (the "Stay Relief Motion"). The Debtors intend to file an objection to the Stay Relief Motion.

**The Debtors Request that the**
**Court Disallow and Expunge the LGE Claims**

7.      Pursuant to this Objection, and for the reasons set forth below, the Debtors request that the Court disallow the LGE Claims in their entirety.

**A.      The Debtors Have Not Infringed the Patents**

8.      The LGE Claims relate to LGE's allegations, dating back six years, that unspecified Silicon Graphics' products infringe the Patents. On or about August 31, 2000, LGE sent Silicon Graphics a cursory letter (i) informing Silicon Graphics that LGE owns certain computer technology patents, (ii) soliciting the purchase by Silicon Graphics of a license on the patents, and (iii) alleging that unspecified Silicon Graphics products infringe certain of the patents (the "August 2000 Letter"). In the August 2000 Letter, LGE asserted, in vague and conclusory fashion that Silicon Graphics' products infringe the Patents, without specifying any particular products or providing any detail about how they might infringe. A copy of the August 2000 Letter is annexed as an exhibit to the Stay Relief Motion.

9.      Although Silicon Graphics' believed LGE's allegations of infringement were meritless, Silicon Graphics engaged in occasional correspondence and meetings with LGE between 2000 and 2004 in an attempt to better understand LGE's

claims and to discuss the possibility of a nominal license to resolve LGE's claims. This is a common practice in the technology industry because the cost of litigating a patent infringement action often is far more than the cost of a paying a nominal licensing fee. LGE failed to offer such a license on terms commercially acceptable to Silicon Graphics.

10. During this period, Silicon Graphics also reviewed all information provided by LGE regarding the computer components that LGE claimed infringed its Patents. Based upon the information provided by LGE and Silicon Graphics' knowledge and understanding of its products, Silicon Graphics easily determined that its products do not infringe the Patents and informed LGE of that determination. LGE's allegations of infringement relied on the use of certain computer architectures or third-party components that were not and are not present in Silicon Graphics' products. Rather than provide a product specific analysis to support its allegations, however, LGE provided no further information or analysis to Silicon Graphics regarding its alleged infringement. Indeed, LGE had not filed a lawsuit against Silicon Graphics even as of the initiation of this chapter 11 proceeding, almost six years after first approaching Silicon Graphics regarding its alleged infringement.

11. LGE has failed to demonstrate even a cursory understanding of the Debtors' products and has made no effort to clarify or particularize its allegations. Accordingly, the LGE Claims should be disallowed and expunged.

**B.** **Defenses**

12. The LGE Claims should also be disallowed and expunged on the basis that the Patents and each claim thereof is invalid because they fail to comply with the provisions of the patent laws, including but not limited to sections 102, 103, and 112

of title 35 of the United States Code. *See* 35 U.S.C. §§ 100 *et. seq.* Sections 102, 103, and 112 govern the conditions for patentability such as novelty, loss of right to patent, non-obviousness, written description, enablement, and best mode.

13. Furthermore, the Debtors believe that the LGE Claims should be disallowed and expunged on the basis that such claims are barred: (i) under the doctrine of prosecution history estoppel and that LGE is estopped from claiming that the Patents cover or include any product or service that the Debtors manufacture, sell, or otherwise provide; (ii) under the doctrine of laches; (iii) under the doctrine of equitable estoppel; and (iv) on the grounds that the LGE claims have been exhausted, and/or LGE has granted to the Debtors an implied license to practice the invention.

14. The Debtors reserve their rights to assert additional defenses, if necessary or appropriate, at a later date.

**C.    LGE Claim Nos. 619, 620, 622, And 624 – 632
       Should Be Immediately Disallowed and Expunged
       On The Basis That The Debtors Against Which These
       Claims Are Asserted Cannot Be Liable Under U.S. Patent Law**

15. As discussed above, in connection with LGE's allegations against Silicon Graphics, LGE filed a proof of claim (Claim No. 623) against Silicon Graphics for unsubstantiated and unliquidated damages in an amount estimated by LGE to be not less than $75 million. Although LGE has never before asserted that any of Silicon Graphics' subsidiaries has infringed LGE's Patents, LGE filed protective proofs of claim (Claim Nos. 619, 620, 621, 622, 624, 625, 626, 627, 628, 629, 630, 631 and 632) against each of the other Debtors.

16.     Twelve of the fourteen Debtors in these chapter 11 cases, including, Cray Research, L.L.C.; Silicon Graphics Real Estate, Inc.; Silicon Graphics World Trade Corporation; Silicon Studio, Inc.; Cray Research America Latina Ltd.; Cray Research Eastern Europe Ltd.; Cray Research India, Ltd.; Cray Research International, Inc.; Cray Financial Corporation; Cray Asia/Pacific, Inc; ParaGraph International, Inc.; and WTI Development, Inc. (collectively, the "Non-Operational Debtors") are inactive corporate shells or holding companies that do not participate in SGI's business of manufacturing and selling high performance computers.  Accordingly, the LGE Claims asserted against the Non-Operational Debtors should be immediately disallowed and expunged on the basis that these Debtors cannot, under U.S. patent law, be liable for infringement of the Patents.

