**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11 Case No.** |
| | : | |
| **SILICON GRAPHICS, INC.,** *et al.*, | : | **06- 10977 (BRL)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

## DECLARATION OF ANDREW B. SAMETT IN SUPPORT OF CONFIRMATION OF THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED JULY 27, 2006

ANDREW B. SAMETT, makes this declaration, and says:

1.      I am a Managing Director in the Investment Banking Group at Bear, Stearns & Co. Inc. ("Bear Stearns"). By order dated July 27, 2006, the Court approved the retention of Bear Stearns by Silicon Graphics, Inc. ("Silicon Graphics") and certain of its direct and indirect subsidiaries in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") to render investment banking and financial advisory services to the Debtors.

2.      I submit this declaration in support of confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 27, 2006 (as may be amended, the "Plan").[1] Unless otherwise stated, I have personal knowledge of the facts stated in this declaration.

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan.

3. I have played a significant role in numerous chapter 11 restructurings, advising debtors, stakeholders, and purchasers in a wide array of cases and have extensive experience working with companies in distressed situations. In addition to representing the Debtors in their restructuring, current and recent restructuring assignments that I or other Bear Stearns professionals have been involved with include: Adelphia Communications Corp., aaiPharma Inc., Nextwave Telecom, Inc., IWO Holdings, Nextel International, Proxim Communications, Andersen Worldwide, Iusacell, American Cellular, and iPCS.

## Liquidation Analysis

4. At the request of the Debtors, I have been directly involved in the preparation by professionals at Bear Stearns, in consultation with the management of the Debtors, of an analysis (the "Liquidation Analysis") of the estimated recoveries that holders of claims and equity interests in the Debtors would receive if the Debtors were liquidated under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). The Liquidation Analysis is set forth in Exhibit F to the Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 27, 2006 (as it may be amended, the "Disclosure Statement") and attached hereto as Exhibit A, and is subject to all the assumptions and limitations set forth therein. A Liquidation Analysis has been prepared for each of Silicon Graphics, Silicon Graphics Federal, Inc. ("SGI Federal"), and Silicon Graphics World Trade Corp. ("SGI World Trade").

5. The Liquidation Analysis examines the effects that a conversion of the Debtors' chapter 11 cases to cases under chapter 7 could have on the proceeds that

could otherwise be available for distribution to holders of claims and equity interests in the Debtors. The Liquidation Analysis is based on information from the Debtors' consolidating balance sheet as of March 31, 2006, which was the most recent available quarter-end consolidating balance sheet, adjusted for the forecasted net cash position of the Debtors at September 30, 2006.[2]

      6.     Unless noted otherwise, the Liquidation Analysis assumes that the Debtors would commence a chapter 7 liquidation on September 30, 2006 and that the liquidation of the Debtors would result in the insolvency and liquidation of each of the Debtors' non-Debtor subsidiaries, which primarily resell and service the Debtors' products. In general, Bear Stearns provided information to the Debtors' management with respect to the chapter 7 liquidation process, and reviewed management's assumptions regarding the cessation of its business as a consequence of a chapter 7 process. Among other things, Bear Stearns also assisted in the identification of the Debtors' assets that would be the subject of a chapter 7 liquidation, and consulted with the Debtors in providing estimates of the proceeds that could be obtained from the various assets in the context of a chapter 7 process, as well as the costs associated with liquidating those assets by a chapter 7 trustee and its professionals. Bear Stearns relied on the information provided by management as well as the Debtors' other advisors to determine the liquidation proceeds of the Debtors' cash and cash equivalents, accounts

---

[2] Due to the number of Debtor and non-Debtor subsidiaries and the intercompany relationships between them, the March 31, 2006 consolidating balance sheet provided the best approximation of the assets to be liquidated and the resulting proceeds available to the Debtors if the Debtors were to be liquidated in accordance with chapter 7 of the Bankruptcy Code.

receivable, inventory, property plant and equipment, and other assets. The Liquidation Analysis contains detailed notes and assumptions that underlie the analysis.

7.      The Liquidation Analysis presumes that a chapter 7 liquidation of the Debtors would occur over a period of approximately 120 days for all assets with the exception of the company's intellectual property and certain litigation claims against third parties.[3] The Liquidation Analysis further presumes that there will be no recoveries from any potential preference or avoidance actions. I believe the estimated value of the Debtors' assets in a hypothetical chapter 7 liquidation, as set forth in the Liquidation Analysis, would be insufficient to satisfy most of the Debtors' debt obligations.

8.      The Liquidation Analysis for Silicon Graphics assumes that first-lien creditors would be satisfied first from proceeds of collateral in which the second-lien creditors do not have a security interest. Based on the estimated recoveries in a hypothetical chapter 7 liquidation of the Debtors, the net proceeds from a chapter 7 liquidation would not enable all of Silicon Graphics' secured creditors to recover in full on their secured claims. Holders of secured first-lien/debtor-in-possession financing claims against Silicon Graphics, SGI Federal, and SGI World Trade would, in the aggregate, recover 100% of their claims in both the "low" and "high" hypothetical percentage recoveries set forth in the Liquidation Analysis. Specifically, the Liquidation Analysis provides that holders of secured first-lien claims against Silicon Graphics would recover at most 77% of their claims from Silicon Graphics and the remainder, as

---

[3] Intellectual Property is expected to be liquidated over a period of six to nine months and certain litigation claims are assumed to be placed in a liquidating trust to maximize their value.

described below, from SGI Federal and SGI World Trade. Silicon Graphics' secured second-lien creditors would recover at most 44% of their claims.

9. Furthermore, based on the hypothetical recoveries in our analysis, a chapter 7 liquidation would yield no recovery for Silicon Graphics' administrative claims, priority claims, general unsecured claims, and equity holders. Among other reasons, this is primarily due to (i) the likelihood that the assets of the Debtors would have to be sold or otherwise disposed of in a less orderly fashion over a shorter period of time, (ii) additional administrative expenses involved in the appointment of a trustee and (iii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of leases and other executory contracts in connection with the cessation of the Debtors' operations.

10. With respect to SGI Federal, the Liquidation Analysis shows that proceeds from a chapter 7 liquidation would allow SGI Federal's secured first-lien secured creditors to recover at most 12% of their claims from SGI Federal and the remainder of their claims from Silicon Graphics and SGI World Trade. Based on the estimated recoveries in our analysis, a chapter 7 liquidation would yield no recovery for SGI Federal's administrative claims, priority claims, general unsecured claims and equity holders.

11. With respect to SGI World Trade, the Liquidation Analysis shows that proceeds from a chapter 7 liquidation would allow SGI World Trade's secured first-lien creditors to recover at most 17% of their claims from SGI World Trade and the remainder of their claims from Silicon Graphics and SGI Federal. Based on the hypothetical percentage recovery in our analysis, a chapter 7 liquidation would yield no

recovery for SGI World Trade's administrative claims, priority claims, general unsecured claims and equity holders.

12.    In conducting the Liquidation Analysis, we have relied upon and assumed the accuracy and completeness of all financial and other information furnished by the Debtors or any third party and all publicly available information. We relied upon estimates prepared by CRA International, Inc. ("CRA") of the liquidation value as of June 30, 2006 of certain intellectual property assets, as more fully described in the Declaration of Brian R. Oliver of CRA filed contemporaneously herewith. We did not attempt to independently audit or verify any such information, nor did we make an independent appraisal of the assets or liabilities of the Debtors. With respect to financial forecasts, we have assumed that they have been reasonably prepared on bases reflecting the best currently available estimates and judgments of management of the Debtors as to the future financial performance of the Debtors. The estimates contained in the Liquidation Analysis are not necessarily indicative of actual values or predictive of future results or values, which may be significantly different from those suggested by such analysis. As previously noted, in addition to the assumptions and qualifications set forth herein, the Liquidation Analysis is subject to the assumptions and qualifications set forth in the Liquidation Analysis attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of
September, 2006.

/s/ Andrew B. Samett
Andrew B. Samett
Managing Director
Bear, Stearns & Co. Inc.

recovery for SGI World Trade's administrative claims, priority claims, general unsecured claims and equity holders.

12.    In conducting the Liquidation Analysis, we have relied upon and assumed the accuracy and completeness of all financial and other information furnished by the Debtors or any third party and all publicly available information. We relied upon estimates prepared by CRA International, Inc. ("CRA") of the liquidation value as of June 30, 2006 of certain intellectual property assets, as more fully described in the Declaration of Brian R. Oliver of CRA filed contemporaneously herewith. We did not attempt to independently audit or verify any such information, nor did we make an independent appraisal of the assets or liabilities of the Debtors. With respect to financial forecasts, we have assumed that they have been reasonably prepared on bases reflecting the best currently available estimates and judgments of management of the Debtors as to the future financial performance of the Debtors. The estimates contained in the Liquidation Analysis are not necessarily indicative of actual values or predictive of future results or values, which may be significantly different from those suggested by such analysis. As previously noted, in addition to the assumptions and qualifications set forth herein, the Liquidation Analysis is subject to the assumptions and qualifications set forth in the Liquidation Analysis attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of
September, 2006.

Andrew B. Samett
Managing Director
Bear, Stearns & Co. Inc.

# EXHIBIT A

## Liquidation Analysis

## Liquidation Analysis

Pursuant to section 1129(a)(7) of the Bankruptcy Code (often called the "Best Interest Test"), each holder of an impaired Claim or Equity Interest must either (i) accept the Plan, or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such non-accepting holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. In determining whether the Best Interest Test has been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in chapter 7. The gross amount of Cash available would be the sum of the proceeds from the disposition of the Debtors' assets and the Cash held by the Debtors at the commencement of their chapter 7 cases. Such amount then would be reduced by the costs and expenses of the liquidation. Prior to determining whether the Best Interest Test has been met for general unsecured creditors, further reductions would be required to eliminate Cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy chapter 11 Administrative Expense Claims, tax, and priority claims that are senior to general unsecured claims, including any incremental Administrative Expense Claims that may result from the termination of the Debtors' business and the liquidation of their assets. Any remaining Cash would be available for distribution to general unsecured creditors and Equity Interest holders in accordance with the distribution hierarchy established by section 726 of the Bankruptcy Code.

The Debtors prepared these liquidation analyses with the assistance of Bear Stearns and the Debtors' other advisors. A liquidation analysis has been prepared for each of Silicon Graphics, Inc., Silicon Graphics Federal, Inc., and Silicon Graphics World Trade Corp. The liquidation analyses reflect the Debtors' estimate of the Cash proceeds, net of liquidation-related expenses, that would be realized if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code. Underlying the liquidation analyses are a number of estimates and assumptions that although considered reasonable, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management. THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSES WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.

The liquidation analyses assume a liquidation period of 120 days for all assets with the exception of the company's intellectual property and certain litigation claims against third parties. Intellectual property is expected to be liquidated over a period of six to nine months. Certain litigation claims are assumed to be placed in a liquidating trust to maximize their value. It is also assumed that there are no recoveries from any potential preference or avoidable transactions.

The liquidation analyses are based on the Debtors consolidating balance sheet at March 31, 2006, the most recent available quarter-end consolidating balance sheet,

adjusted for the forecasted net Cash position of the Debtors at September 30, 2006. Due to the number of Debtor and non-debtor subsidiaries and the inter-company relationships between them, the March 31, 2006 consolidating balance sheet provides the best approximation of the assets to be liquidated and the resulting proceeds available to the Debtors if the Debtors were to be liquidated in accordance with chapter 7 of the Bankruptcy Code.

The liquidation analyses assume that the liquidation of the Debtors would result in the insolvency and liquidation of each of the Debtors' non-debtor subsidiaries. Specifically, it is assumed that the Debtors' conversion to a chapter 7 would deprive these non-debtor entities, which primarily resell and service the Debtors' products, of a product to sell as well as disrupt their funding which is facilitated through cross-border inter-company relationships. For all non-debtor entities, a liquidation analysis was performed applying liquidation value realization assumptions consistent with those used in the Debtors' liquidation analyses (as described below), making adjustments for any material asset-specific and local jurisdictional issues. The results of these analyses determined the realizable value in a liquidation for the net Intercompany Accounts Receivables from these non-debtor subsidiaries to the Debtors as well as the value of the Investment In Subsidiaries accounts for each Debtor.

## Silicon Graphics, Inc.
## Hypothetical Liquidation Analysis

| | Note | Book Value | Hypothetical Percentage Recovery Low | High | Estimated Liquidation Value Low | High |
|---|---|---|---|---|---|---|
| **Assets** | | | | | | |
| Cash and Cash Equivalents | 1 | $ 45.9 | 100% | 100% | $ 45.9 | $ 45.9 |
| Restricted Cash and Cash Equivalents | 2 | 1.2 | 0% | 0% | - | - |
| Accounts Receivable | 3 | 11.3 | 42% | 53% | 4.7 | 6.1 |
| Inventory, net | 4 | 85.8 | 18% | 33% | 15.5 | 27.9 |
| Property Plant & Equipment, net | 5 | 33.5 | 19% | 20% | 6.2 | 6.7 |
| Other Assets | 6 | 31.6 | 4% | 11% | 1.3 | 3.6 |
| Intercompany Receivable from SGI Federal, net | 8 | 55.0 | 0% | 0% | - | - |
| Intercompany Receivables from non-debtors, Net | 9 | 41.6 | 20% | 23% | 8.1 | 9.5 |
| Investments In Subsidiaries | 10 | | | | | |
| SGI Federal | | - | 0% | 0% | - | - |
| SGI World Trade | | 54.7 | 0% | 0% | - | - |
| Non-debtor subsidiaries | | 6.6 | 9% | 9% | 0.6 | 0.6 |
| Total | | 61.3 | | | 0.6 | 0.6 |
| Goodwill | 7 | - | | | - | - |
| Intellectual Property and Litigation Claims | 7 | 12.9 | 0% | 0% | 25.1 | 55.5 |
| Net Proceeds Available For Distribution | | $ 380.1 | | | 107.4 | 155.7 |
| **Less:** | | | | | | |
| Secured First Lien / DIP Claims | | 100.0 | 77% | 71% | 76.7 | 70.8 |
| Secured Second Lien Claims | | 191.0 | 16% | 44% | 30.7 | 85.0 |
| Estimated Proceeds Available After Secured Claims | | | | | - | - |
| **Less:** Administrative & Priority Claims | 11 | | | | 30.4 | 32.4 |
| *Estimated Recovery for Administrative & Priority Claims* | | | | | *0.0%* | *0.0%* |
| Estimated Proceeds Available For Unsecured Claims | | | | | $ - | $ - |
| **Unsecured Claims** | 12 | | | | | |
| First Lien Deficiency Claim | | | | | - | - |
| Second Lien Deficiency Claim | | | | | 160.3 | 106.0 |
| General Unsecured Claims | | | | | 112.3 | 112.3 |
| Cray Unsecured Debentures | | | | | 56.8 | 56.8 |
| Intercompany Payables to Non-debtors | 13 | | | | 98.8 | 98.8 |
| | | | | | $ 428.1 | $ 373.8 |
| *Estimated Recovery for Unsecured Creditors* | | | | | *0.0%* | *0.0%* |

## Silicon Graphics Federal, Inc.
## Hypothetical Liquidation Analysis

| | Note | Book Value | Hypothetical Percentage Recovery Low | High | Estimated Liquidation Value Low | High |
|---|---|---|---|---|---|---|
| **Assets** | | | | | | |
| Cash and Cash Equivalents | | $ 0.0 | 100% | 100% | $ 0.0 | $ 0.0 |
| Accounts Receivable | A | 20.1 | 42% | 53% | 8.4 | 10.8 |
| Inventory, net | | (0.2) | 0% | 0% | - | - |
| Property Plant & Equipment, net | B | 0.9 | 0% | 3% | - | 0.0 |
| Other Assets | C | 6.1 | 13% | 22% | 0.8 | 1.4 |
| Intercompany Receivables from non-debtors, Net | | 0.0 | 44% | 58% | 0.0 | 0.0 |
| Net Proceeds Available For Distribution | | $ 27.1 | | | 9.2 | 12.2 |
| **Less:** | | | | | | |
| Secured First Lien / DIP Claims | | 100.0 | 9% | 12% | 9.2 | 12.2 |
| Secured Second Lien Claims | | 191.0 | 0% | 0% | - | - |
| Estimated Proceeds Available After Secured Claims | | | | | - | - |
| **Less: Administrative & Priority Claims** | D | | | | 1.2 | 1.3 |
| *Estimated Recovery for Administrative & Priority Claims* | | | | | *0.0%* | *0.0%* |
| Estimated Proceeds Available For Unsecured Claims | | | | | - | - |
| **Less:** | | | | | | |
| Unsecured Claims | E | | | | | |
| Intercompany Payable to Silicon Graphics | | | | | 55.0 | 55.0 |
| General Unsecured Claims | | | | | 65.4 | 65.4 |
| | | | | | $ 120.3 | $ 120.3 |
| *Estimated Recovery for Unsecured Claims* | F | | | | *0.0%* | *0.0%* |

## Silicon Graphics World Trade Corp
## Hypothetical Liquidation Analysis

| | Note | Book Value | Hypothetical Percentage Recovery | | Estimated Liquidation Value | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| **Assets** | | | | | | |
| Cash and Cash Equivalents | | $ 0.0 | 100% | 100% | $ 0.0 | $ 0.0 |
| Intercompany Receivable from Silicon Graphics, Inc. | i | 2.0 | 0% | 0% | - | - |
| Intercompany Receivables from non-debtors, Net | ii | 3.8 | 1% | 1% | 0.0 | 0.0 |
| Investments In Subsidiaries | iii | | | | | |
| World Trade, BV | | 36.8 | 38% | 46% | 14.0 | 17.0 |
| Other | | 12.2 | 0% | 0% | - | - |
| Total | | 49.0 | | | 14.0 | 17.0 |
| Net Proceeds Available For Distribution | | $ 54.8 | | | 14.0 | 17.0 |
| | | | | | | |
| **Less:** | | | | | | |
| Secured First Lien / DIP Claims | | 100.0 | 14% | 17% | 14.0 | 17.0 |
| Secured Second Lien Claims | | 191.0 | 0% | 0% | - | - |
| | | | | | | |
| Less: Administrative & Priority Claims | iv | | | | 0.4 | 0.5 |
| *Estimated Recovery for Administrative & Priority Claims* | | | | | *0.0%* | *0.0%* |
| | | | | | | |
| Estimated Proceeds Available For Unsecured Claims | | | | | - | - |
| | | | | | | |
| **Less:** | | | | | | |
| Unsecured Claims | | - | | | - | - |
| *Estimated Recovery for Unsecured Claims* | | | | | - | - |
| | | | | | | |
| Estimated Proceeds Available For Shareholders | | | | | $ - | $ - |

**Silicon Graphics Inc. -- Footnotes to Liquidation Analysis**

1.      **Cash and Cash Equivalents**

Silicon Graphics has estimated Cash and Cash Equivalents of $45.9 million at September 30, 2006. It is assumed that no additional Cash is generated from operations during the liquidation period. It is assumed that unrestricted Cash and Cash Equivalents are fully available in a liquidation.

2.      **Restricted Cash and Equivalents**

Restricted Cash and Equivalents relate to deposits and other funds held by the Debtor on behalf of customers and other third parties. It is assumed that in a liquidation, Restricted Cash and Equivalents would not be available to the Debtor.

3.      **Accounts Receivable**

It is assumed that in a liquidation, the chapter 7 trustee along with certain employees retained during the liquidation, would aggressively pursue collection of Accounts Receivables. The Debtor's accounts receivables fall into three major categories; receivables related to completed and delivered systems; progress payments for systems not delivered; and receivables representing pre-payments of service contracts. Collections of Accounts Receivables will likely be compromised as customers attempt to reduce amounts due to the Debtors by alleged damage claims and breach of contract claims, particularly with regard to those receivables related to incomplete systems and pre-payment of service contracts. Consistent with the Debtor's experience with collecting Accounts Receivables, adjusted for anticipated attempts to setoff claims against receivables and the general difficulties experienced by liquidating Debtors in realizing on its Accounts Receivables, the liquidation value for Accounts Receivables is based on applying a recovery percentage of 70% to 90% for receivables related to completed systems and a recovery percentage of 0% for receivable related to incomplete systems and customer service contracts.

4.      **Inventory**

Inventory consists primarily of raw materials, work in process, finished goods, sales and trade show inventory, and spare parts. On April 5, 2006 Emerald Technology Valuations, LLC delivered a liquidation valuation of certain inventory to Wells Fargo Foothill, Inc. a copy of which was provided to the Debtors. Based on these analyses and the Debtors experience, recovery percentages were applied to the various categories of inventory of between 0% and 25% of inventory cost.

### 5. Property, Plant & Equipment

Property, Plant & Equipment consists primarily of an owned facility in Chippewa Falls, software, IT equipment, leasehold improvements and tools & test equipment. The liquidation value of the Chippewa Falls property of $6.2 million is based on the property's contribution to the Debtors' borrowing base per its pre-petition credit facility. Per the Debtors' understanding, such borrowing base calculation was based on the property's estimated value under a liquidation per an appraisal prepared for the benefit of the pre-petition lenders. The balance of the Property, Plant & Equipment is valued between 0% and 10% of its net book value.

### 6. Other Assets

Other Assets include: prepaid expenses (including insurance and royalties), deferred cost of goods sold, deposits, non-trade receivables, deferred financing fees, residual value in equipment under long-term leases, and deferred compensation assets.

The Debtors believes that prepaid royalties, insurance other prepaid expenses, and deferred financing fees would not be recoverable in a liquidation. Further, the Debtors believes that in a liquidation, there would be no residual value to equipment under long-term leases, nor would there be for non-trade receivables, which are made up of credits with certain vendors. Deferred cost of goods sold is treated using the same realization factor as for work-in-process inventory. Deposits, primarily related to facilities and utilities, are assumed to be fully offset by amounts due to such parties.

### 7. Goodwill, Intellectual Property and Litigation Claims

Silicon Graphics' goodwill of $12.9 relates to value attributable to the Debtors' foreign, non-debtor subsidiaries. Any value attributable to these entities is captured elsewhere in the liquidation analysis (see Intercompany Receivables From Non-Debtors and Investments In Subsidiaries).

The liquidation value of the Debtors intellectual property of $22.2 – $46.0 million, net of sale transaction costs, was determined based on an appraisal performed by CRA International. In addition, for liquidation purposes the Debtors estimate the value attributable to the DRAM Claims at $2.8 - $9.5 million, net of expenses.

### 8. Intercompany Receivable From SGI Federal

Silicon Graphics has a net intercompany receivable from SGI Federal of $55 million. This balance has been created as a result of funds advanced to SGI Federal to fund direct operating expenses, charges for inventory on goods sold through SGI Federal, management services provided by Silicon Graphics to SGI Federal, and to adjust for funds inadvertently sent to the wrong Debtor by a customer. Recovery in a liquidation on the intercompany receivable is determined by the SGI Federal Liquidation Analysis contained elsewhere in the exhibit.

## 9.    Intercompany Receivables From Non-Debtors

Silicon Graphics charges its non-debtor subsidiaries for the cost of Silicon Graphics' goods sold by such subsidiaries, resulting in intercompany receivables. Realizable liquidation value has been analyzed on a subsidiary by subsidiary basis as described herein.

## 10.    Investments In Subsidiaries

Silicon Graphics has Investments in Subsidiaries with a book value of $61.3 million, $54.7 million of which is its investment in SGI World Trade, and the balance being its investment in SGI Federal and non-debtor subsidiaries. Realizable liquidation value has been analyzed on a subsidiary by subsidiary basis as described herein.

## 11.    Administrative Expenses, Priority & Tax Claims

Administrative expenses include any unpaid expenses incurred by the Debtors post-petition, as well as the costs and expenses related to the liquidation of the Debtors estate. These expenses include chapter 7 trustee expenses, any professionals required to assist the trustee, payroll and facilities costs incurred during the liquidation period.

Chapter 7 trustee fees are estimated at 3% of the gross proceeds of the Debtors' assets. Professional fees of the trustee, including attorneys and accountants, are estimated at $350 thousand per month for a period of four months.

Payroll and operating expenses during the liquidation represent costs related to certain employees that would be retained to assist the trustee in liquidating the assets of the Debtors. Such personnel would be required to assist in the collection of accounts receivables and the sale of inventory and other assets, as well as to complete administrative duties such as payroll and tax returns. Such personnel costs during the liquidation period are estimated at $1.0 – $1.3 million for the liquidation period. In addition, expenses for facilities and administrative overhead are estimated at $0.9 – $1.2 million.

Incremental Administrative claims that would result from post-petition intercompany payables have not been estimated for purposes of this liquidation analysis. Such amounts could be material.

Priority claims include any claims entitled to priority status as set out in the Bankruptcy Code. Priority Claims are estimated to include certain obligations to taxing authorities and to employees. Priority Claims are estimated to be $2.6 million.

**12.    Unsecured Claims**

Unsecured claims consist of class 6 General Unsecured Silicon Graphics Claims, prior to any claims cured pursuant to the Plan and class 7 Cray Unsecured Debenture Claims. In addition, for the liquidation analysis, unsecured claims also include; the unsecured deficiency claims of the First Lien Debt and the Second Lien Debt; deferred revenue claims, inter-company claims, employee claims, and claims arising from the rejection of leases that are otherwise assumed under the Debtors' Plan. Other than by the inclusion of deferred revenue, the liquidation analysis does not estimate additional claims that would arise from the rejection of executory contracts that are otherwise assumed under the Debtors' Plan, which claims could be material.

**13.    Application of Proceeds of Liquidation Between First Lien/DIP Claims and Second Lien Claims**

The analysis for Silicon Graphics assumes that the First Lien/DIP Claims would be satisfied first from proceeds of collateral in which the Second Lien Claims do not have a security interest. If the assumption is made that the First Lien/DIP Claims would be satisfied first from proceeds of collateral in which both the First Lien/DIP Claims and the Second Lien Claims share a security interest, and that no further collateral value is available to the Second Lien Claims, the Estimated Recovery for Unsecured Creditors would range from a low of 0.0% to a high of 8.9%.

**Silicon Graphics Federal, Inc. -- Footnotes to Liquidation Analysis**

**A.      Accounts Receivable**

Liquidation values of accounts receivables at SGI Federal have been determined utilizing the same methodology as described in Note 3.

**B.      Property, Plant & Equipment**

SGI Federal's net Property, Plant & Equipment is limited primarily to installed IT equipment and leasehold improvements.  The Debtors believes that these assets would have a de minimis value in a liquidation.

**C.      Other Assets**

Other assets consist primarily of residual value in equipment under long-term leases.  The Debtors believes that in a liquidation, there would be no residual value to equipment under long-term leases.

**D.      Administrative Expenses, Priority and Tax Claims**

Administrative expenses include any unpaid expenses incurred by the Debtors post-petition, as well as the costs and expenses related to the liquidation of the Debtors estate.  These expenses include chapter 7 trustee expenses, estimated at 3% of gross proceeds of the Debtors assets, any professionals required to assist the trustee, and payroll and facilities costs incurred during the liquidation period.

Incremental administrative claims that would result from post-petition intercompany payables have not been estimated for purposes of this liquidation analysis.  Such amounts could be material.

**E.      Unsecured Creditors**

Unsecured claims consist of an inter-company payable to Silicon Graphics estimated at $55 million, with the balance representing deferred revenue as well as employee claims resulting from the liquidation.

**F.      Application of Proceeds of Liquidation Between First Lien/DIP Claims and Second Lien Claims**

The analysis for SGI Federal assumes that the First Lien/DIP Claims would be satisfied first from proceeds of collateral in which the Second Lien Claims do not have a security interest.  If the assumption is made that the First Lien/DIP Claims would be fully

satisfied from proceeds of collateral within Silicon Graphics and SGI World Trade, the Estimated Recovery for unsecured creditors would range from a low of 6.7% to a high of 9.1%.

**Silicon Graphics World Trade Corp -- Footnotes to Liquidation Analysis**

i.      **Intercompany Receivable from Silicon Graphics, Inc.**

Realizable liquidation value has been analyses based on Silicon Graphics' liquidation analysis, and no liquidation value has been attributed to World Trade Corp's receivable from SGI Inc.

ii.     **Intercompany Receivable from non-Debtors**

SGI World Trade has net Intercompany Accounts Receivable from Silicon Graphics AE, Greece and Silicon Graphics Ltd, South Africa. Based on a review of these subsidiaries it has been assumed that in a liquidation, no value would be realized on these receivables.

iii.    **Investment in Subsidiaries**

SGI World Trade has investments in two active subsidiaries, Silicon Graphics Computer Systems Limited and Silicon Graphics World Trade, BV. Based on a review of Silicon Graphics Computer Systems Limited, it has been assumed that in a liquidation, no value would be realized on this investment.

World Trade BV is a foreign holding company whose assets consist of $55 million in Intercompany Receivables from Non-debtors, $194.1 million book value of Investments in Subsidiaries, and its equity investment in SGI Japan.

A liquidation analysis was performed for each of the counterparties for the Intercompany Receivables, applying liquidation value realization assumptions consistent with those used in the Debtors' Liquidation Analysis, making adjustments for any material asset-specific and local jurisdictional issues. These analyses yield a liquidation value for these intercompany receivables of $2.4 - $2.7 million. Similar liquidation analyses were performed for each of World Trade BV's 32 foreign subsidiaries. These analyses yield a value for these Investments in Subsidiaries of $4.9 - $5.5 million.

As of September 30, 2006, it is assumed that World Trade BV holds an 11% common stock investment in SGI Japan. SGI Japan is a private company that is majority owned by NEC and its affiliates. SGI Japan sells and services SGI systems as well as systems provided by other suppliers, and a majority of SGI Japan's revenue is not related to Silicon Graphics or its products. In estimating the value of World Trade BV's investment in SGI Japan in the context of a liquidation of the Debtors, we reviewed recent transactions in SGI Japan's equity as well as indications of interest received for future transactions, and then applied a discount to these values to reflect an estimated range of lost value resulting from the loss of revenues related to the Debtors products.

Based on this review, the liquidation value for World Trade BV's investment in SGI Japan is estimated at $13.4 to $15.6 million.

iv.     **Administrative Expenses, Priority and Tax Claims**

Chapter 7 trustee fees are estimated at 3% of the gross proceeds of the Debtors' assets. No other administrative expenses are assumed for SGI World Trade.

For non-debtor entities an estimate of 4% of proceeds was used to account for general administration of foreign insolvency proceedings. Incremental employee costs for foreign non-debtor entities that would result from the liquidation of such entities have not been estimated for purposes of this liquidation analysis. Such amounts could be substantial.