**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                  :
                                                       :        **Chapter 11 Case No.**
                                                       :
**SILICON GRAPHICS, INC.,** *et al.*,                  :        **06-10977 (BRL)**
                                                       :
                         **Debtors.**                  :        **(Jointly Administered)**
                                                       :
-------------------------------------------------------------x

**ORDER CONFIRMING DEBTORS' FIRST**
**AMENDED JOINT PLAN OF REORGANIZATION UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE, DATED JULY 27, 2006, AS MODIFIED**

Silicon Graphics, Inc. ("Silicon Graphics") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, with Silicon Graphics, the "Debtors"), having proposed and filed the Debtors' First

Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 27,

2006 (the "July 27 Plan"); and the Disclosure Statement for Debtors' First Amended Joint Plan

of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 27, 2006 (the

"Disclosure Statement") having been approved by this Court and duly transmitted to holders of

Claims[1] against the Debtors' estates in compliance with this Court's order, dated July 27, 2006

(the "Disclosure Statement Order"): (i) approving the notice of Disclosure Statement hearing;

(ii) approving the Disclosure Statement; (iii) fixing record dates; (iv) approving the notice and

objection procedures in respect of confirmation; (v) approving solicitation packages and

procedures for distribution thereof; (vi) approving the forms of ballots and establishing voting

procedures; (vii) approving the forms of notices to non-voting Classes; (viii) approving the

subscription forms for purposes of the rights offering; and (ix) authorizing the retention of

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such
terms in the Plan (as defined below).

Financial Balloting Group LLC ("FBG") as voting and tabulation agent; and the Debtors' having

filed a blackline of the July 27 Plan showing certain modifications (the "Modifications") thereto

(the July 27 Plan as modified by the Modifications, the "Plan"); and the Debtors having filed the

Plan Supplement on August 29, 2006 and the First Amendment to Plan Supplement on

September 15, 2006; and upon the filing of the Affidavit of Jane Sullivan With Regard to the

Tabulation of Votes on the Debtors' First Amended Joint Plan of Reorganization Under Chapter

11 of the Bankruptcy Code, dated September 11, 2006 [Docket No. 582] (describing the

methodology for the tabulation and results of voting with respect to the Plan and evidencing that

the Debtors have received the requisite acceptances of the Plan in both number and amount as

required by section 1126 of the Bankruptcy Code) (the "Sullivan Tabulation Affidavit"); and a

hearing having been held before this Court on September 19, 2006 to consider confirmation of

the Plan (the "Confirmation Hearing"); and due notice of the Confirmation Hearing having been

provided to holders of Claims against and equity interests in the Debtors and other parties in

interest, in compliance with the Disclosure Statement Order, the Bankruptcy Code, and the

Bankruptcy Rules, as established by the following affidavits of service, mailing, and publication

filed with the Bankruptcy Court: (i) the Affidavit of Service, dated August 8, 2006, of Jane

Sullivan, a director of FBG [Docket No. 450] (describing service of the Solicitation Materials (as

defined below), including notices of non-voting status and evidencing that FBG has complied

with the requirements of the Disclosure Statement Order) (the "Sullivan Solicitation Affidavit"

and, together with the Sullivan Tabulation Affidavit, the "Sullivan Affidavits") and (ii) the

Certification of Publication in *The New York Times* (National Edition), dated August 4, 2006

[Docket No. 447] of Cathy Zike, Principal Clerk of the Publisher of *The New York Times* (the

"Publication Certificate"), and such notice being sufficient under the circumstances and no

further notice being required; and the Plan Supplement having been filed in accordance with the provisions of the Plan and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the Confirmation Hearing, including (A) the Plan, the Plan Supplement, the Sullivan Affidavits, the Disclosure Statement, and the Disclosure Statement Order, (B) the Debtors' memorandum of law, dated September 15, 2006, in support of confirmation of the Plan (the "Memorandum of Law"), (C) the affidavits filed in support of confirmation of the Plan, including (i) the Declaration of Jim Mesterharm of AlixPartners, LLC in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated September 15, 2006 (the "Mesterharm Declaration"), (ii) the Declaration of Edward M. Rimland of Bear, Stearns & Co., Inc. in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated September 15, 2006 (the "Rimland Declaration"), (iii) the Declaration of Brian R. Oliver of CRA International, Inc. in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, September 15, 2006 (the "Oliver Declaration"), and (iv) the Declaration of Andrew B. Samett of Bear, Stearns & Co., Inc. in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated September 15, 2006 (the "Samett Declaration" and, together with the Mesterharm Declaration, the Rimland Declaration, and the Oliver Declaration, the "Supporting Declarations"), (D) the Sullivan Affidavits and the Publication Certificate, (E) the objections to confirmation of the Plan (collectively, the "Objections"), including (i) the Objection to Confirmation of Debtors' First Amended Joint Plan of Reorganization filed by Storage Technology Corporation, dated August 30, 2006 [Docket No. 520)], (ii) the Objection of

Dallas County, Harris County/City of Houston and Houston Independent School District to the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated August 31, 2006 [Docket No. 523], (iii) the Limited Objection of Lampe, Conway & Co., LLC To Confirmation of Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated August 31, 2006 [Docket No. 532], and (iv) 16 shareholder Objections filed by Katherine and George Alexander; Songqing Xu; Yonjun Liu and Hui Ren; Mohendra S. Bawa, Ph.D. and Mrs. Ofir B. Bawa; Kozo Yamada; Yogesh S. Shah and Mrudula Y. Shah; Thomas R. and Katherine E. McDonald; Tilton L. O'Brien and Patricia H. O'Brien; F. Luke Chiu, M.D.; Tracey J. Sutcliffe; Malinda Sutcliffe; Theodore M. Raichel; William Kuntz, III; James Faucette; Harley O. Wroten Sr. and Charlotte A. Wroten, and Victor D. Ferguson and Marjorie D. Ferguson, and (F) the Debtors' response to the Objections, dated September 15, 2006 (the "Response"); and the Court being familiar with the Plan and other relevant factors affecting the Debtors' chapter 11 cases; and the Court being fully familiar with, and having taken judicial notice of, the entire record of the Debtors' chapter 11 cases; and upon the arguments of counsel and the evidence proffered and adduced at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

**FINDINGS OF FACT**

A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following

findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction. The Court has jurisdiction over the Debtors' chapter 11 cases and confirmation of the Plan pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O) and the Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Commencement and Joint Administration of the Debtors' Chapter 11 Cases. On the Commencement Date, each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code. By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

D.    Judicial Notice. The Court takes judicial notice of the docket of the Debtors' chapter 11 cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the various hearings held before the Court during the pendency of the Debtors' chapter 11 cases.

E.    Solicitation and Notice. On July 27, 2006, the Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation and tabulation of

votes on the Plan.  The (A) Disclosure Statement, (B) Disclosure Statement Order, (C) letters of support, as applicable, from the Ad Hoc Committee and the Creditors' Committee, (D) notice of (i) approval of Disclosure Statement; (ii) establishment of record dates; (iii) Confirmation Hearing and procedures for objecting to confirmation of the Plan; and (iv) procedures and deadline for voting on the Plan (the "Confirmation Hearing Notice"), (E) Ballots and Master Ballots (as defined in the Disclosure Statement Order), (F) notices of non-voting status, and (G) Subscription Forms (collectively, the "Solicitation Materials") were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.  As described in the Disclosure Statement Order and as evidenced by the Sullivan Affidavits and Publication Certificate, (i) the service of the Solicitation Materials was adequate and sufficient under the circumstances of these chapter 11 cases and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, and provided due process and an opportunity to appear and to be heard to all parties in interest.

        F.      <u>Voting</u>.  Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Sullivan Tabulation Affidavit, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

        G.      <u>Burden of Proof</u>.  Each Debtor has met its burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

H. <u>Plan Supplement</u>. On August 29, 2006, the Debtors filed the Plan Supplement, which includes the following documents: List of Initial Board Members, Form of New Organizational Documents, Form of Registration Rights Agreement, Form of Management Incentive Plan, Liquidating Trust Agreement, Schedules 8.1(A) and (B), List of Customer Support Agreements (filed under seal), Schedule 12.9, Form of Subscription Right, and Form of New Common Stock. The Plan Supplement was subsequently amended on September 15, 2006. All such materials comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order and no other or further notice is or shall be required.

## MODIFICATIONS TO THE PLAN

I. <u>Modification</u>. On September 15, 2006, the Debtors filed the Plan as modified by the Modifications. This filing and the description of the Modification on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these chapter 11 cases. The Plan, as modified by the Modifications, constitutes the "Plan." The Modifications do not adversely affect the treatment of any Claims or equity interests in the Debtors under the Plan. The Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of vote on the Plan under section 1126 of the Bankruptcy Code. The Plan Supplement as modified by the September 15, 2006 amendment thereto constitutes the "Plan Supplement." The Plan Supplement complies with the terms of Section 14.6 of the Plan.

J. <u>Deemed Acceptance of Plan as Modified</u>. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have

accepted the Plan, as modified by the Modification.  No holder of a Claim or equity interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modification.

        K.        <u>Notice of Plan Modifications</u>.  The filing with the Court of the Plan as modified by the Modifications, the service of the same on the persons that have filed notices of appearance and requests for the service of papers under Bankruptcy Rule 2002, and the disclosure of the Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.

        L.        <u>Compliance with 1127</u>.  The Modifications incorporated into the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

        M.        <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

        N.        <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  In addition to Administrative Expense Claims, Postpetition Financing Obligation Claims and Priority Tax Claims, which need not be classified, Article III of the Plan designates 35 Classes of Claims and equity interests against the appropriate Debtor.  The Claims and equity interests included in each Class are substantially similar to other Claims and equity interests, as the case may be, in each such Class.  Valid business, legal, and factual reasons exist for separately Classifying the various Claims and equity interests under the Plan, and such Classes do not unfairly discriminate between holders of Claims and equity interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

i.        <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article III of the Plan specifies that Classes 1, 2, 3, 4, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 ,33, 34, and 35 are unimpaired under the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code.

ii.        <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan designates Classes 5, 6, 7, 8 and 9 as impaired, and Sections 4.5, 4.6, 4.7, 4.8, and 4.9 of the Plan specify the treatment of Claims and equity interests in such Classes, thereby complying with section 1123(a)(3) of the Bankruptcy Code.

iii.        <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim or equity interest in each respective Class unless the holder of a particular Claim or equity interest has agreed to a less favorable treatment on account of such Claim or equity interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

iv.        <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (a) amendments to the Debtors' charter and by-laws, (b) cancellation and surrender of existing securities, including, without limitation, the Senior Secured Convertible Notes, the Senior Secured Notes, the Cray Unsecured Debentures, and the Old Equity Interest, (c) the incurrence of new indebtedness under the Exit Facility, (d) the issuance of New Common Stock, (e) the establishment of a Registration Rights Agreement, (f) the establishment of a Liquidating Trust Agreement, (g) the consummation of the Rights Offering, (h) the entry into and performance under the Backstop Commitment Agreement, and (i) the revesting of assets of the Debtors' estates in the Reorganized Debtors.

v.        <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. Section 10.2 of the Plan provides that the New Organizational Documents for each of the Reorganized Debtors shall, to the extent applicable, prohibit the issuance of nonvoting equity securities, thereby complying with section 1123(a)(6) of the Bankruptcy Code.

vi.        <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. Sections 10.3 and 10.4 of the Plan contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of

creditors, equity security holders, and public policy, and the Plan and Plan Supplement identify the individuals proposed to serve as directors and officers of the Reorganized Debtors, thereby satisfying section 1123(a)(7) of the Bankruptcy Code. Section 5.11 of the Plan provides for the designation of the Trustee for the Liquidating Trust by the Reorganized Debtors and the Ad Hoc Committee on the Effective Date.

vii.     <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

viii.    <u>Impairment/Unimpairment of Classes of Claims and Equity Interests (§ 1123(b)(1))</u>. Pursuant to Article III of the Plan, (a) Claims and Equity Interests in Class 5 (Secured Note Claims), Class 6 (General Unsecured Silicon Graphics Claims), Class 7 (Cray Unsecured Debenture Claims), Class 8 (Subordinated Securities Claims), and Class 9 (Old Equity Interests) are impaired; and (b) Claims and Equity Interests in Class 1 (Other Priority Claims), Class 2 (Secured Tax Claims), Class 3 (Other Secured Claims), Class 4 (Prepetition Credit Agreement Claims), Class 10 (General Unsecured SGI Federal Claims), Class 11 (SGI Federal Equity Interests), Class 12 (General Unsecured SGI World Trade Claims), Class 13 (SGI World Trade Equity Interests), Class 14 (General Unsecured Cray Research LLC Claims), Class 15 (Cray Research LLC Equity Interests), Class 16 (General Unsecured Cray SGI Real Estate), Class 17 (SGI Real Estate Equity Interests), Class 18 (General Unsecured Silicon Studio Claims), Class 19 (Silicon Studio Equity Interests), Class 20 (General Unsecured Cray Research America Latina Claims), Class 21 (Cray Research America Latina Equity Interests), Class 22 (General Unsecured Cray Research Eastern Europe Claims), Class 23 (Cray Research Eastern Europe Equity Interests), Class 24 (General Unsecured Cray Research India Claims), Class 25 (Cray Research India Equity Interests), Class 26 (General Unsecured Cray Research International Claims), Class 27 (Cray Research International Equity Interests), Class 28 (General Unsecured Cray Financial Claims), Class 29 (Cray Financial Equity Interests), Class 30 (General Unsecured Cray Asia/Pacific Claims), Class 31 (Cray Asia/Pacific Equity Interests), Class 32 (General Unsecured Paragraph Claims), Class 33 (Paragraph Equity Interests), Class 34 (General Unsecured WTI Claims) and Class 35 (WTI Equity Interests) are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

ix.    Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  Section 8.1 of the Plan provides for the rejection of the executory contracts and unexpired leases of the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date, or (c) that is specifically designated as a contract or lease to be assumed on Schedule 8.1(A) (executory contracts) or 8.1(B) (unexpired leases) to the Plan as contemplated by section 1123(b)(2) of the Bankruptcy Code.

x.    Cure of Defaults (11 U.S.C. § 1123(d)).  Section 8.4 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All cure amounts will be determined in accordance with the underlying agreements, the Cure Agreements, and applicable bankruptcy and nonbankruptcy law.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code

xi.    Bankruptcy Rule 3016(a).  The Plan is dated and identifies the proponents, thereby satisfying Bankruptcy Rule 3016(a).

O.    Debtors Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

Each Debtor has complied with the applicable provisions of the Bankruptcy Code.  Specifically:

i.    Each Debtor is a proper debtor under section 109 of the Bankruptcy Code,

ii.    Each Debtor has complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and

iii.    Each Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan, thereby complying with section 1125 with respect to the Disclosure Statement and the Plan.

P.    Plan Proposed in Good Faith (11 U.S.C. § 1129 (a)(3)).  Each Debtor is

the proponent for the Plan with respect to each Debtor's separate estate.  Each Debtor has

proposed the Plan (including all documents necessary to effectuate the Plan, including, but not limited to, those contained in the Plan Supplement) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the record of these chapter 11 cases, including the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in these chapter 11 cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful reorganization of the Debtors.  The Plan (including all documents necessary to effectuate the Plan, including, but not limited to, those contained in the Plan Supplement) was negotiated at arms' length among representatives of the Debtors, the Creditors' Committee, the Ad Hoc Committee, Lampe Conway, and their respective professional advisors.  The Creditors' Committee and the Ad Hoc Committee support confirmation of the Plan.  Further, the indemnification, exculpation, release, and injunction provisions of the Plan have been negotiated in good faith and at arms' length with, among other persons, representatives of the Debtors, the Creditors' Committee, the Ad Hoc Committee, and their respective advisors, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful emergence from chapter 11.

       Q.    <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>.  All payments made or to be made by any of the Debtors for services or for costs and expenses in connection with these chapter 11 cases, or in connection with the Plan and incident to the chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

R.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors

have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of

the persons proposed to serve as the initial directors and officers of the Reorganized Debtors

after the confirmation of the Plan have been fully disclosed in the Plan and Plan Supplement and

the appointment to, or continuance in, such offices of such persons are consistent with the

interests of holders of Claims against, and equity interests in, the Debtors and with public policy.

As set forth in the Plan Supplement, on the Effective Date, the New Board of Reorganized

Silicon Graphics shall be comprised of seven members, six of which are identified in the Plan

Supplement.  The Ad Hoc Committee, in consultation with the Debtors, shall be authorized, but

not required, to select the seventh director prior to the Effective Date, and if such director is

selected prior to the Effective Date the Debtors shall file a notice with the Bankruptcy Court

identifying such member together with biographical information.  Each member of the New

Board of each of the other Reorganized Debtors will serve in accordance with the terms and

subject to the conditions of the New Organizational Documents.  The appointment to, or

continuance in, such office of each such individual is consistent with the interests of the holders

of Claims and equity interests, the Reorganized Debtors, and public policy.

S.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  No governmental regulatory

commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors.  Thus,

section 1129(a)(6) of the Bankruptcy Code is not applicable in these chapter 11 cases.

T.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  There are no holders

of impaired Claims against or equity interests in any Debtor other than Silicon Graphics.  The

"best interests" test is applicable only those (i) holders of Claims that voted to reject the Plan in

Classes 5 (Secured Note Claims), 6 (General Unsecured Silicon Graphics Claims), and 7 (Cray

Unsecured Debenture Claims) and (ii) holders of Claims and equity interests in Class 8

(Subordinate Securities Claims) and Class 9 (Old Equity Interests) under the Plan, which will not

receive or retain any property under the Plan, and therefore, are deemed to have rejected the

Plan.  As demonstrated by the Samett Declaration and the liquidation analysis contained in the

Disclosure Statement, which employed commonly accepted methodologies and valid

assumptions, each holder of an impaired Claim against or equity interest in Silicon Graphics

either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or

equity interest, property of a value, as of the Effective Date, that is not less than the amount that

such holder would receive or retain if Silicon Graphics was liquidated under chapter 7 of the

Bankruptcy Code on such date.  Accordingly, the Plan satisfies section 1129(a)(7) of the

Bankruptcy Code.

        U.      <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Classes 1, 2, 3,

4, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, and 34 are Classes of unimpaired Claims and

Classes 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33 and 35 are Classes of unimpaired equity

interests, each of which is conclusively presumed to have accepted the Plan in accordance with

section 1126(f) of the Bankruptcy Code.  Section 1129(a)(8) of the Bankruptcy Code is therefore

satisfied by each Debtor other than Silicon Graphics.  Classes 5, 6, and 7, which are the impaired

Classes of Claims against Silicon Graphics entitled to vote on the Plan, have voted to accept the

Plan, in accordance with section 1126(b) and (c) of the Bankruptcy Code.  Classes 8

(Subordinated Securities) and 9 (Old Equity Interests), which are Claims against, and equity

interests in, Silicon Graphics, are impaired by the Plan and are not entitled to receive or retain

any property under the Plan, and therefore, are deemed to have rejected the Plan pursuant to

section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) of the Bankruptcy Code is

not satisfied with respect to the deemed rejection of Classes 8 and 9, the Plan may nevertheless be confirmed with respect to Silicon Graphics because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 8 and 9.

V.      Treatment of Administrative Expense Claims, Postpetition Financing Obligation Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, Postpetition Financing Obligation Claims, and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), (C) and (D) of the Bankruptcy Code.  The treatment of Other Priority Claims and Secured Tax Claims pursuant to Section 4.1 of the Plan satisfies the requirements of section 1129(a)(9)(C) and (D)of the Bankruptcy Code.

W.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  Classes 5, 6, and 7, each of which is impaired under the Plan and entitled to vote, voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

X.      Feasibility (11 U.S.C. § 1129 (a)(11)).  The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing and in the Supporting Declarations:  (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that the Plan is feasible, there is a reasonable likelihood that the Reorganized Debtors will meet their financial obligations under the Plan in the ordinary course of business, and confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  As required pursuant to Section 14.7 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on the Effective Date, and will continue to be paid thereafter as required, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Z.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 8.8 of the Plan provides that on and after the Effective Date, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), for the duration of the period for which the Debtors have obligated themselves to provide such benefits, *provided*, *however*, that the Reorganized Debtors reserve the right to modify any and all such plans, funds, and programs in accordance with the terms thereof, thereby satisfying the requirements of section 1129(a)(13) of the Bankruptcy Code.

AA.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

BB.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

CC.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

DD. <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.

Silicon Graphics has requested that the Court confirm the Plan notwithstanding Class 8 (Subordinated Securities) and Class 9 (Old Equity Interests) (collectively, the "Rejecting Classes") were deemed to reject the Plan. Silicon Graphics has satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to the Rejecting Classes. Based on the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because there is no holder of any interest in Silicon Graphics that is junior to any of the Rejecting Classes that is receiving or retaining any property under the Plan on account of such junior interests and the holders of Claims against Silicon Graphics in Classes that are senior to the Rejecting Classes are receiving distributions, the value of which is less than 100% of the Allowed amount of their Claims. Thus, the Plan may be confirmed notwithstanding the deemed rejection by the Rejecting Classes.

EE. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

FF. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

GG. <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in these chapter 11 cases, (i) the Debtors are deemed to have solicited acceptances of

the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtors, the Creditors' Committee, the Ad Hoc Committee, the Backstop Purchasers, the Indenture Trustees, Lampe Conway, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of any securities under the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 12.7 of the Plan.

HH.     <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

II.     <u>Implementation</u>.  All documents necessary to implement the Plan, including, without limitation, those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution (including the documentation of the Exit Facility), be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

JJ.    Good Faith.  The Debtors, the Creditors' Committee, the Ad Hoc Committee, the Backstop Purchasers, Lampe Conway, and the Lenders and the Agents (as the terms Lenders and Agents are defined in the Postpetition Financing Agreement) under the Postpetition Financing Agreement, the lenders and the agents under the Exit Facility, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives) will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by this Order.  The Exit Facility has been negotiated in good faith and on an arms' length basis and each party thereto may rely upon the provisions of this order in closing the Exit Facility.

KK.    Assumption of Executory Contracts and Unexpired Leases.  The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption of executory contracts and unexpired leases pursuant to the Plan.

LL.    Transfers by Debtors.  All transfers of property of the Debtors' estates, including, without limitation, the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust and the issuance and delivery of the New Common Stock shall be free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Plan or this Order.  The revesting, on the Effective Date, of the property of the Debtors' estates:  (i) vests the respective Reorganized Debtor or its successors or assigns, as the case may be, with good title to such property, free and clear of all liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Plan or this Order, and (ii) does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.  For the avoidance of doubt, the $9.0 million funded to the Disbursing Agent pursuant to

Section 4.6 of the Plan and the Liquidating Trust Assets will not revest in the Reorganized Debtors.

MM.    <u>Injunction, Exculpation, and Releases</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Sections 12.5, 12.7, and 12.8 of the Plan, respectively. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the unopposed releases set forth in Sections 12.5 and 12.8 of the Plan, respectively, if, as has been established here, such provisions (i) are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair and reasonable and (iv) are in the best interests of the Debtors, their estates, and parties in interest.  Further, the exculpation provision in the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence or the other exceptions set forth therein.  Based upon the record of these chapter 11 cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article XII of the Plan are consistent with the Bankruptcy Code and applicable law.

NN.    <u>Global Settlement</u>.  The filing of the Plan constitutes, among other things, a motion by the Debtors pursuant to Bankruptcy Rule 9019 to approve the settlement and compromise set forth in Section 5.1 of the Plan.  Pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and the Global Settlement,

including, without limitation, all Claims and controversies regarding the subordination of the Cray Unsecured Debentures. The provisions of the Plan constitute a reasonable, good-faith compromise and full and final settlement of all Claims, causes of action or disputes that could have been brought against the holders of Senior Secured Note Claims and Senior Secured Convertible Note Claims by the Creditors' Committee or the holders of Cray Unsecured Debenture Claims. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency Claim.

OO.    <u>Valuation</u>.  Pursuant to the valuation analyses set forth in the Disclosure Statement as supported by the Rimland Declaration and Oliver Declaration, the enterprise value of the Debtors is insufficient to support a distribution to holders of Subordinated Securities Claims and Old Equity Interests under absolute priority principles.

PP.    <u>Exit Facility</u>.  The availability under the Exit Facility is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The terms and conditions of the Exit Facility described in the Commitment Letter (as defined below) and the accompanying Exit Financing Fee Letter are fair and reasonable under the circumstances.  The execution, delivery, or performance by the Debtors or Reorganized Debtors, as the case may be, of any documents in connection with the Exit Facility, in accordance with the commitment letter filed with this Court (the "Commitment Letter"), and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Order and shall not constitute an Affiliate Transaction within the

meaning of such term in the Global Settlement Agreement. The financial accommodations to be extended pursuant to the Commitment Letter and the Exit Facility documents are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever.

## CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     Confirmation. All requirements for confirmation of the Plan have been satisfied. Accordingly, the Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement, including, the List of Initial Board Members, Form of New Organizational Documents, Form of Registration Rights Agreement, terms and conditions of the Management Incentive Plan as set forth in the term sheet, Liquidating Trust Agreement, Schedules 8.1(A) and (B), List of Customer Support Agreements (filed under seal), Schedule 12.9, Form of Subscription Right, and Form of New Common Stock are authorized and approved. The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

2.     Plan Supplement. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved when they are finalized, executed and delivered. Without further order or authorization of this Court, the Debtors, Reorganized Debtors and their successors are authorized and empowered to make all

modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

3. <u>Objections</u>. All parties have had a full and fair opportunity to litigate all issues raised by the Objections, or which might have been raised, and the Objections have been fully and fairly litigated. All Objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein are overruled for the reasons stated on the record.

4. <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The solicitation of votes on the Plan and the Solicitation Materials complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Notice of the Plan Supplement, and all related documents, was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

5.     <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

6.     <u>Plan Classification Controlling</u>.  The classifications of Claims and equity interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classification set forth on the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and equity interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, the Reorganized Debtors, creditors, or interest holders for purposes other than voting on the Plan.

7.     <u>Global Settlement</u>.  Pursuant to Section 5.1 of the Plan, sections 105 and 1123(b)(3) of the Bankruptcy Code, and Bankruptcy Rule 9019, on the Effective Date, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and the Global Settlement.

8.     <u>BAL Global</u>.  To the extent that any of BAL Global Finance, LLC f/k/a Fleet Business Credit, LLC f/k/a Fleet Business Credit Corporation ("BAL Global"), Banc of America Leasing & Capital, LLC ("Banc of America Leasing"), Bank of America, N.A. ("Bank of America") or any of their affiliates (collectively and individually, the "BAL Party") is a holder of an Allowed Other Secured Claim, such Allowed Other Secured Claim is reinstated pursuant to

the Plan and the BAL Party that is a holder of such Allowed Other Secured Claim shall retain its respective liens and interests with respect thereto.

9.      The assumption of that certain Amended and Restated Lease Program Agreement dated August 31, 2001, as amended (the "2001 Agreement"), between Silicon Graphics, Silicon Graphics Federal, Inc. ("SGI Federal"), and BAL Global, that certain Without Recourse Purchase Agreement, dated February 26, 2004, as amended (the "2004 Agreement"), between Silicon Graphics, SGI Federal, BAL Global, and Banc of America Leasing and any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by an agreement, instrument, or other document that in any manner affects such 2001 Agreement and/or 2004 Agreement, without regard to whether such agreement, instrument or other document is listed on this Order or on any schedule related hereto (said 2001 Agreement, 2004 Agreement and modifications, amendments, supplements, restatements, or other agreements related thereto hereinafter collectively referred to as the "BAL Global Agreements"), is hereby approved in all respects effective on the Effective Date, (ii) the Debtors shall pay to BAL Global, on the Effective Date, the amount of $35,350 to cure the defaults under the 2001 Agreement in accordance with section 365(b)(1)(A) of the Bankruptcy Code; and such payment shall be in full and final satisfaction of any and all amounts that must be paid to cure any and all defaults in connection with the assumption of the 2001 Agreement and the 2004 Agreement under section 365(b)(1) of the Bankruptcy Code, and (iii) each of BAL Global and Banc of America Leasing shall retain all of its respective liens on, and all of its respective security and other interests of any kind whatsoever in, any and all of the equipment, property, contracts, leases, assets, and other collateral of any kind whatsoever of any of the Debtors or the Reorganized Debtors described in, covered by, or relating to, the BAL Global Agreements.

10. Nothing contained in the foregoing decretal paragraph or the Plan shall be, or shall be deemed, an admission, agreement, or otherwise by BAL Global or Banc of America Leasing (or any other party) that any of the BAL Global Agreements and/or any and all documents, agreements, or instruments related to any of the same are not "executory contracts" or "true leases."

11. <u>Texas Taxing Authorities</u>. Notwithstanding anything in the Plan or this Order to the contrary, Silicon Graphics shall pay the Allowed Priority Tax Claims and Allowed Secured Tax Claims of Harris County/City of Houston, Houston Independent School District, and Dallas County in Cash in full on the later of (i) the Effective Date (or as soon thereafter as is practicable) or (ii) the date that such amounts become due under applicable non-bankruptcy law; *provided*, *however*, that nothing in this paragraph shall affect the Debtors' rights to dispute the amount of any asserted Secured Tax Claim or Priority Tax Claim.

12. <u>Authorization to Pay Obligations Under Postpetition Financing Agreement</u>. On the Effective Date, all Allowed Postpetition Financing Obligation Claims shall be paid in full in Cash. To the extent any letters of credit issued pursuant to the Postpetition Financing Agreement are outstanding on the Effective Date, such letters of credit will be cancelled and replaced with new letters of credit to be issued pursuant to the Exit Facility or 105% Cash collateralized. Upon payment and satisfaction in full of all Allowed Postpetition Financing Obligation Claims, all Liens and security interests granted to secure such obligations, whether in the Reorganization Cases or otherwise, shall be terminated and of no further force or effect.

13. <u>Merger, Dissolution, or Consolidation of Corporate Entities</u>. Pursuant to Section 5.3 of the Plan, on or as of the Effective Date or as soon as practicable thereafter and

without the need for any further action, the Reorganized Debtors may, with the prior consent of the Ad Hoc Committee (which consent shall not be unreasonably withheld), (i) cause any or all of the Reorganized Debtors to be merged into one or more of the Reorganized Debtors, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized Debtors, or (iii) engage in any other transaction in furtherance of the Plan.

14. <u>Cancellation of Existing Securities and Agreements</u>. Pursuant to Section 5.4 of the Plan, except (i) as otherwise expressly provided in the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtors, (iii) for purposes of evidencing a right to distributions under the Plan and with respect to the Indenture Trustees' rights to distribute and exercise the Charging Liens against the distributions in accordance with Sections 2.4 and 4.7 of the Plan, or (iv) with respect to any Claim that is reinstated and rendered unimpaired under the Plan, on the Effective Date, the Postpetition Financing Agreement, Prepetition Credit Agreement, the 6.50% Indenture and Senior Secured Convertible Notes issued thereunder, the 11.75% Indenture and Senior Secured Notes issued thereunder, the Cray Indenture and the Cray Unsecured Debentures issued thereunder, all other instruments evidencing any Claims against the Debtors, and all Old Equity Interests shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors thereunder shall be discharged.

15. <u>Surrender of Existing Securities</u>. Each holder of the Senior Secured Convertible Notes, Senior Secured Notes and Cray Unsecured Debentures shall surrender such note(s) to the Indenture Trustee, or in the event such note(s) are held in the name of, or by a nominee of, the Depository Trust Company, the Disbursing Agent shall seek the cooperation of the Depository Trust Company to provide appropriate instructions to the Indenture Trustee. No

distributions under the Plan shall be made for or on behalf of any such holder unless and until such note is received by the Indenture Trustee or appropriate instructions from the Depository Trust Company shall be received by the Indenture Trustee, or the loss, theft or destruction of such note is established to the reasonable satisfaction of the Indenture Trustee, which satisfaction may require such holder to submit (i) a lost instrument affidavit and (ii) an indemnity bond holding the Debtors, Reorganized Debtors, Disbursing Agent and Indenture Trustee harmless in respect of such note and any distributions made in respect thereof. Upon compliance with Section 5.5 of the Plan by a holder of any note, such holder shall, for all purposes under the Plan, be deemed to have surrendered such note. Any holder of Senior Secured Convertible Notes, Senior Secured Notes or Cray Unsecured Debentures that fails to surrender such note or satisfactorily explain its non-availability to the Indenture Trustee within two years of the Effective Date shall be deemed to have no further Claim against the Debtors and the Reorganized Debtors (or their property) or the Indenture Trustee in respect of such Claim and shall not participate in any distribution under the Plan. All property in respect of such forfeited distributions, including interest thereon, shall revert to the applicable Indenture Trustee and shall be distributed to other holders of the applicable securities who have complied with the requirements set forth in Section 5.5 of the Plan, on a *pro rata* basis, subject, nevertheless, to the Charging Liens of the Indenture Trustees.

        16.   <u>Incurrence of New Indebtedness</u>. The Reorganized Debtors' entry into the Exit Facility and the incurrence of the indebtedness thereunder on the Effective Date is authorized without the need for any further corporate action and without any further action by holders of Claims or equity interests.

17. <u>Issuance of New Common Stock</u>.  The issuance by Reorganized Silicon Graphics of the New Common Stock on the Effective Date is authorized without the need for any further corporate action and without any further action by holders of Claims or equity interests. The New Common Stock shall consist of 25,000,000 authorized shares of Reorganized Silicon Graphics and shall be distributed as follows, subject to adjustment pursuant to Section 6.10 of the Plan:  (A) 2,500,000 shares of New Common Stock shall be issued and distributed to the holders of Allowed Secured Note Claims pursuant to Article IV of the Plan; (B) 6,618,864 shares of New Common Stock shall be issued distributed to the holders of Allowed Secured Note Claims pursuant to the Rights Offering set forth in Article IX of the Plan; (C) 558,024 shares of New Common Stock shall be issued and distributed to holders of Allowed Cray Unsecured Debenture Claims Rights Offering set forth in Article IX of the Plan; (D) 181,136 shares of New Common Stock shall be issued and distributed to the Backstop Purchasers pursuant to the terms of the Backstop Agreement; (E) 141,976 shares of New Common Stock shall be issued and distributed to Lampe Conway on account of its exercise of the Lampe Conway Rights Offering Option, unless rescinded upon written notice to the Debtors within one Business Day of the Confirmation Date, in which case such shares of New Common Stock shall be acquired by the Backstop Purchasers pursuant to the Backstop Commitment Agreement; and (F) the Overallotment Shares shall be distributed to the Backstop Purchasers pursuant to Section 9.7 of the Plan and the Backstop Purchase Agreement.  In addition, 1,250,000 shares of the New Common Stock shall be reserved on account of the Management Incentive Plan.  The Debtors and the Ad Hoc Committee and its members (and each of their respective members, Affiliates, agents, directors, officers, employees, advisors, and attorneys) have, and upon confirmation of the Plan (including all documents necessary to effectuate the Plan or otherwise contemplated by

the Plan, including those contained in the Plan Supplement) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regards to the issuance and distribution of the New Common Stock under the Plan, and therefore are not, and on account of such distribution will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

18. <u>Exemption from Securities Laws</u>. To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the New Common Stock and the Subscription Rights will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities. The issuance of the New Common Stock and Subscription Rights are or were in exchange for Claims against the Debtors, or principally in such exchange and partly for Cash or property within the meaning of section 1145(a)(1) of the Bankruptcy Code. Pursuant to section 1145(c) of the Bankruptcy Code, the resale of any New Common Stock and any other securities issuable pursuant to the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities, except for any restrictions set forth in section 1145(b) of the Bankruptcy Code and any restriction contained in the Disclosure Statement. In addition, the issuance under the Plan of the New Common Stock purchased by Lampe Conway pursuant to Section 9.6 of the Plan and the Lampe Conway Rights Offering Option shall be exempt from registration under the Securities Act of 1933 (as amended) or any rules or regulations

promulgated thereunder pursuant to section 1145 of the Bankruptcy Code or applicable non-bankruptcy law. The distribution of the Backstop Securities (as defined in the Disclosure Statement) to be issued under the Plan shall be exempt from registration pursuant to Section 4(2) of the Securities Act. The issuance of the Management Securities pursuant to the Management Incentive Plan and New Management Agreements (if any) shall be exempt from registration pursuant to Section 4(2) of the Securities Act.

19. <u>Registration Rights Agreement</u>. On the Effective Date, Reorganized Silicon Graphics shall enter into the Registration Rights Agreement with each holder of at least 7.5% of the New Common Stock as of the Effective Date.

20. <u>The Liquidating Trust</u>. On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors, the Trustee, and the other parties thereto, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein which shall be for the benefit of the holders of Allowed Secured Note Claims, as provided in Section 4.5 of the Plan. On the Effective Date, the Debtors shall be deemed to have assigned and transferred the Liquidating Trust Assets to the Liquidating Trust free and clear of all liens, charges, claims, encumbrances, and other interests, and the Reorganized Debtors shall cooperate with the Liquidating Trust in the administration of the Liquidating Trust including without limitation, in all matters contemplated by Section 3.2 of the Liquidating Trust Agreement. In the event of any conflict between the terms of Section 5.11 of the Plan and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

21. <u>Distributions Under the Plan</u>. All distributions under the Plan shall be made in accordance with Article VI of the Plan.

22.    Disputed Claims.  The provisions of Article VII of the Plan, including,

without limitation, the provisions governing procedures for resolving Disputed Claims, are found

to be fair and reasonable and are approved.  In connection with distributions on account of

General Unsecured Silicon Graphics Claims, the Debtors or the Reorganized Debtors shall, in

good faith, determine the Claim each defendant in an avoidance action would have against

Silicon Graphics, and each such defendant shall be deemed to hold a Disputed General

Unsecured Silicon Graphics Claims in the amount so determined pending the disposition of such

cause of action or the lapse of the applicable time period for such cause of action to be initiated.

Distributions on account of such Disputed General Unsecured Silicon Graphics Claims shall be

made in accordance with Section 6.3 of the Plan to the extent such Disputed General Unsecured

Silicon Graphics Claims become Allowed.

23.    Assumption or Rejection of Executory Contracts and Unexpired Leases

(11 U.S.C. § 1123(b)(2)).  Pursuant to Section 8.1 of the Plan, as of the Effective Date all

executory contracts and unexpired leases that exist between the Debtors and any person or entity

shall be deemed rejected by the Debtors, except for any executory contract or unexpired lease (i)

that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective

Date, (ii) as to which a motion for approval of the assumption of such executory contract or

unexpired lease has been filed and served prior to the Confirmation Date, or (iii) that is

specifically designated as a contract or lease to be assumed on Schedules 8.1(A) (executory

contracts) or 8.1(B) (unexpired leases), contained in the Plan Supplement and which shall be

deemed to include all Customer Support Agreements, Non-Disclosure Agreements, and IP

License Agreements.  Whether or not identified on Schedules 8.1(A) or 8.1(B), all agreements

between the Debtors and any U.S. governmental entity shall be assumed on the Effective Date

pursuant to the Plan. Whether or not identified on Schedules 8.1(A) or 8.1(B), any and all outstanding purchase orders issued to the Debtors' by the Debtors' customers shall be continued on the Effective Date. Notwithstanding anything to the contrary in the Plan or this Order, no equity, stock, option, or other similar plans in effect on or prior to the Commencement Date shall be assumed.

24.     Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. Entry of the this Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 8.1 of the Plan, (ii) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject the executory contracts and unexpired leases specified in Section 8.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such executory contracts and unexpired leases, and (iii) the approval, pursuant to section 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan. The effect of confirmation of the Plan, the results thereof, and the transactions resulting therefrom or any other effect of the Reorganization Cases, including specifically the changes to the Debtors' boards of directors and equity interests, shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the executory contracts and unexpired leases assumed pursuant to the Plan.

25.     Inclusiveness. Unless otherwise specified on schedules 8.1(A) or (B) of the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements or other

agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

26.     Cure of Defaults.  The parties to such executory contracts or unexpired leases to be assumed pursuant to the Plan were afforded with good and sufficient notice of such assumption and an opportunity to object and be heard.  With respect to the objections filed to the Debtors' assumption of contracts and leases pursuant to Section 8.1 of the Plan, the Bankruptcy Court shall hold a hearing on a date to be set by the Bankruptcy Court.  Notwithstanding Section 8.1 of the Plan, the Debtors shall retain their rights to reject any of their executory contracts of unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.  As identified on schedule 8.1(A), the Debtors have reached agreements with counterparties to certain contracts with respect to the assumption of such contract, the amendment of certain of the contracts, and the cure due to such counterparty (collectively, the "Cure Agreements").  Upon entry of this Order, the Cure Agreements annexed hereto as Exhibit B are approved.  Notwithstanding any omission from Schedule 8.1 of the Plan, (i) all agreements between the Debtors and any United States governmental entity, (ii) all non-disclosure agreements to which any of the Debtors is a counterparty and (iii) all agreements, the primary purpose of which is the licensing of intellectual property rights by the Debtors from third parties shall be deemed assumed upon entry of this Order expressly conditioned upon and subject to the occurrence of the Effective Date and the cure costs in connection with each such agreement has been fixed at $0.00.

27.     Bar Date for Filing Proofs of Claim Relating to Executory Contacts and Unexpired Leases Rejected Pursuant to the Plan.  In the event that the rejection of an executory

contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or Reorganized Debtors, or their properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon Bankruptcy Services, LLC, the Debtors' Court-appointed Claims agent, on or before the date that is 30 days after the later of (i) the date of service of notice of the Confirmation Date, (ii) notice of modification to Schedules 8.1(A) or (B) of the Plan Supplement (solely with respect to the party directly affected by such modification), or (iii) the date of service of notice of such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults (solely with respect to the party directly affected by such rejection).

28.     Indemnification Obligations.  Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Commencement Date to indemnify, defend, reimburse, or limit the liability of directors, officers, or employees who are directors, officers, or employees of the Debtors on or after the Confirmation Date, respectively, against any Claims or causes of action as provided in the Debtors' certificates of incorporation, bylaws, indemnifications agreements, employment agreements, other organizational documents or applicable law, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before or after the Commencement Date.

29.     Insurance Policies.  Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are continued

pursuant to the Final Insurance Order. Nothing contained in Section 8.7 of the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

30. <u>Directors and Officers</u>. Pursuant to Section 10.1 of the Plan, effective as of the Effective Date, the management, control and operation of Reorganized Silicon Graphics and the other Reorganized Debtors shall become the general responsibility of the New Boards of each Reorganized Debtor, respectively. Pursuant to Section 10.3 of the Plan, effective as of the Effective Date, the persons identified in the Plan Supplement as members of the initial New Board of Reorganized Silicon Graphics and the additional member (if any) that may be designated pursuant to the terms of this paragraph 30 are deemed designated. As set forth in the Plan Supplement, on the Effective Date, the New Board of Reorganized Silicon Graphics shall be comprised of seven members, six of which are identified in the Plan Supplement. The Ad Hoc Committee, in consultation with the Debtors, shall be authorized, but not required, to select the seventh director prior to the Effective Date, and if such director is selected prior to the Effective Date, the Debtors shall file a notice with the Bankruptcy Court identifying such member together with biographical information. Pursuant to 10.4 of the Plan, the officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date. Such officers shall serve in accordance with applicable non-bankruptcy law, any employment agreement entered into with the Reorganized Debtors on or after the Effective Date and the New Organizational Documents. Pursuant to Section 10.5 of the Plan, Reorganized Silicon Graphics shall be deemed to have adopted the Management Incentive Plan as of the Effective Date. Subject to the prior approval of the New Board of Reorganized Silicon Graphics, on the Effective Date or as soon thereafter as

is practicable, Reorganized Silicon Graphics shall enter into the New Management Agreements, if any.

31. <u>Vesting of Assets</u>. Pursuant to Section 12.1 of the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Debtors, their properties and interests in property and their operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the estate of each Debtor shall vest in the respective Reorganized Debtor free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided in the Plan. For the avoidance of doubt, the $9.0 million funded to the Disbursing Agent pursuant to Section 4.6 of the Plan and the Liquidating Trust Assets will not revest in the Reorganized Debtors. From and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan.

32. <u>Discharge of Claims and Termination of Equity Interests</u>. Pursuant to Section 12.3 of the Plan, except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall terminate all equity interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against and equity interests in the Debtors shall be discharged and terminated, and all holders of such Claims and equity interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees or any of their assets or properties, any other or further Claim or equity interest based on any act or omission, transaction or other activity of

any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of equity interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

33. _Discharge of Debtors._ Pursuant to Section 12.4 of the Plan, upon the Effective Date, in consideration of the distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or equity interest and any Affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, equity interests, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated equity interest in the Debtors.

34. _Injunction._ Pursuant to Section 12.5 of the Plan, except as otherwise expressly provided in the Plan or this Order, all Persons or entities who have held, hold or may hold Claims against or equity interests in the Debtors are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or equity interest against any of the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor with respect to such Claim or equity interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor or against the property or interests in property of any Reorganized Debtor with respect to such Claim or equity interest, (iv) asserting any right of setoff, subrogation, or

recoupment of any kind against any obligation due to any Reorganized Debtor or against the property or interests in property of any Reorganized Debtor with respect to such Claim or equity interest, and (v) pursuing any Claim released pursuant to Article XII of the Plan.

35.     _Terms of Injunction_.  Unless otherwise provided in this Order, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

36.     _Exculpation_.  As provided for in Section 12.7 of the Plan, notwithstanding anything to the contrary in the Plan, as of the Effective Date, none of the Debtors, the Reorganized Debtors, the lenders and agents party to the Postpetition Financing Agreement, the Backstop Purchasers, the Creditors' Committee, the Indenture Trustees, Lampe Conway, the Ad Hoc Committee, or their respective officers, directors, members, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors and attorneys and representatives (but, in each case, solely in their capacities as such) shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Reorganization Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with these chapter 11 cases, the Plan, the Disclosure Statement or any contract, instrument, document, or other agreement related thereto; _provided_, _however_, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.  Nothing in Section 12.7 of the Plan or this Order shall limit the liability of the professionals of the

Debtors, the Reorganized Debtors, the Postpetition Lenders, the Creditors' Committee, or the Ad Hoc Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility. Nothing in Section 12.7 of the Plan or this Order shall in any way limit the liability of the parties listed on schedule 12.9 of the Plan Supplement.

37.     Releases. Pursuant to Section 12.8 of the Plan, effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of (i) the present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of or to the Debtors who acted in such capacities after the Commencement Date; (ii) the lenders and the agents party to the Postpetition Financing Agreement; (iii) the Backstop Purchasers; (iv) the Ad Hoc Committee; (v) each Indenture Trustee; (vi) the Creditors' Committee; (vii) Lampe Conway; and (viii) each holder of an Allowed Secured Note Claim, (A) the Debtors; (B) each holder of a Claim or equity interest that votes to accept the Plan (or is deemed to accept the Plan), and (C) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim that does not vote to accept the Plan, shall release unconditionally and forever each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors who acted in such capacity after the Commencement Date, the lenders and the agents party to the Postpetition Financing Agreement, the Backstop Purchasers, the Ad Hoc Committee, each Indenture Trustee, the Creditors' Committee, Lampe Conway, each holder of an Allowed Secured Note Claim and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives (but, in each

case, solely in their capacities as such) from any and all Claims or causes of action whatsoever in connection with, related to, or arising out of these chapter 11 cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; *provided*, *however*, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or gross negligence of any such person or entity. Nothing in Section 12.8 of the Plan or this Order shall limit the liability of the professionals of the Debtors, the Reorganized Debtors, the Postpetition Lenders, the Creditors' Committee, or the Ad Hoc Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility. Nothing in Section 12.8 of the Plan or this Order shall in any way operate as a release of the parties listed on schedule 12.9 of the Plan Supplement.

38. <u>Avoidance Actions/Objections</u>. Pursuant to Section 12.9 of the Plan, other than as released herein, in the Plan, or other order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Reorganized Debtors shall have the right to prosecute any and all avoidance actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542 through 546, 548 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession and any and all avoidance actions, recovery causes of action and objections to Claims under section 547 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession against those entities or individuals identified in schedule 12.9 of the Plan Supplement. Any potential defendant of a cause of action under section 547 of the Bankruptcy Code shall be deemed to hold a Disputed General Unsecured Silicon Graphics Claims in the gross amount of such potential action pending the disposition of such cause of action or the lapse of the applicable time period for such cause of action to be initiated. Distributions on account of

such Disputed General Unsecured Silicon Graphics Claims shall be made in accordance with Section 6.3 of the Plan to the extent such Disputed General Unsecured Silicon Graphics Claims become Allowed.

39.     <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Section 11.1 of the Plan have been satisfied or waived pursuant to Section 11.2 of the Plan.  In the event that one or more of the conditions specified in Section 11.1 of the Plan have not occurred on or otherwise waived pursuant to Section 11.2 of the Plan, (i) this Order shall be vacated, (ii) the Debtors and all holders of Claims and interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) the Debtors' obligations with respect to Claims and equity interests shall remain unchanged and nothing contained in the Plan or in this Order shall constitute or be deemed a waiver or release of any Claims or equity interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

40.     <u>Retention of Jurisdiction</u>.  This Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Reorganization Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

    i.      To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims and Administrative Expense Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to the Reorganization Cases;

    ii.     To determine any and all adversary proceedings, applications and contested matters;

iii. To hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

iv. To hear and determine any timely objections to, or requests for estimation of Disputed Administrative Expense Claims and Disputed Claims, in whole or in part and otherwise resolve disputes as to Administrative Expense Claims;

v. To resolve disputes as to the ownership of any Administrative Expense Claim, Claim or Old Equity Interest;

vi. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

vii. To issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

viii. To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

ix. To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

x. To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or by the Reorganized Debtors, the Trustee or the Disbursing Agent after the Effective Date for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

xi. To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

xii. To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of

the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

xiii.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

xiv.     To hear and determine any rights, Claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

xv.     To recover all assets of the Debtors and property of the Debtors' estates, wherever located;

xvi.     To enter a final decree closing the Reorganization Cases; and

xvii.     To hear any other matter not inconsistent with the Bankruptcy Code.

41.     <u>Effectuating Documents and Further Transactions</u>. Pursuant to Section 14.1 of the Plan, the Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, including those that are part of the Plan Supplement, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan.

42.     <u>Withholding and Reporting Requirements</u>. Pursuant to Section 14.2 of the Plan, in connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the

right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

43.     Corporate Action.  Pursuant to Section 14.3 of the Plan, on the Effective Date, all matters provided for under the Plan that may otherwise require approval of the stockholders or directors of one or more of the Debtors or Reorganized Debtors, including, without limitation, the authorization to issue or cause to be issued the New Common Stock and the Subscription Rights, the effectiveness of the New Organizational Documents, the election or appointment, as the case may be, of directors and officers of the Reorganized Debtors pursuant to the Plan and the authorization and approval of the New Management Agreements (if any), shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors or the Reorganized Debtors are incorporated, without any requirement of further action by the stockholders or directors of the Debtors or the Reorganized Debtors.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall, if required, file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

44.     Management Incentive Plan.  The terms and conditions of the Management Incentive Plan as set forth in the term sheet in the Plan Supplement are approved and Reorganized Debtors are authorized to enter into a Management Incentive Plan that is consistent with the term sheet contained in the Plan Supplement.

45.     Modifications.  Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, subject to the prior consent of the Ad Hoc Committee (which consent shall not be unreasonably withheld), after consultation with the

Creditors' Committee and as otherwise provided for in the Global Settlement, are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan.

46.     <u>Payment of Statutory Fees</u>.  On the Effective Date, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid; *provided*, *however*, that nothing in this Order or the Plan shall discharge the Debtors or the Reorganized Debtors for any obligations to pay fees payable under section 1930 of chapter 123 of title 28 of the United States Code from and after the Effective Date.

47.     <u>Post-Confirmation Date Professional Fees and Expenses</u>.  From and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the Reorganized Debtors and the Creditors' Committee.

48.     <u>Dissolution of Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Reorganization Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

49.     <u>Indenture Trustee as Claim Holder</u>.  Consistent with Bankruptcy Rule 3003(c), the Reorganized Debtors shall recognize proofs of Claim timely filed by any Indenture Trustee in respect of any Claims under the Indentures.  Accordingly, any Claim, proof of which is filed by the registered or beneficial holder of a Claim, is disallowed as duplicative of the Claim of the applicable Indenture Trustee, without any further action of the Bankruptcy Court.  Pursuant to the Plan, the claim on account of the Senior Secured Convertible Notes is Allowed in the amount of $193,923,662.47, without avoidance, setoff, subordination, any defenses, counterclaims, or any other reduction of any kind.  Pursuant to the Plan, the claim on account of the Senior Secured Notes is Allowed in the amount of $2,508,265.93, without avoidance, setoff, subordination, any defenses, counterclaims, or any other reduction of any kind.

50.     <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation, modification, assignment, consolidation, filing, or recording of any mortgage, deed of trust, Lien, financing statement, or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the New Common Stock, the Subscription Rights, the Backstop Commitment Agreement, the Lampe Conway Rights Offering Option, the Exit Facility, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

51.     <u>Binding Effect</u>.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan and Plan Supplement shall bind (i) any

holder of a Claim against, or equity interest in, each Debtor and such holder's respective successors and assigns, whether or not the Claim or equity interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan, (ii) any and all non-Debtor parties to assumed executory contracts and unexpired leases with any of the Debtors, (iii) the Objectors, (iv) every other party in interest in the chapter 11 cases, (v) all parties receiving property under the Plan and the Plan Supplement documents, and their respective heirs, executors, administrators, successors, or assigns.

52. <u>Governmental Approvals Not Required</u>. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

53. <u>Notice of Entry of Confirmation Order</u>. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Reorganized Debtors shall file and serve notice of entry of this Order in substantially the form annexed hereto as Exhibit C (the "Notice of Confirmation Order") on all creditors and interest holders, the United States Trustee for the Southern District of New York, the attorneys for the Ad Hoc Committee, the attorneys for the Creditors' Committee, Lampe Conway, and other parties in interest, by causing the Notice of Confirmation Order to be delivered to such parties by first-Class mail, postage prepaid, within 10 business days after entry of this Order. The Notice of Confirmation Order shall also be posted on the website of the Debtors' Court-appointed voting and tabulation agent, Financial Balloting Group LLC, at: http://www.fbgdocuments.com/sgi. Such notice is adequate under the particular

circumstances and no other or further notice is necessary. The form of Notice of Confirmation Order substantially in the form annexed hereto as Exhibit C is approved.

54.     Notice of Effective Date. As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all parties entitled to receive notice pursuant to this Court's order, dated May 31, 2006, establishing notice procedures in these chapter 11 cases.

55.     Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

56.     Revocation or Withdrawal of the Plan of Reorganization. The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

57.     Reversal. If any of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

58.    Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or a schedule or document in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

59.    Conflicts Between Order and Plan.  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.  The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

60.    Final Order.  This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated:  September 19, 2006
       New York, New York

    __/s/ Burton R. Lifland_____
    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

# EXHIBIT B

## EXHIBIT C