17.     Section 271(a) of title 35 of the United States Code provides that:

"Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

35 U.S.C. § 271(a).

18.     Because the Non-Operational Debtors are generally inactive corporations or holding companies and do not make, use, offer to sell, sell, or import into the United States any "patented invention" and are not party to or liable in connection with SGI's contracts with customers and vendors they cannot, under U.S. patent law, be liable for infringement of the Patents.  *See, e.g., Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260 (D. Del. 1989) (finding that a corporation that never produced or sold any products and that was established for the sole purpose of acquiring the stock of other

corporations could not be liable for direct infringement pursuant to section 271(a)); *A. Stucki Co. v. Worthington Industries, Inc.*, 849 F.2d 593 (Fed. Cir. 1988) (holding that the parent company was not liable pursuant to section 271(a) for the infringement activities of its subsidiary where the two companies were distinct and separate corporations).

19.     In contrast to the Non-Operational Debtors, Silicon Graphics, the ultimate parent corporation of all SGI entities, is primarily responsible for SGI's manufacturing operations and is party to the majority of contracts with SGI's suppliers and vendors. Silicon Graphics also owns, maintains, and operates, on its own behalf, the majority of the information systems technology that is required to operate its global business. Silicon Graphics Federal, Inc. ("SGI Federal"), one of the Debtors, is responsible for SGI's defense and security market segment and is party to various contracts with the federal government and other third-parties that contract directly with the government. Accordingly, only Silicon Graphics and SGI Federal either make, use, offer to sell, and/or sell SGI's products in the United States and, therefore, are the only entities that could possibly bear any liability in connection with such products and services.

20.     Accordingly, the LGE Claims asserted against the Non-Operational Debtors (Claim Nos. 619, 620, 622, 624 – 632) should be immediately disallowed and expunged.

### Conclusion

21.     For the foregoing reasons, the Court should disallow and expunge the LGE Claims in their entirety. In the alternative, the Court should, at a minimum, disallow and expunge the LGE Claims asserted against the Non-Operational Debtors

(Claim Nos. 619, 620, 622, 624 – 632) and adjudicate the allowance or disallowance of the LGE Claims asserted against Silicon Graphics and SGI Federal (Claim Nos. 621 and 623, respectively) in this Court.

## Memorandum of Law

22.     This Objection does not raise any novel issues of law and, accordingly, the Debtors respectfully request that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted.

## Notice

23.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Objection on (i) LG Electronics, Inc., (ii) the U.S. Trustee, (iii) counsel to Wells Fargo Foothill, Inc., the agent for the Debtors' prepetition secured lenders, (iv) counsel to the *ad hoc* committee of the Debtors' secured noteholders, (v) counsel to U.S. Bank National Association, indenture trustee for the Debtors' secured noteholders, (vi) counsel to JPMorgan Chase Bank, indenture trustee for the holders of the Debtors' unsecured debentures, (vii) counsel to the Creditors' Committee, (viii) counsel to Morgan Stanley Senior Funding, Inc., the agent for the Debtors' postpetition credit facility, and (ix) those parties entitled to notice pursuant to this Court's order, dated May 31, 2006, establishing notice procedures in the Debtors' chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

24.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  August 25, 2006
      New York, New York

/s/ Adam Strochak
Gary T. Holtzer, Esq. (GH 7732)
Stephen A. Youngman, Esq. (*pro hac vice*)
Adam P. Strochak, Esq. (AS 4104)
Shai Y. Waisman, Esq. (SW 6854)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

and

Ronald S. Lemieux, Esq.
Terry D. Garnet, Esq.
Vincent K. Yip, Esq.
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
25th Floor
Los Angeles, CA 90071-2228
New York, NY 10022
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

PROPOSED SPECIAL INTELLECTUAL
PROPERTY COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                      :
                                                           :      **Chapter 11 Case No.**
                                                           :
**SILICON GRAPHICS, INC.,** *et al.,*                      :      **06-10977 (BRL)**
                                                           :
                           **Debtors.**                    :      **(Jointly Administered)**
                                                           :
-------------------------------------------------------------x

## ORDER DISALLOWING AND EXPUNGING
## CLAIMS OF LG ELECTRONICS, INC. (CLAIM NOS. 619 – 632)

Upon the objection, dated August 25, 2006 (the "Objection"), of Silicon

Graphics, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in

possession (collectively, the "Debtors"), to disallow and expunge the claims of LG

Electronics, Inc. ("LGE") (Claim Nos. 619-632) (the "LGE Claims"), all as is more fully

set forth in the Objection; and the Court having jurisdiction to consider the Objection and

the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing

Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the

Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Objection and the relief requested being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Objection having been provided to

(i) LGE, (ii) the Office of the U.S. Trustee for the Southern District of New York,

(iii) counsel to Wells Fargo Foothill, Inc., the agent for the Debtors' prepetition secured

lenders, (iv) counsel to the *ad hoc* committee of the Debtors' secured noteholders,

(v) counsel to U.S. Bank National Association, indenture trustee for the Debtors' secured

noteholders, (vi) counsel to JPMorgan Chase Bank, indenture trustee for the holders of the Debtors' unsecured debentures, (vii) counsel to the statutory committee of unsecured creditors, (viii) counsel to Morgan Stanley Senior Funding, Inc., the agent for the Debtors' postpetition credit facility, and (ix) those parties entitled to notice pursuant to this Court's order, dated May 31, 2006, establishing notice procedures in the Debtors' chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Objection is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the LGE Claims are disallowed and expunged in their entirety; and it is further

ORDERED that the requirement pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that the Debtors file a separate memorandum of law in support of the Motion is deemed satisfied.

Dated: October __, 2006
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE