# AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 7, 2006, by and between Silicon Graphics, Inc. ("SGI") and Allegro Associates of Texas ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

**WHEREAS,** SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS,** SGI and the Claimant are parties to Consulting Agreement, dated as of October 15, 2004, (the "Contract"); and

**WHEREAS,** on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS,** notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating **$19,570.79** (the "Claim"); and

**WHEREAS,** on or about July 26, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 323 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $19,570.79 (the "Asserted Claim"); and

**WHEREAS,** in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.** **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the

AUS:2690123.1
54205.1

Formatted

Deleted: A 54205.1

"Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is **$9,785.40**(the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract; provided, however, that payment of the Cure Amount does not relieve the Reorganized Debtor or the Debtor-in-Possession from any post-petition liability and/or post-confirmation liability for unpaid services under the Contract; nothing contained herein shall be construed as a release for such post-confirmation and/or post-petition services. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     General Unsecured Nonpriority Claim.** Claimant shall retain an allowed general unsecured nonpriority claim totaling **$9,785.40** in Class 5 (General Unsecured Silicon Graphics Claims) under Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

AUS:2690123.1
54205.1

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**V.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.     No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.     Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.     Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.     Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.     Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

3

Formatted
Deleted: A
54205.1

**XII. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _Kathy Macchi_

Name: _Kathy Macchi_

Allegro Associates of Texas
1003 East 44th Street
Austin, Texas 78757

Telephone: [512 454 2727]
Fax: [512 454 7117]

Dated: _Aug 18_ , 2006

By: _Joan E. Roy_
Joan Roy
Director, Marketing

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-5183
Fax: (650) 933-0977

Dated: _Aug 22_ 2006

Formatted
Deleted: A
54205.1

AUS:2690123.1
54205.1

## AGREEMENT RELATING TO ASSUMPTION AND CURE

THIS AGREEMENT RELATING TO ASSUMPTION AND CURE (the "Agreement") is made and entered into as of August 16, 2006, by and between Silicon Graphics, Inc. ("SGI") and Altair Engineering, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to "Standalone Agreement for Remarketing by SGI", dated as of December 12, 2002, and amendments (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $123,112.00 (the "Claim"); and

WHEREAS, on or about August 2, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 439 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $213,803.00 (the "Asserted Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.      **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the

"Plan"), SGI shall assume the Contract.

**II.    Payment of Cure Amount.** The Parties agree that the Cure Cost is $73,867.20 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.    General Unsecured Nonpriority Claim.** Claimant shall retain an allowed general unsecured nonpriority claim totaling $49,244.80 in Class 5 (General Unsecured Silicon Graphics Claims) under Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV.    Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

2

**V.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.    Entire Agreement.** · This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII.** Jurisdiction. The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Tom Perring

CFO

Altair Engineering, Inc.
1820 E. Big Bear Road
Troy, MI 48083

Telephone: 248-614-2400

Dated: 8/16 , 2006

By: _____

Kathy Lanterman

SVP, CFO

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-8867

Dated: 8/17 , 2006

4

# AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 14, 2006, by and between Silicon Graphics, Inc. ("SGI") and Arrow Electronics, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to ASIC/RapidChip Design and Purchase Agreement, dated as of April 30, 2004 (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $156,904.60 (the "Claim"); and

**WHEREAS**, on or about July 10, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 75 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $156,904.60 (the "Asserted Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.**     **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is $109,000.00 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.    No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.    Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.    Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.  Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.    Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.    Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Douglass P. Christensen
Account Finance Manager

Arrow Electronics, Inc.
7459 South Lima Street
Englewood, CO 80112

Telephone: 303-600-1605
Fax: 303-600-1606

Dated: August 14, 2006

Dick Harkness
VP, Worldwide Manufacturing

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (715) 726-7005
Fax: (715) 726-4491

Dated: Aug 14, 2006

4

# AGREEMENT RELATING TO ASSUMPTION AND CURE

## THIS AGREEMENT RELATING TO ASSUMPTION AND CURE

(the "Agreement") is made and entered into as of August 2, 2006, by and between Silicon Graphics, Inc. ("SGI") and Avago Technologies Limited as successor in interest to Agilent Technologies, Inc. ("Claimant," and together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to a certain Development Agreement for 90 Nanometer Projects, dated as of April 22, 2005 (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $279,532.97 (the "Claim"); and

**WHEREAS**, the Claimant did not file a proof of claim in the Bankruptcy Cases; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.** **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is $111,813.19 (the "Cure Amount"). The Claim hereby is amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III.     General Unsecured Nonpriority Claim.** Claimant shall retain an allowed general unsecured nonpriority claim totaling $167,719.78 in Class 5 (General Unsecured Silicon Graphics Claims) under the Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV.     Preference Actions.** Subject to the assumption of the Contract in accordance with the terms of this Agreement, any and all claims of the Debtors against the Claimant under section 547 of the Bankruptcy Code are waived and released.

**V.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Claim (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

2

**VI.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof. Except as provided herein, the Debtors represent that this Agreement shall be effective and duly enforceable without approval of the Bankruptcy Court.

**VII.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VIII.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**IX.    Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**X.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**XI.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XII.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

3

**XIII.  Jurisdiction.**  The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

    **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

James Stewart
VP & General Manager

Avago Technologies Limited
4380 Ziegler Road
Ft. Collins, CO 80525

Telephone: (970) 288-4493
Fax: (970) 288-7906

Dated: _Aug 17_, 2006

Rick Chapek
VP Engineering

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1340

Telephone: (715) 726-4477
Fax: (715) 726-8012

Dated: _Aug 22_, 2006

4

# AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 31, 2006, by and between **Silicon Graphics, Inc.** ("SGI") and **Avaya World Services, Inc.** ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to Customer Agreement, dated as of December 1, 2003, and amendments (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $71,523.72 (the "Claim"); and

WHEREAS, on or about June 16, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 34 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $95,518.36 (the "Asserted Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

1.     **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is **$42,914.23** (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of the filing of the Bankruptcy case and arising under or related to the Asserted Claim (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.      No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.      Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.      Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.      Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.      Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.      Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

  **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: Carolyn Magaha

Name: Carolyn Magaha
Receivable Management Services
Agent for: Avaya World Services, Inc.
211 Mount Airy Road
Basking Ridge, New Jersey 07920

Telephone: 410-773-4063
Fax:  410-773-40

Dated: 8-31 , 2006

By: 

David Fairbanks
VP, Information Services

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-1234
Fax: (650) 933-0845

Dated: AUG 31 , 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 11, 2006, by and between Silicon Graphics, Inc. ("SGI") and Blue Sky Computer Systems, Inc. ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to a Consulting Agreement, dated as of September 22, 2005 (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $30,331.07 (the "Claim"); and

**WHEREAS**, on or about August 3, 2006, the Claimant filed that certain proofs of claim in the Bankruptcy Cases designated Claim No. 532 and 537 (the "Proofs of Claim") asserting general unsecured claims in the total amount of $29,642.17 and $688.90 (the "Asserted Claims"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.     Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.**  The Parties agree that the Cure Cost is $9,099.32 (the "Cure Amount").  The Claim and the Asserted Claims as evidenced by the Proofs of Claim hereby are amended to the Cure Amount.  SGI shall pay the Cure Amount as soon as practicable after the Effective Date.  Upon payment of the Cure Amount, the Claim and the Asserted Claims shall have been fully and finally satisfied.  Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract.  Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.  Claimant agrees to file any and all amendments to its Proofs of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.**  On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.**  Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.     No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.     Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.     Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.  Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.     Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.     Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

_____          _____
Don Gordon                                Bob Pette
President                                 Sr. Director

Blue Sky Computer Systems, Inc.           Silicon Graphics, Inc.
4270 Aloma Avenue, Suite 124              1200 Crittenden Lane
Winter Park, FL  32792                    Mountain View, CA 94043

Telephone: (407) 282-5973                 Telephone: (650) 960-1980
Fax: (407) 282-5873

Dated: _____, 2006                    Dated: _____, 2006

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue
Bankruptcy Court for all disputes and litigation arising under or relating to this A
To the extent that the Bankruptcy Court determines that it lacks jurisdiction over
dispute or litigation, such suit shall be brought in the United States District Cour
Northern District of California or the state courts in and for Santa Clara County,
California, as applicable.

　　　　　**IN WITNESS WHEREOF** and in agreement herewith, the Parti
executed and delivered this Agreement, as of the date first above written.


Don Gordon
President

Blue Sky Computer Systems, Inc.
4270 Aloma Avenue, Suite 124
Winter Park, FL  32792

Telephone: (407) 282-5973
Fax: (407) 282-5873

Dated: Aug. 15, 2006


Bob Pette
Sr. Director

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 960-1980

Dated: August 16 , 2006

## AGREEMENT RELATING TO ASSUMPTION AND CURE

### THIS AGREEMENT RELATING TO ASSUMPTION AND CURE

(the "Agreement") is made and entered into as of August 14, 2006, by and between Silicon Graphics, Inc. ("SGI") and Cyviz LLC ("Claimant" and, together with SGI, the "Parties").

### WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to a Reseller Agreement, dated as of April 19, 2004 (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $60,276.95 (the "Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.     Assumption of Contract.**  Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.**  The Parties agree that the Cure Cost is $15,069.23 (the "Cure Amount").  The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount.  SGI shall pay the Cure Amount as soon as practicable after the Effective Date.  Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied.  Payment of the Cure

Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.**  On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.**  Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.     No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.     Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and

responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.     Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.   Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.      Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.       Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.**  The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Jeffrey R. Eisenhard
VP Sales & Marketing

11 S. 12th Street, Suite #100
Richmond, VA 23219

Telephone: 804-644-3885
Fax: 804-644-3887

Dated: August 14, 2006

Bob Pette
Sr. Director

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 960-1980
Fax: (650) 933-[_____]

Dated: ___August 15___, 2006

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE**
(the "Agreement") is made and entered into as of August 28, 2006, by and between Silicon Graphics, Inc. ("SGI") and DataDirect Networks, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to Purchase Agreement, dated as of January 13, 2005 (as amended, the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $1,715,291.00 (the "Claim"); and

**WHEREAS**, on or about August 3, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 543 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $1,715,291.00 (the "Asserted Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.      Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II. Payment of Cure Amount.** The Parties agree that the Cure Cost is $825,000.00 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount in accordance with the following schedule:

| Date | Amount |
|------|--------|
| Effective Date + 2 weeks | $275,000.00 |
| Effective Date + 4 weeks | $275,000.00 |
| Effective Date + 6 weeks | $275,000.00 |

Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III. General Unsecured Nonpriority Claim.** Claimant shall retain an allowed general unsecured nonpriority claim totaling $890,291.00 in Class 5 (General Unsecured Silicon Graphics Claims) under Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV. Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**V.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.    Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

XII.  Jurisdiction. The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Paul Bloch
President

DataDirect Networks, Inc.
9320 Lurline Ave.
Chatsworth, CA 91311

Telephone: (818) 700-7600
Fax: (818) 700-7601

Dated: August 28, 2006

Dick Harkness
VP Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated: *August 28*, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE**
(the "Agreement") is made and entered into as of August 4th, 2006, by and between Silicon Graphics, Inc. ("SGI") and Environmental Health & Safety, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to Silicon Graphics, Inc. Consulting Agreement to "Assist and Coordinate efforts related to Corporate, State and Federal mandates for SGI Environmental/Occupational Health & Safety Program", dated as of July 1, 2004 (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $26,643.45 (the "Claim"); and

**WHEREAS**, on or about July 19th, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 248 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $26,643.45 (the "Asserted Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.      Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is $8,000.00 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto

2

and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.    Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

3

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

_____
Ron Pearson
Title: Owner

Environmental Health & Safety
1903 Pinehurst Avenue
Saint Paul, MN 55116

Telephone: 651-698-5852
Fax: 641-698-2376

Dated: __8/4__, 2006

_____
David Fairbanks
VP, Facilities/Information Services

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain   View,   CA   94043-1351

Telephone: (650) 933-1234
Fax: (650) 933-0845

Dated: __8/7__, 2006

Approved
SGI Legal
ER

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 17, 2006, by and between Silicon Graphics, Inc. ("SGI") and Environmental & Occupational Risk Management, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to Silicon Graphics, Inc. Consulting Agreement, dated as of July 1, 2002, as amended July 8, 2003, Amendment No. 2 on July 1, 2004, Amendment No. 3 on April 3, 2006 and Amendment No. 4 on July 1, 2006 (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $93,692.50 (the "Claim"); and

**WHEREAS**, on or about August 1, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 497 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $93,692.50 (the "Asserted Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.**     **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.      Payment of Cure Amount.** The Parties agree that the Cure Cost is $28,100.00 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount 30 days after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.      Release of the Debtors and the Debtors' Estates.** On the date the Cure Amount is paid, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the bankruptcy commencement date arising under or related to the Asserted Claim (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.      Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto

and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.     No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.     Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.     Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.     Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.     Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.     Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

    **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Name:  Paul D Johnson

Title:  CFO

Environmental & Occupational Risk
Management, Inc.
283 East Java Drive
Sunnyvale, CA 94089

Telephone: 408-822-8100
Fax: 408-408-8001

Dated: _____, 2006

Name:

Title:

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone:
Fax:

Dated: Aug 17, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 24, 2006, by and between **Silicon Graphics, Inc.** ("SGI") and **Expert Network Consultants, Inc.** ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to Purchase Order Numbers, 30053462 and 30053463 dated as of March 27, 2006, (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating **$58,697.35** (the "Claim"); and

**WHEREAS**, the claimant did not file a proof of claim in the Bankruptcy cases; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.** Assumption of Contract. Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.** Payment of Cure Amount. The Parties agree that the Cure Cost is **$29,348.68**

(the "Cure Amount"). The Claim is hereby amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

III.    **Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

IV.    **Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

2

**XI.     Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: ___ John . C . Brewer

Expert Network Consultants
2290 North Point Street
Suite 201
San Francisco, CA 94123

Telephone:    415 440 3464
Fax:    408 269 3616

Dated: Aug 30 , 2006

By: _____
David Fairbanks
VP, Information Services

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-1234
Fax: (650) 933-0845

Dated: Aug 31 , 2006

4

# AGREEMENT RELATING TO ASSUMPTION AND CURE

## THIS AGREEMENT RELATING TO ASSUMPTION AND CURE

(the "Agreement") is made and entered into as of July 31, 2006, by and between (i) Silicon Graphics, Inc. ("SGI") and (ii) Marc R. Hannah, an individual having his principal address at 231 Covington Road, Los Altos, CA 94024 and Hannah Technologies, Inc., a Delaware corporation having a place of business at 231 Covington Road, Los Altos, CA 94024 (collectively, the "Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06 10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and Marc R. Hannah are parties to a Consulting Agreement, dated October 31, 1997; and SGI and Hannah Technologies, Inc. are parties to a Consulting Agreement, dated June 1, 1998 (collectively, the "Contract").

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $43,500.00 (the "Claim"); and

WHEREAS, the Claimant did not file a proof of claim in the Bankruptcy Cases; and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.      **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the

"Plan"), SGI shall assume the Contract.

**II.    Payment of Cure Amount.** The Parties agree that the Cure Cost is $28,275.00 (the "Cure Amount"). The Claim hereby is amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III.    General Unsecured Nonpriority Claim.** Claimant shall retain an allowed general unsecured nonpriority claim totaling $15,225.00 in Class 5 (General Unsecured Silicon Graphics Claims) under the Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV.    Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

2

**V.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.    Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII.** **Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

_____          _____
Marc R. Hannah                                          Kathy Lanterman
                                                                      Chief Financial Officer

MARC R. HANNAH, as individual          Silicon Graphics, Inc.
231 Covington Road                                   1200 Crittenden Lane
Los Altos, CA 94024                                  Mountain View, CA 94043-1351

Telephone: 650-948-3119                         Telephone:(650) 933-8867
Fax: 650-948-3329                                     Fax: (650) 933-0298

Dated: Aug. 3, 2006                                   Dated: _____, 2006

_____
Marc R. Hannah

HANNAH TECHNOLOGIES, INC.
231 Covington Road
Los Altos, CA 94024

Telephone: 650-948-3119
Fax: 650-948-3329

Dated: Aug. 3, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of September 13, 2006, by and between Silicon Graphics, Inc. ("SGI") and Hewlett-Packard Company, as successor in interest to AppIQ, Inc. ("Claimant").

### WITNESSETH

**WHEREAS,** SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS,** SGI and the Claimant are parties to that certain "Solution Provider Agreement" between Silicon Graphics, Inc. and AppIQ, Inc. (predecessor in interest to Claimant), dated as of June 27, 2003, (the "Contract"); and

**WHEREAS,** on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS,** notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $ 118,575.63 (the "Claim"); and

**WHEREAS,** on or about July 26, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 296 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $118,575.63 (the "Asserted Claim"); and

**WHEREAS,** in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.    **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

II.     **Payment of Cure Amount.** The Parties agree that the Cure Cost is $59,287.81 (the "Cure Amount"). SGI shall pay the Cure Amount within 21 calendar days from the Effective Date, but in no event later than January 31, 2007. Payment shall be sent to Hewlett-Packard Company, Attn: Ken Higman, 2125 E Katella Avenue, Suite 400 Anaheim CA 92806. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract, subject only to the Claimant's rights on account of the Amended Asserted Claim (as defined in Section III hereof) pursuant to the Plan; provided, however, that payment of the Amended Asserted Claim pursuant to the Plan shall have no bearing on the Debtors' obligations in connection with the Cure Amount.

III.    **Remaining Unsecured Claim.** Upon payment of the Cure Amount, Claimant's Asserted Claim as evidenced by the Proof of Claim will be reduced to the amount of $59,287.82 and Claimant shall have an Allowed Class 6 (General Unsecured Silicon Graphics Claim) in such amount within the meaning of the Plan (the "Amended Asserted Claim"). Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

IV.     **Release of the Debtors and the Debtors' Estates.** On the Effective Date and upon payment of the Cure Amount, except as otherwise provided herein, Claimant shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Cure Amount, the Claim, or the Asserted Claim, other than Claimant's rights, pursuant to the Plan, to the Amended Asserted Claim (the "Released Matters").

V.      **Release of the Claimant.** On the Effective Date and upon payment of the Cure Amount, except as otherwise provided herein, the Debtors and the Debtors' estates, on behalf of themselves and their affiliates, shall be deemed to release, acquit, and forever discharge the Claimant and its successors, predecessors, officers, directors, agents, insurers, servants, employees, representatives, and attorneys, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which the Debtors and the Debtors' estates may have or claim to have now against the Claimant existing or occurring prior to the date of this Agreement arising under or related to the Released Matters.

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant against the Debtors, limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Matters, whether the same are known, unknown, or hereafter discovered or ascertained.

Each of the parties acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

> Each of the parties expressly waives and relinquishes any right or benefit it has or may have under Section 1542 of the Civil Code of the State of California or any similar provision under the statutory or nonstatutory law of any other jurisdiction to the full extent that it may lawfully waive all such rights and benefits pertaining to the Released Matters. In connection with such waiver and relinquishment, each of the parties acknowledge that it is aware that it or its attorneys, agents, consultants, employees or accountants may hereafter discover claims or facts in addition to or different from those which it now knows or believes to exist with respect to the subject matter of this Stipulation, the Released Matters and the other parties hereto, but it is the intention of each party to fully, finally and forever settle and release all of the Released Matters, except as otherwise expressly provided herein. In furtherance of this intention, the releases herein given shall be and remain in effect as full and complete releases notwithstanding discovery or existence of any such additional or different claims or facts.

VI.  **Unreleased Obligations.** Except as otherwise provided herein and in the Contract, the Debtors and the Claimant acknowledge that this Agreement shall only govern their respective obligations in connection with the Contract and shall not impact the parties' obligations in connection with that certain Software License Agreement, dated as of June 16, 1987, as amended, nor any other agreements or claims between the Debtors and the Claimant and its affiliates, including, but not limited to, Hewlett Packard Financial Services Company.

VII.  **Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

VIII.  **No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

IX.  **Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and

responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

X.     **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

XI.    **Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

XII.   **Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

XIII.  **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

XIV. **Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Anne Kennelly, Esq.        (by Timi Carey)
Corporate Counsel

Hewlett Packard Co.
Legal Department, M/S 1050
3000 Hanover Street
Palo Alto, CA 94304

Telephone: (650) 857-6902
Fax: (650) 852-8617

Dated: August __15 2006

-and-

Name: Douglas D. Cahill
Title: OEM Business Management

Hewlett Packard Co.
3000 Hanover Street
Palo Alto, CA 94304

Richard E. Harkness
VP Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-2776

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated: ~~August~~ 18, 2005
September

# AGREEMENT RELATING TO ASSUMPTION AND CURE

## THIS AGREEMENT RELATING TO ASSUMPTION AND CURE

(the "Agreement") is made and entered into as of August __, 2006, by and between Silicon Graphics, Inc. ("SGI") and International Business Machines Corporation ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to (i) the Agreement for Purchase of Products (Agreement No. SGI0001), having a commencement date of July 28, 1994 (as amended, the "Chip Agreement"), and (ii) the First Amended and Restated Product Sales Agreement (Agreement No. 000251), effective as of September 9, 2003 (as amended, the "Product Sales Agreement" and, together with the Chip Agreement, the "Contracts"); and

**WHEREAS**, SGI and the Claimant are also parties to the License Agreement, dated July 1, 1994 (the "Cross License Agreement") pursuant to which, among other things, Claimant granted to SGI a license to certain of Claimant's patents and SGI granted to Claimant a license in certain of SGI's patents, all as more fully described in the Cross License Agreement; and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, the Schedules list certain claims held by the Claimant aggregating $2,385,611.86 (the "Scheduled Claim"); and

**WHEREAS**, on or about June 20, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 37 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $2,385,611.86 (the "Asserted Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Chip Agreement, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Chip Agreement in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I. **Assumption of Chip Agreement.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Chip Agreement.

II. **Payment of Cure Amount.** The Parties agree that the Cure Cost is $1,883,548.12 (the "Cure Amount"). The Scheduled Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount in accordance with the following schedule:

| Date | Amount |
|------|--------|
| Effective Date + 2 weeks | $400,000 |
| Effective Date + 4 weeks | $400,000 |
| Effective Date + 6 weeks | $400,000 |
| Effective Date + 8 weeks | $400,000 |
| Effective Date + 10 weeks | $283,548.12 |

Upon payment of the Cure Amount, the Scheduled Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contracts. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Chip Agreement, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

III. **Release of the Debtors and the Debtors' Estates.** On the Effective Date, except for obligations arising under the Chip Agreement after the commencement of the Bankruptcy Cases or as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contracts (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant arising under or related to the Contracts, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known,

2

unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

The Parties acknowledge that all claims or possible claims arising under or related to the Cross License Agreement do not fall within the scope of the releases granted herein.

**IV.** **Release of the Claimant.** On the Effective Date, except for obligations arising under the Chip Agreement after the commencement date of the Bankruptcy Cases or as otherwise provided herein, the Debtors, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge the Claimant, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, including, but not limited to, claims arising under chapter 5 of the Bankruptcy Code, known or unknown, fixed or contingent, which the Debtors may have or claim to have now against the Claimant existing or occurring prior to the date of this Agreement arising under or related to the Cure Amount (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by the Debtors arising under or related to the Cure Amount, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Among the matters specifically excluded by this release are all claims or possible claims arising from the Cross License Agreement. The Debtors acknowledge that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Debtors expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

The Parties acknowledge that all claims or possible claims arising under or related to the Cross License Agreement do not fall within the scope of the releases granted herein.

**V.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.     No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.     Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.     Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.     Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.     Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.     Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII.** **Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Hal Lasky
Director, TG Strategic Client
IBM Systems & Technology Group
International Business Machines Corp.
2070 Route 52, Mail Drop 92C
Hopewell Junction, NY 12533-6683

Telephone: (845) 894-5579
Fax: (845) 892-5153

Dated: August ___, 2006

Richard E. Harkness
VP Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated: August 25 2006

## AGREEMENT RELATING TO ASSUMPTION AND CURE

THIS AGREEMENT RELATING TO ASSUMPTION AND CURE (the "Agreement") is made and entered into as of August 17, 2006, by and between Silicon Graphics, Inc. ("SGI") and Insight Financial Corporation ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to "Master Lease Agreement", dated as of July 9, 2002, and "Lease Renewal Agreement, Equipment Schedule No. 783-01" dated August 23, 2005, (collectively the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating **$11,800.36** (the "Claim"); and

WHEREAS, on or about August 3, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 535 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $125,337.36 (the "Asserted Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

1.    **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the

"Plan"), SGI shall assume the Contract.

**II.    Payment of Cure Amount.** The Parties agree that the Cure Cost is **$5,900.18** (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.    Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions

2

hereof.

**V.    No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.    Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.    Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.  Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.    Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.    Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

      **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _Margaret m Barr_  By: _____

Name: _Margaret m. Barr_  David Fairbanks
                    VP, Information Services

Insight Financial Corporation
One Northbrook Place Center      Silicon Graphics, Inc.
5 Revere Drive, Suite 200         1200 Crittenden Lane
Northbrook, IL 60062            Mountain View, CA 94043

Telephone: _847 509 8500 233_  Telephone: (650) 933-1234
Fax: _847 509 8525_         Fax: (650) 933-0845

Dated: _8-30_ 2006         Dated: _AUG 31_, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 22, 2006, by and between Silicon Graphics, Inc. ("SGI") and Interactive Supercomputing, Inc., also known as Interactive Supercomputing, LLC, ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to a Development and License Agreement, dated as of September 23, 2004 (as amended, the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $299,798.60 (the "Claim"); and

**WHEREAS**, the Debtors have already paid the Claimant $142,701.37 on account of obligations under the Contract (the "Prior Payment"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have further agreed to amend the Contract as set forth in Schedule A hereto (collectively, the "Amendments").

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

1.     **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract pursuant to section 365 of the Bankruptcy Code.

**II.     Payment of Cure Amount.** Subject to the occurrence of the Effective Date and assumption of the Contract as modified, the Parties agree that the Cure Cost is $100,000.00 (the "Cure Amount") and the Claim hereby is amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date but in no event later than 21 days after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived , it being understood and agreed that certain payments are due and owing by the Debtors to the Claimant under the Contract as amended on a going forward basis, including without limitation a payment of $50,000 (as set forth in the amendment described in Section III below) due on or before September 15, 2006 (the "September Payment").

**III.     Amendments to the Contract.** The Contract shall be, as of the Effective Date, amended as set forth in Schedule A hereto. Schedule A expressly is made part of this Agreement and the Contract as if set forth herein and therein at length.

**IV.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims"), provided however, that nothing herein is intended to modify, terminate, restrict, abrogate or limit any obligations under this Agreement or the Debtors' ongoing obligations under the Contract as amended, including without limitation the obligation to make the September Payment. In addition, notwithstanding anything herein to the contrary, nothing herein shall be deemed to affect the validity of the Prior Payment and each of the Debtors on behalf of itself and its respective estate shall be deemed to have waived any rights to seek recovery of the Prior Payment on any basis.

**V.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

2

**VI.    No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant and this Agreement shall be null and void in all respects.

**VII.    Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.  Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.    Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of New York, to the exclusion of its rules of conflict of laws.

**XI.    Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court or the state courts in New York, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

James E. Scully

Chief Financial Officer

Interactive Supercomputing, Inc.

135 Beaver Street

Waltham, MA 02452

Telephone: 781-419-5050

Fax: 781-419-6050

Dated: 8/22 , 2006

By: _____

Dave Parry

Sr. Vice President & General Manager

Silicon Graphics, Inc.

1200 Crittenden Lane

Mountain    View,    CA    94043

Telephone: (650) 933-2192

Fax: (650) 933-0977

Dated: Aug 25 , 2006

4

**SCHEDULE A**

# AMENDMENT NO. 2
## TO THE DEVELOPMENT AND LICENSE AGREEMENT
## BETWEEN SILICON GRAPHICS, INC. AND
## INTERACTIVE SUPERCOMPUTING, INC.

### BACKGROUND

This amendment ("Amendment") is entered into on August 22, 2006, ("Effective Date") between Silicon Graphics, Inc. ("SGI") and Interactive Supercomputing, Inc. ("ISC"). SGI and ISC may be referred to as "Party" or "Parties" to the Amendment.

### RECITALS

A.   The Parties previously entered into an agreement entitled "Development and License Agreement," dated September 23, 2004, and Amendment No. 1 on December 23, 2005, (the "Original Agreement");

B.   The Parties entered into the Original Agreement for the purpose of the development of ISC software and the licensing by ISC of certain software to SGI; and

C.   The Parties now wish to amend the Original Agreement for the purpose of modifying the license fees.

### AMENDMENT PROVISIONS

1.   Section 5.2 (a), (b) and (c) of the Original Agreement as amended in Amendment No. 1 is deleted and replaced as follows:

"(a) The fees for the Licensed Software are set forth in Exhibit 2."

2.   Exhibit 2 of the Original Agreement as amended in Amendment No. 1 is deleted and replaced by Exhibit 2 ("License Fees and Payment Methods") attached hereto and incorporated herein.

3.   All other terms of the Original Agreement which are not in conflict with the provisions of this Amendment will remain unchanged and in full force and effect. In case of a conflict in the terms of the Original Agreement and this Amendment, the provisions of this Amendment will control.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment will become operative on the Effective Date.

SILICON GRAPHICS, INC.

By: _____

David Parry
NAME (PRINT OR TYPE)

Senior Vice President
TITLE

INTERACTIVE SUPERCOMPUTING, INC.

By: _____

James E. Scully
NAME (PRINT OR TYPE)

CFO
TITLE

---

**SCHEDULE A**

Exhibit 2

License Fees and Payment Methods

For purposes of this Agreement, SGI will be deemed to "issue" a license to the Licensed Software and "accrue" the License Fees payable to ISC applicable thereto on the date when SGI issues an invoice for the Licensed Software to the applicable End User.

**I.    Pre-Paid License Fees**

A.    SGI will purchase $150,000 of Pre-Paid licenses for the Licensed Software at the fees set forth below.

    1.    Licensed Software licensed for use with Altix System configurations of 63 processors or less: $1,000 per processor / year.

    2.    Licensed Software for use with Altix System configuration of 64 processors or more: $500 per processor / year.

    A processor covered by this Article I (A) is equivalent to a "socket" versus a "core."

B.    Payment Method: With respect to Article I (A) above, SGI will pay $150,000 to ISC as follows:

    1.    $50,000 due September 15, 2006
    2.    $100,000 to be paid according to the terms of the "Agreement Relating to Assumption and Cure" between the parties dated August 22, 2006.

**II.    Subsequent License Fees**

A.    All purchases of Licensed Software over the $150,000 pre-paid fees described above will be billed to SGI at the following rates:

    1.    $1,000 per processor / year for 16 processors or less
    2.    $149 per processor / year for greater than 16 processors but less than 256 processors
    3.    $49 per processor / year for greater than 256 processors

    A processor covered by this Article II (A) is equivalent to a "socket" versus a "core."

B.    Payment Method: All License Fees calculated according to the terms of this Article II (A) will be due on or before the last day of the month immediately following the calendar Quarter in which the annual license was invoiced by SGI to the End User. All payments will be accompanied by a report summarizing all licenses of the Licensed Software and calculating the License Fees due ISC with respect to such licenses. If quarterly payments are delinquent and not cured within ten (10) days written notice by ISC, ISC, at is sole discretion, may change terms for all future payments to monthly - "payable by end of month following month in which license is invoiced by SGI."

**III.    Evaluation License.**

SGI will be entitled to the following evaluation licenses:

A.    SGI will be granted an unlimited amount of 30-day evaluation licenses.
B.    Upon consent of ISC, SGI will be granted 90 day evaluation licenses.

**SCHEDULE A**

**IV.     Proposal for Unlimited Licenses.**

SGI and ISC will negotiate in good faith towards the implementation of an alternative license fee structure for 5 months of unlimited licenses for a flat fee of $175,000 to be paid to ISC in 2006.

# AGREEMENT RELATING TO ASSUMPTION AND CURE

## THIS AGREEMENT RELATING TO ASSUMPTION AND CURE

(the "Agreement") is made and entered into as of August 23, 2006, by and between Silicon Graphics, Inc. ("SGI") and Iron Mountain Information Management, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to:

- Connected Corporation Service Agreement and License #A5016, dated February 25, 2003
- Iron Mountain Off-Site Data Protection, Inc. Customer Agreement, effective November 1, 2001
- Iron Mountain Off-Site Data Protection, Inc. Customer Agreement, effective October 1, 2001
- Iron Mountain Off-Site Data Protection, Inc. Customer Agreement, effective August 1, 2002
- Iron Mountain Records Management and Service Agreement, effective January 1, 2000
- Iron Mountain Records Management and Service Agreement, effective March 4, 1998
- Iron Mountain (as successor in interest to First American Record Storage Co.) Storage and Service Agreement, effective October 12, 1989
- Iron Mountain (as successor in interest to Arcus Data Security) Data Storage and Service Agreement, effective May 1, 1999
- Iron Mountain Records Disposition and Destruction Service Agreement, effective March 1, 2000

collectively (the "Contracts"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain pre-petition claims aggregating $212,945.67 (the "Pre-Petition Claims") and post-petition claims aggregating $71,842.77 (the Post-Petition Claims") (collectively, the "Claim"); and

WHEREAS, on or about July 7, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 72 (the "Proof of Claim") asserting a pre-petition claim in the total amount of $206,535.52 (the "Asserted Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contracts, the Parties have agreed to fix the amounts that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Amount") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.      **Assumption of Contracts.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contracts.

II.     **Payment of Cure Amount.** The Parties agree that the Cure Amount is $173,000.00 as to the Pre-Petition Claim and $71,842.77 as to the Post-Petition Claim (the "Cure Amount"). The Claim, including the Asserted Claim, as evidenced by the Proof of Claim, hereby are amended to the Cure Amount. SGI shall pay the Pre-Petition Claim portion of the Cure Amount as soon as practicable after the Effective Date. SGI shall pay the Post-Petition Claim portion of the Cure Amount within ten (10) business days of the execution of this Agreement. Payment of the pre-petition Cure Amount shall made out to "Iron Mountain Information Management, Inc." and delivered to R. Frederick Linfesty, Esq. / Staff Attorney / Iron Mountain Information Management, Inc. / 745 Atlantic Ave., 10th Floor / Boston, MA 02111. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied and any and all liens, claims, encumbrances, and interests securing the Claim and the Asserted Claim shall be deemed released and/or extinguished. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Amounts or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contracts as of the date of this Agreement. Amounts owing incurred after the date of this Agreement will be paid within the payment terms contemplated by the Contracts. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contracts, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

III.    **Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

2

**IV.     No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**V.     Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VI.     Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VII.     Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**VIII.     Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**IX.     Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**X.**    **Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**XI.**    **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

R. Frederick Linfesty, Esq.
Staff Attorney

Name:  R. Frederick Linfesty, Esq.
Title:  Staff Attorney

Iron Mountain Information Management, Inc.
10th Floor
745 Atlantic Avenue
Boston, MA 02111

Telephone: 617-535-2980
Fax: 617-451-0409

Dated: August 23, 2006

Name:  Richard E. Harkness, Jr.
Title:  VP of Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: 715-726-7005
Fax: 715-726-7078

Dated: August 23, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 28, 2006, by and between Silicon Graphics, Inc. ("SGI") and LSI Logic Corporation and its subsidiaries and affiliates including, but not limited to, Engenio Information Technologies, Inc. (f/k/a LSI Logic Storage Systems, Inc.) (collectively, the "Claimant" and, together with SGI, the "Parties").

### WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to a certain Purchase Agreement, dated as of September 1, 2000 (as amended, the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, SGI currently believes that the Claimant holds certain claims aggregating $5,235,048.31 (the "Claim"); and

**WHEREAS**, on or about August 3, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 479 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $5,544,334.31 (the "Asserted Claim") part of which the Claimant asserts is entitled to priority under section 546(c) of the Bankruptcy Code (the "Reclamation Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have further agreed to amend the Contract as set forth in Schedule A hereto (collectively, the "Amendments").

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.  **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

II.  **Payment of Cure Amount.** The Parties agree that the Cure Cost is $4,188,040.00 (the "Cure Amount"). The Scheduled Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount in accordance with the following schedule:

| Date | Amount |
| --- | --- |
| Effective Date + 2 weeks | $698,006.66 |
| Effective Date + 4 weeks | $698,006.66 |
| Effective Date + 6 weeks | $698,006.66 |
| Effective Date + 8 weeks | $698,006.66 |
| Effective Date + 10 weeks | $698,006.66 |
| Effective Date + 12 weeks | $698,006.70 |

Upon payment of the Cure Amount, the Scheduled Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract prior to May 8, 2006. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

III.  **Amendments to the Contract.** The Contract shall be, as of the Effective Date, amended as set forth in Schedule A hereto. Schedule A expressly is made part of this Agreement and the Contract as if set forth herein and therein at length.

IV.  **Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, demands (including, but not limited to, the Reclamation Claim), losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to amounts owed under the Contract prior to May 8, 2006.

2

**V.  Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.  No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant and this Agreement shall be null and void, *ab initio*, in all respects.

**VII.  Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.  Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.  Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.  Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of New York.

**XI.  Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Southern District of New York or the Supreme Court of New York, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Andrew S. Hughes
Vice President, General Counsel
and Corporate Secretary

LSI Logic Corporation and its
subsidiaries and affiliates including,
but not limited to, Engenio
Information Technologies, Inc.
(f/k/a LSI Logic Storage Systems, Inc.).
1621 Barber Lane, M/S D-106
Milpitas, CA 95035-7458

Telephone: (408) 433-4039
Fax: (408) 433-6896

Dated: August 28, 2006

Richard E. Harkness
VP Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated August 28, 2006

# AMENDMENT NO. 3
## TO THE PURCHASE AGREEMENT BETWEEN
## SILICON GRAPHICS, INC. AND
## ENGENIO INFORMATION TECHNOLOGIES, INC.
## (FORMERLY LSI LOGIC STORAGE SYSTEMS, INC.)

### BACKGROUND

This third amendment ("Amendment") is entered into on August 28, 2006 (the "Effective Date"), between Silicon Graphics, Inc. ("SGI") and Engenio Information Technologies, Inc. ("Seller"). SGI and Seller may be referred to as "Party" or "Parties" to the Amendment.

### RECITALS

A.  LSI Logic Storage Systems, Inc. and SGI previously entered into an agreement entitled "Purchase Agreement," dated September 1, 2000, Amendment No. 1 on February 13, 2002, and Amendment No. 2 on June 17, 2005 (collectively the "Original Agreement");

B.  Since the effective date of the Original Agreement, LSI Logic Storage Systems, Inc. changed its name to Engenio Information Technologies, Inc., but otherwise for all respects that are material to the Agreement remains the same legal entity.

C.  The Parties entered into the Original Agreement for the purpose of Seller providing SGI with products and services; and

D.  The Parties now wish to further amend the Original Agreement for the purpose of amending the product pricing and establishing a Competitive Advantage Pool Fund.

### AMENDMENT PROVISIONS

1.  Attachment 1 entitled "Competitive Advantage Pool (CAP) Fund" is added to the Original Agreement and incorporated herein by reference.

2.  The parties agree to review the CAP Fund program provided for by this Amendment each year between June 1 and June 30 to evaluate its ongoing effectiveness. At that time and with prior written notice, either party may terminate the CAP Fund program provided for in this Amendment for convenience, effective on July 1. If the CAP Fund program provided for in this Amendment is not terminated in writing prior to July 1, the CAP Fund program shall continue for another 12 months. Notwithstanding the termination of the CAP Fund program, SGI will be entitled to utilize the existing CAP Fund until the CAP Fund is exhausted according to Section 3(G) of Attachment 1.

3.  All other terms of the Original Agreement which are not in conflict with the provisions of this Amendment will remain unchanged and in full force and effect. In case of a conflict in the terms of the Original Agreement and this Amendment, the provisions of this Amendment will control.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment will become operative on the Effective Date.

SCHEDULE A

**SILICON GRAPHICS, INC.**

By: _____

RICHARD E. HARKNESS
VP Manufacturing Operations

**ENGENIO INFORMATION
TECHNOLOGIES, INC.**

By: _____

ANDREW S. HUGHES
Vice President and Secretary

## ATTACHMENT 1

### Competitive Advantage Pool ("CAP") Fund:

1. Price Increase.

During the Term of the Agreement, Engenio will increase Product pricing by 1.5% above Engenio's Quarterly Marketing Price List ("QMPL"). The price increase will be utilized by Engenio as described in Section 2, below.

2. CAP Fund.

In consideration for the 1.5% price increase, Engenio agrees to the following:

| SGI Purchase Amounts (measured independently each calendar quarter) (calculated only on QMPL amount) | Engenio Contributions |
|---|---|
| For those purchase amounts up to and including $8,300,000 | Engenio will apply 1.5% of Product purchases towards the CAP Fund. |
| For those purchase amounts above $8,300,000 but below $12,000,000 | Engenio will contribute 1.5% of Product purchases to the CAP Fund and provide SGI with a 1.5% credit or rebate (at SGI's discretion) at the end of SGI's fiscal quarter. |
| For those purchases amounts above $12,000,001 | Engenio will provide SGI with a 1.5% credit or rebate (at SGI's discretion) at the end of SGI's fiscal quarter. No contributions to the CAP Fund will be made by SGI or Engenio based on purchase amounts in excess of $12,000,000 in a single calendar quarter. |

3. CAP Fund Activities and Procedures.

   A.  The CAP Fund will include, but is not limited to, the following activities benefiting SGI:

   - field promotions
   - marketing education materials and whitepapers
   - competitive market research and analysis
   - reseller and field training materials and events
   - support of a demo equipment repurposing and reward program

   B.  The CAP Fund will be allocated and distributed in agreement with SGI, but managed by Engenio.

   C.  Engenio will have fiscal responsibility to manage the funds and distribute the CAP Funds according to mutual agreement by SGI and Engenio.

   D.  On or about the 15th day of the third month of each calendar quarter, Engenio and SGI will mutually agree upon the initiatives, support and programs for which the CAP Funds generated as a result of revenue in the current quarter will be utilized in the subsequent two quarters. Final approval on the

planned distribution of the CAP Funds will be in writing and signed by both parties or documented via e-mail.

E. If a change is requested or required to the planned distribution of the CAP Fund, both parties must agree and document the change in writing or via e-mail.

F. Engenio will provide SGI with an accounting of the actual utilization of the CAP Fund on a quarterly basis.

G. CAP Fund proceeds for each calendar quarter must be fully utilized during the two subsequent calendar quarters. At no such time will cash proceeds be distributed to SGI. Any portion of the CAP Fund that is not utilized during the two subsequent calendar quarters is non-refundable and non-transferable to subsequent quarters, and will be retained by Engenio.

*[End of Document]*

# AGREEMENT RELATING TO ASSUMPTION AND CURE

THIS AGREEMENT RELATING TO ASSUMPTION AND CURE (the "Agreement") is made and entered into as of July 31, 2006, by and between Silicon Graphics, Inc. ("SGI") and Market2Lead, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to the "Consulting Agreement", dated as of February 9, 2006, (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $46,566.95 (the "Claim"); and

WHEREAS, on or about July 21, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 225 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $46,566.95 (the "Asserted Claim"); and

$ 68,266.94  ER  per plan 8/10/06  8/22/06

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.**    **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.    Payment of Cure Amount.** The Parties agree that the Cure Cost is $18,626.75 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.   General Unsecured Nonpriority Claim.** Claimant shall retain an allowed general unsecured nonpriority claim totaling $27,940.02 in Class 5 (General Unsecured Silicon Graphics Claims) under the Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV.    Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

2

**V.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties

**VIII.    Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation

3

**XII. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Geoff Rego
Chief Operating Officer

Market2Lead, Inc.
3940 Freedom Circle
Suite 804
Santa Clara, CA 95054

Telephone: (408) 209-9147
Fax: (408) 521-0207

Dated: 8/14 , 2006

Joan Roy
Director Marketing

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (650) 933-5183
Fax: (650) 933-0659

Dated: 8/16, 2006

4

# AGREEMENT RELATING TO ASSUMPTION AND CURE

## THIS AGREEMENT RELATING TO ASSUMPTION AND CURE

(the "Agreement") is made and entered into as of August 31, 2006, by and between Silicon Graphics, Inc. ("SGI") and Novell, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to the SuSE OEM and License Agreement for SuSE Linux Operating System with Silicon Graphics, Inc, dated as of August 6, 2003 (as amended or assigned, the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $508,094.30 (the "Claim"); and

WHEREAS, the Claimant did not file a proof of claim in the Bankruptcy Cases; and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

WHEREAS, the Parties will renegotiate the Contract in good faith by October 31, 2006, using Claimant's standard ISV/IHV Agreement as the basis for the new or amended Contract;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II. Payment of Cure Amount.** The Parties agree that the Cure Cost is $406,475.44 (the "Cure Amount"). The Claim hereby is amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III. Release of the Debtors and the Debtors' Estates.** Upon payment of the Cure Amount, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code) causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR/CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV. Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V. No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI. Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII. Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX. Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X. Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: _____Ron Warren_____

_____Contract Manager_____

Title: _____

Novell, Inc.
1800 S. Novell Place
Provo, Utah, 84606

Telephone: (801) 861-2840
Fax: (801) 861-2855

Dated: 9/6, 2006

By: _____
Dave Parry
Sr. Vice President & General Manager

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain     View,     CA     94043

Telephone: (650) 933-2192
Fax: (650) 933-0977

Dated: 9/7, 2006

# AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 28, 2006, by and between **Silicon Graphics, Inc.** ("SGI") and **Pinnacle Data Systems, Inc.** ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties the Repair Service Agreement dated as of August 4, 2004, (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating **$650,491.31** (the "Claim"); and

**WHEREAS**, Claimant filed certain Proof of Claims asserting general unsecured claims (collectively the "Asserted Claim") as follows:

Claim #364 on July 31, 2006, for $624,169.80

Claim #363 on July 31, 2006, listed as an "Undetermined" amount but agreed to herein as $26, 321.51.

Claim #597 on August 2, 2006, for $624,169.80 (duplicate of Claim #364)

Claim #596 on August 3, 2006, listed as an "Undetermined" amount but agreed to herein as $26, 321.51 (duplicate of Claim #363)

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have further agreed to amend the Contract as set forth in Schedule A hereto (collectively, the "Amendments").

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.      Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is **$463,240.37** (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable but not to exceed sixty (60) days after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other pre-petition claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.    Amendments to the Contract.** The Contract shall be, as of the Effective Date, amended as set forth in Amendment No. 2 to the Repair Service Agreement dated August 28, 2006, and attached hereto as Schedule A. Schedule A expressly is made part of this Agreement and the Contract as if set forth herein and therein at length.

**IV.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all pre-petition claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims"). Provided, however, that the claimant's right to payment for post-petition administrative expenses is expressly excluded from this release.

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE

RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**V.    Due Authorization.**  Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.    Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.    Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.    Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.    Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: _MICHAEL R SPIRE_

_PRESIDENT & CEO_

Pinnacle Data Systems, Inc.
6600 Port Road
Groveport, Ohio 43125

Telephone: _(614) 748-1168_
Fax: _(614) 409-1042_

Dated: _Sep 6_, 2006

By: _____

Terry Oberdank
VP, Technology Solutions Group

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (650) 933-6296
Fax: (650) 933-023320

Dated: _SEP 6_, 2006

# AMENDMENT NO. 2
## TO THE REPAIR SERVICE AGREEMENT
## BETWEEN SILICON GRAPHICS, INC. AND PINNACLE DATA SYSTEMS, INC.

### BACKGROUND

This amendment ("Amendment") is entered into on August 28, 2006, ("Effective Date") between Silicon Graphics, Inc. ("SGI") and Pinnacle Data Systems, Inc. ("PDSI"). SGI and PDSI may be referred to as "Party" or "Parties" to the Amendment.

### RECITALS

A.    The Parties previously entered into an agreement entitled "Repair Service Agreement," dated August 4, 2004, and Amendment No. 1 on January 10, 2005, (the "Original Agreement");

B.    The Parties entered into the Original Agreement for the purpose of PDSI providing repair services to SGI; and

C.    The Parties now wish to amend the Original Agreement for the purpose of extending the Initial Term.

### AMENDMENT PROVISIONS

1.    Section 11.1 "Term" of the Original Agreement is deleted and replaced as follows:

"The initial term of this Agreement shall commence upon the Effective Date and shall end on August 28, 2009, (the "Initial Term"). Thereafter, this Agreement will automatically renew for successive periods of (1) year each (each a "Renewal Term")."

2.    The following is added as a new Section 12.1.1 to the Original Agreement.

12.1.1 The indemnifying party shall have the right, at its expense, to participate in or assume control of the negotiation, settlement or defense of the claim and, in such event, the indemnifying party shall reimburse the indemnified party for all the indemnified party's out-of-pocket expenses as a result of such participation or assumption. If the indemnifying party elects to assume such control, the indemnified party shall have the right to participate in, but not control, the negotiation, settlement or defense of such third party claim and to retain counsel to act on its behalf, provided that the fees and disbursements of such counsel shall be paid by the indemnified party unless the indemnifying party consents to the retention of such counsel or unless the representation of both the indemnifying party and indemnified party by the same counsel would be inappropriate due to the actual or potential differing interests between them (such as the availability of different defenses). If the indemnifying party, having elected to assume such control, thereafter fails to defend the claim within a reasonable time, the indemnified party shall be entitled to assume such control. In such event, the indemnifying party shall be bound by the results obtained by the indemnified party with respect to such claim.

If the indemnifying party fails to assume control of the defense of any third party claim as described above, the indemnified party shall have the exclusive right to contest, settle or pay the amount claimed. Whether or not the indemnifying party assumes control of the negotiation, settlement or defense of any third party claim, the indemnifying party shall not settle any claim without the written consent of the indemnified party, which consent shall not be unreasonably withheld or delayed; provided, however, that the liability of the indemnifying party shall be limited to the proposed settlement amount if any such consent is not obtained within a reasonable period of time for any reason.

3.    All other terms of the Original Agreement which are not in conflict with the provisions of this Amendment will remain unchanged and in full force and effect. In case of a conflict in the terms of the Original Agreement and this Amendment, the provisions of this Amendment will control.

The Parties acknowledge and accept the terms and conditions of this Amendment as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment will become operative on the Effective Date.

**SILICON GRAPHICS, INC.**

By: _Ly Obudik_____

TERRY OBERDANK
VP, TECHNOLOGY SOLUTIONS

*9-6-06*

**PINNACLE DATA SYSTEMS, INC.**

By: _Michael R_____

_MICHAEL R SAYRE_____
NAME (PRINT OR TYPE)

_PRESIDENT & CEO_____
TITLE

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 10, 2006, by and between **Silicon Graphics, Inc.** ("SGI") and **Platform Computing, Inc.** ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to Reseller Agreement, dated as of July 15, 2001, (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $52,912.41 (the "Claim"); and

**WHEREAS**, on or about August 2, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 477 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $89,349.18 (the "Asserted Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I. **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.  Payment of Cure Amount.** The Parties agree that the Cure Cost is $27,408.15 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.  Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.  Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.    No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.   Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein. and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.  Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.** **Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

        **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _Mark Millar_

Mark Millar
VP of Finance

Platform Computing, Inc.
3760 14th Avenue
Markham. Ontario Canada
L3R3T7

Telephone: (905) 948-8448

Dated: Aug 11 , 2006

By: _Kathy Lanterman_

Kathy Lanterman
SVP, CFO

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-1980

Dated: 8/16 , 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

### THIS AGREEMENT RELATING TO ASSUMPTION AND CURE

(the "Agreement") is made and entered into as of August 1, 2006, by and between Silicon Graphics, Inc. ("SGI") and Quickportal, Inc. ("Claimant" and, together with SGI, the "Parties").

### WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to a consulting agreement, dated as of September 15, 2005 (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $105,000.00 (the "Claim"); and

WHEREAS, on or about [ July 1 ], 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. [____] (the "Proof of Claim") asserting a general unsecured claim in the total amount of [$ 105,000 ] (the "Asserted Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.      **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

NY2:\1665548\02\ZPDK02!.DOC\74107.'0008

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is $52,500.00 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.    Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.**     **No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.**     **Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.**     **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.**     **Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.**     **Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.**     **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

3

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

[NAME] MADAN VALLURI
[TITLE] PRESIDENT

20794 Russell Lane
Saratoga, CA 95070-4821

Telephone: [408-868-3740]
Fax: [_____]

Dated: Aug 1, 2006

Rich Altmaier
SVP Engineering

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (650) 933-2056
Fax: (650) 933-[9128]

Dated: AUG.1, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of September 7, 2006, by and between Silicon Graphics, Inc. ("SGI") and Red Hat, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS,** SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS,** SGI and the Claimant are parties to an "Advanced Hardware Partner Program Agreement" dated as of April 30, 2004 and Amendment Number One to the Advanced Hardware Partner Program Agreement dated as of February 25, 2005, (collectively, the "Contract"); and

**WHEREAS,** the Contract will expire on its own terms on April 30, 2007, with the Debtors having an option to renew the Contract for a one year term; and

**WHEREAS,** on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS,** as listed in the Schedules, the Claimant holds certain pre-petition claims aggregating $106,589.63 (the "Pre-Petition Claim"); and

**WHEREAS,** under the terms of the Contract, the Debtor owes $228,750.00 in post-petition fees, payable in increments of $76,250.00 within forty-five days of the following invoice dates: July 30, 2006; October 30, 2006; and January 30, 2007 (the "Post-Petition Amounts"); and

**WHEREAS,** in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all pre-petition defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.      Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is $79,942.22 (the "Cure Amount"). The Cure Amount will cure only the Debtors' pre-petition defaults; the Debtors remain liable for payment in full of all Post-Petition Amounts as they become due under the Contract. The Pre-Petition Claim is hereby amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Pre-Petition Claim shall be fully and finally satisfied. Payment of the Cure Amount and the Post-Petition Amounts will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III.    Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.** **Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.** **No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.** **Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.** **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.** **Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.** **Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.** **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.** **Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.



Mark E. Cook
VP & Treasurer

Red Hat, Inc.
1801 Varsity Drive
Raleigh, North Carolina 27606

Telephone: 919-754-3700
Fax: 919-754-3704

Dated: _____, 2006

Dick Harkness
Vice President of Manufacturing

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View,    CA    94043-1351

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated: _____, 2006



# AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 1, 2006, by and between Silicon Graphics, Inc. ("SGI") and Satmetrix Systems, Inc. ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to an agreement identified as the "System Modification to Existing Program ID#: SIGR 9902A", dated as of April 1, 2004 (as amended, the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $17,851.00 (the "Claim"); and

**WHEREAS**, on July 5, 2006, Claimant received notice from the Bankruptcy Court of an unsecured claim in the amount of $17,581.00 which the Claimant does not dispute; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.     Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is $5,300.00 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V. No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI. Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII. Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX. Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X. Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

William C. Leetham
Chief Financial Officer

Terry Oberdank
Technology Solutions Vice President

Silicon Graphics, Inc.

950 Tower Lane, Suite 500
Foster City, CA  94404

1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (650) 227-8300
Fax: (650)-227-8301

Telephone: (650) 933-6296
Fax: (650) 933-[0230]

Dated: August 2, 2006

Dated: AUG. 8 , 2006

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 28, 2006, by and between Silicon Graphics, Inc. ("SGI") and Shared Technologies Inc. ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant (as successor to Allegiance CPE, Inc.) are parties to "Master Telecommunications Equipment Purchase/Maintenance Agreement, Platinum Services", dated as of July 11, 2002, and amendments (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating **$56,093.37** (the "Claim"); and

**WHEREAS**, the claimant did not file a proof of claim in the Bankruptcy cases; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I. Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

NY2:\1665848\02\ZPDK02!.DOC\74207 0008

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is **$28,046.69** (the "Cure Amount"). The Claim is hereby amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.     No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.     Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.     Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.     Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.     Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.     Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.**  The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _Denise Crane_

Name: _Denise Crane_

Shared Technologies, Inc.
1405 S. Belt Line Rd., Ste. 100
Coppell, Texas 75019-4955

Telephone: _972-462-5858_
Fax: _972-462-5805_

Dated: _8/31_, 2006

By: _____
David Fairbanks
VP, Information Services

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-1234
Fax: (650) 933-0845

Dated: _AUG 31_, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 30, 2006, by and between **Silicon Graphics, Inc.** ("SGI") and **SiegeWorks, Inc.** ("Claimant" and, together with SGI, the "Parties").

### WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to a transaction whereby SGI purchased Secure Computing licenses, maintenance and support from Claimant pursuant to Quote 10993 dated December 9, 2005, (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating **$19,620.00** (the "Claim"); and

**WHEREAS**, the claimant did not file a proof of claim in the Bankruptcy cases; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**1.     Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.    Payment of Cure Amount.** The Parties agree that the Cure Cost is $14,715.00 (the "Cure Amount"). The Claim is hereby amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.    Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.    No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.    Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.    Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.    Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.    Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.    Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: _Jeff Bennett_

SiegeWorks, Inc.
111 Lindbergh Ave, Suite F
Livermore, CA 94511

Telephone: _925- 963-6548_
Fax: _925-579-0125_

Dated: _August 29_, 2006

By: _____
David Fairbanks
VP, Information Services

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-1234
Fax: (650) 933-0845

Dated: _Aug 31_, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

THIS AGREEMENT RELATING TO ASSUMPTION AND CURE (the "Agreement") is made and entered into as of August 9, 2006, by and between Silicon Graphics, Inc. ("SGI") and Spherion Corporation ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to Silicon Graphics Independent Contractor Agreement, dated as of December 2, 2002 (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $98,623.83 (the "Claim"); and

WHEREAS, on or about June 26, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim Nos. 67 & 68 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $98,623.83 (the "Asserted Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.      **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II. Payment of Cure Amount.** The Parties agree that the Cure Cost is $29,600.00 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount, in full, as soon as practicable after the Effective Date, but in no event later than thirty (30) days after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III. Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV. Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.  No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.  Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.  Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.  Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.  Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.  Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Name: _Lauren Steel_

Title: _V.P. WEST REGION_

Spherion Corporation
2050 Spectrum Blvd.
Fort Lauderdale, FL 30009

Telephone: [925- 866-6103

Fax: [925-866-6722

Dated: _8 / 14_ , 2006

---

Dick Harkness
VP Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain    View,    CA    94043

Telephone: (715) 726 -7005
Fax: (715) 726 -7078

Dated: _Aug 15_ 2006

# AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August _30_, 2006, by and between Silicon Graphics, Inc. ("SGI") and Signal Perfection, Ltd. a/k/a SPL Integrated Solutions ("Claimant" and, together with SGI, the "Parties").

## W I T N E S S E T H

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to that certain Professional Services Master Subcontracting Agreement, dated as of May 3, 2000 (the "Master Agreement") and that certain Service Level Agreement, dated as of April 2, 2002 (the "Service Agreement," and together with the Master Agreement, the "Contracts"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant's claims against the Debtors aggregate $740,690.56 (the "Claim"); and

**WHEREAS**, on or about July 21, 2006, the Claimant filed two proofs of claim in the Bankruptcy Cases designated as Claim Nos. 210 and 211, which proofs of claim amended and superseded a previously filed proof of claim designated as Claim No. 49 (each a "Proof of Claim," and together the "Proofs of Claim"). Proof of Claim No. 210 asserted a general unsecured claim against SGI in the total amount of $234,722.19 and Proof of Claim No. 211 asserted a general unsecured claim against Silicon Graphics Federal, Inc. in the total amount of $505,968.37 (together, the "Asserted Claims"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contracts, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contracts in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.**     **Assumption of Contracts.**  Subject to and contemporaneously with the occurrence
of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of
Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the
"Plan"), SGI shall assume the Contracts.

**II.**    **Payment of Cure Amount.**  The Parties agree that the Cure Cost is $635,065.00
(the "Cure Amount").  The Claim and the Asserted Claims, as evidenced by the Proofs of
Claim, hereby are amended to the Cure Amount.  SGI shall pay the Cure Amount in
accordance with the following schedule:

| **Date** | **Amount** |
|---|---|
| Effective Date + 2 weeks | $300,000 |
| Effective Date + 4 weeks | $335,065 |

Upon payment of the Cure Amount, the Claim and the Asserted Claims, as evidenced by
the Proofs of Claim, shall have been fully and finally satisfied.  Payment of the Cure
Amount will be in full and final satisfaction of any and all Cure Costs or any other claims
(as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any
way relating to the Contracts.  Claimant will not request, require or insist upon nor shall it
be entitled to the payment of any other or additional amount or the provision by any of the
Debtors of any other form of assurance in connection with the assumption of the Contracts,
with all such acts or amounts expressly waived.  Claimant agrees to file any and all
amendments to its Proofs of Claim as may be requested by the Debtors to reflect the
foregoing agreement.

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of
the Bankruptcy Code) or possible claims by Claimant against the Debtors, including, but
not limited to those claims, demands, liabilities or causes of action arising out of or related
to causes of action and claims of any kind which Claimant may have or claim to have now
against any of the Debtors or any of the Debtors' estates existing or occurring prior to the
date of this Agreement under or related to the Contracts, whether the same are known,
unknown, or hereafter discovered or ascertained.  Claimant acknowledges that it is familiar
with the provisions of section 1542 of the Civil Code of the State of California, which
provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR
DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE
MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all
rights which it has under the provisions of section 1542 of the Civil Code of the State of
California, as well as under any other similar state or federal statute or common law
principle.

**III.**   **Avoidance Actions.**  The Debtors agree to waive their rights to assert a claim
against the Claimant pursuant to sections 544, 545, 546, 547, and 548 of the Bankruptcy
Code.

**IV.    Mechanic's Liens.** Claimant hereby represents that it has filed or recorded releases of the mechanic's liens asserted by the Claimant against certain of SGI's customers pursuant to the applicable and governing State law and agrees to release and forever discharge any and all mechanic's liens filed in connection with the Claim or the Asserted Claims against SGI's customers or the Debtors.

**V.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.   Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.  Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.     Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Nicholas A. Yancich
Chief Financial Officer
and EVP-Operations

Signal Perfection, Ltd.
a/k/a SPL Integrated Solutions
9180 Rumsey Road, Suite D-4
Columbia, MD 21045

Telephone: (410) 992-0998
Fax: (410) 992-0758

Dated: August 30, 2006

Richard E. Harkness
VP Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated: August 31, 2006

## AGREEMENT RELATING TO AMENDMENT, ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO AMENDMENT, ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of September 6, 2006, by and between Silicon Graphics, Inc. ("SGI") and Storage Technology Corporation ("Claimant" and, together with SGI, the "Parties").

### W I T N E S S E T H

**WHEREAS,** SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS,** SGI and the Claimant are parties to the "Multinational Maintenance Agreement", dated as of August 1, 2000, and amendments; and the "Remarketing Agreement Contract Number R55567" dated July 1, 1998, and amendments (collectively the "Contracts"); and

**WHEREAS,** on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS,** notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating **$820,289.42** (the "Claim"); and

**WHEREAS,** on or about August 3, 2006, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 508 (the "Proof of Claim") asserting a general unsecured claim in the total amount of **$820,289.42** (the "Asserted Claim"); and

**WHEREAS,** in connection with the Debtors' proposed assumption of the Contracts, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contracts in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.**     **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contracts as amended herein.

**II.**     **Payment of Cure Amount.** The Parties agree that the Cure Cost will be **$298,928.00** (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date but in no event later than twenty-one (21) days after the Effective Date. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims

-1-

(as such term is defined in section 101 (5) of the Bankruptcy Code arising under or in any way relating to the Contracts; provided that nothing herein shall satisfy, discharge or release SGI's obligation to pay for goods and services provided to or on behalf of SGI after commencement of the Bankruptcy Cases on the terms agreed to by the parties. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived, provided that nothing herein shall satisfy, discharge or release SGI's obligation to pay for goods and services provided to or on behalf of SGI after commencement of the Bankruptcy Cases on the terms agreed to by the parties. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.    General Unsecured Nonpriority Claim.** Subject to the assumption of the Contracts, the Claim and the Asserted Claim are amended to the amount of **$453,723.00** and Claimant shall retain an allowed general unsecured nonpriority claim totaling **$453,723.00** in Class 5 (General Unsecured Silicon Graphics Claims) under Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV.    Amendment of Contracts.** Concurrent with the assumption, each of the Contracts is amended to include the following terms:

- All amounts invoiced by Claimant in performance in accordance with either Contract shall be due on net 30 day terms, *i.e.*, payment in full is due within thirty (30) days of the date of the invoice. These payment terms shall govern notwithstanding any terms included in any purchase order submitted by SGI.

- Claimant's obligation to perform under either Contract is subject to an aggregate "Credit Limit" of **$500,000.00**. "Credit Limit" is the sum of all unpaid outstanding invoices. Claimant shall not be required to provide any services or ship any product that would cause the Credit Limit to exceed **$500,000.00**. SGI may not obligate Claimant to provide services or effect a product delivery that would otherwise cause the Credit Limit to be exceeded by making payment in advance.

- The foregoing terms supersede any conflicting terms of the Contracts or any purchase order submitted by SGI. Except as amended by the foregoing, the terms of the Contracts will remain in full force and effect.

**V.    Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.    Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

-2-

**VIII. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX. Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X. Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI. Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes arising under this Agreement prior to the Effective Date. Following the Effective Date, all disputes concerning the rights and obligations of the parties under the Contracts shall be resolved in accordance with the applicable provisions of the Contracts.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: Robert J Kelleher

Storage Technology Corporation
One StorageTek Drive
Louisville, Colorado 80028

Telephone: (650) 786-2525

Fax: (510) 212-4276

Dated: September 8, 2006

By: _____

James W Grieb
Sr. Director, Global Services Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (650) 933-2841
Fax: (650) 933-0320

Dated: SEPT, 2, 2006

-3-

# AGREEMENT RELATING TO ASSUMPTION AND CURE

THIS AGREEMENT RELATING TO ASSUMPTION AND CURE (the "Agreement") is made and entered into as of August 8, 2006, by and between Silicon Graphics, Inc. ("SGI") and Sun Microsystems, Inc. ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to "Technology License and Distribution Agreement" bearing LFI#80485 dated as of December 21, 2000, (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $85.000 (the "Claim"); and

WHEREAS, on or about August 3, 2006, the Claimant filed that certain proof of claim in the Bankruptcy Cases designated Claim No. 480 (the "Proof of Claim") asserting a general unsecured claim in the total amount of $250,000.00 (the "Asserted Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I. **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

II. **Payment of Cure Amount.** The Parties agree that the Cure Cost is $76,500 (the "Cure Amount"). The Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount twenty-one (21) days after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claim cure of a default under the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance on account of any alleged default or with respect to the Debtor's future performance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

III. **Due Authorization.** Each person who executes this Agreement represents that he or she is duly

authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**IV. No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**V. Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VI. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VII.Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**VIII. Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**IX. Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**X. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____
Robert Kelleher
Field Finance Credit Manager

Sun Microsystems, Inc.
4150 Network Circle
Santa Clara, CA 95054

Telephone: 650-786-2525
Fax:

Dated: August 16, 2006

By: _____
Kathy Lanterman
SVP, CFO

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain     View,     CA     94043-1340

Telephone: (650) 933-1980
Fax: 650-933-0298

Dated: 8/16 ,2006

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 10, 2006, by and between **Silicon Graphics, Inc.** ("SGI") and **Synopsys, Inc.** ("Claimant" and, together with SGI, the "Parties").

### W I T N E S S E T H

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties the Volume Purchase Agreement No. VPA-70003692-003 dated as of January 27, 2005, (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $375,000 (the "Claim"); and

**WHEREAS**, the Claimant did not file a proof of claim in the Bankruptcy Cases; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the Contract, the Parties have further agreed to amend the Contract as set forth in Schedule A hereto (collectively, the "Amendments").

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.**   **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is **$131,250.00** (the "Cure Amount"). The Claim is amended to the Cure Amount. SGI shall pay the Cure Amount three (3) weeks from the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III.    Amendments to the Contract.** The Contract shall be amended as of the Effective as set forth in "Amendment to Volume Purchase Agreement" dated August 10, 2006, and attached hereto as Schedule A. Schedule A expressly is made part of this Agreement and the Contract as if set forth herein and therein at length.

**IV.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant (except as set forth in the first paragraph of Page 3 of this Agreement), including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

2

Notwithstanding any language in the contrary in this Agreement, this Agreement is not intended to release (a) any breach by Debtors that were not known to Claimant as of August 10, 2006, of any of the following provisions of the End User Software License Agreement executed by and between Debtor and Claimant effective February 13, 2002: Section 2 (GRANT OF RIGHTS) and all subsections thereto, including but not limited to Section 2.8 (License Restrictions); Section 7 (Confidentiality); or (b) any breach by Debtors that were not known to Claimant as of August 10, 2006 of Section 2 (License Grant) of the DesignWare Fee-Per-Use Cores supplement to said End User Software License Agreement executed by and between Debtor and Claimant effective July 28, 2005.

**V.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.    No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.   Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.    Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.     Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XII.   Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement.

To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

        **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: _Chi-Foon Chan_

Synopsys, Inc.
700 E. Middlefield Road
Mountain View, CA 94043

Telephone: _650-584-5000_
Fax: _650-584-1243_

Dated: _8/11/06_, 2006

By: _____
Rick Chapek
VP, Engineering

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: 715-726-4477
Fax: 715-726-8012

Dated: _August 11_, 2006

APPROVED BY SYNOPSYS
LEGAL DEPT.

4

# AMENDMENT TO VOLUME PURCHASE AGREEMENT

This Amendment ("Amendment") modifies Volume Purchase Agreement No. VPA-70003692-003 (the "VPA") effective as of January 27, 2005 by and between Silicon Graphics, Inc., a Delaware corporation with a principal place of business at 1500 Crittenden Lane, Mountain View, California 94043, ("SGI") and Synopsys, Inc., a Delaware corporation with a principal place of business at 700 E. Middlefield Road, mountain View, California 94043 ("Synopsys"). The effective date of this Amendment shall be August 10, 2006 ("Amendment Effective Date").

WHEREAS on May 8, 2006, SGI filed Chapter 11 Case No. 06-10977 (ALG);

WHEREAS the parties acknowledge that the VPA is an executory contract executed prior to the Chapter 11 filing;

WHEREAS SGI wishes to affirm the VPA, subject to the modifications as set forth in this Amendment, and Synopsys wishes to agree to said modifications;

NOW, THEREFORE, Synopsys and SGI agree as follows:

1.  Section 6.1 of the VPA is deleted, and replaced with the following new Section 6.1:

    Initial Order. The parties acknowledge that execution of the Amendment to this VPA by SGI and Synopsys will constitute placement of a non-cancelable purchase order by SGI in the amount of Eight Million Three Hundred Eighty-One Thousand Two Hundred and Fifty US dollars (US$8,381,250), exclusive of applicable taxes. SGI may issue a purchase order for administrative purposes to Synopsys consistent with this VPA (as amended), but any such purchase order is expressly not a condition nor a material element of this VPA. Synopsys reserves the right to reject any purchase order that is inconsistent with the terms and conditions set forth herein.

2.  The schedule of payments set forth in Section 6.2 of the VPA is hereby deleted, and replaced with the following new schedule of payment terms:

| Payment Due Date | | | |
|---|---|---|---|
| 7/15/2005 | | | $    375,000 |
| 10/15/2005 | | | 375,000 |
| 1/15/2006 | | | 375,000 |
| 7/15/2006 | | | 375,000 |
| 10/15/2006 | | | 467,500 |
| * | | | 131,250 |
| 4/15/2007 | | | 1,152,500 |
| 7/15/2007 | | | 657,500 |
| 10/15/2007 | | | 562,500 |
| 1/15/2008 | | | 562,500 |
| 4/15/2008 | | | 562,500 |
| 7/15/2008 | | | 562,500 |
| 10/15/2008 | | | 562,500 |
| 1/15/2009 | | | 562,500 |
| 4/15/2009 | | | 562,500 |
| 7/15/2009 | | | 535,000 |
| Total | | | $  8,381,250 |

* The fifth payment shown above, in the amount of $131,250, shall be subject to and take place in accordance with the terms of the Agreement Relating to Assumption and Cure being executed by the parties hereto contemporaneously with this Amendment.

4. Synopsys acknowledges receipt of the payments scheduled for July 15, 2005, October 15, 2005, January 15, 2006, and July 15, 2006. SGI acknowledges that Synopsys has delivered the Implementation CAD Seat Cluster and Continental WAN Technology Pool as described in Section 3 of the VPA.

5. SGI hereby represents and warrants that it has all power and authority to enter into this Amendment, notwithstanding the filing of Chapter 11 Case No. 06-10977 (ALG).

6. In the event SGI fails to make any payment according to the terms indicated herein, Synopsys shall have the right to accelerate the due date of all remaining payments and the entire outstanding balance shall be due and payable immediately upon receipt of written notice from Synopsys.

7. This Amendment may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Amendment may be executed by facsimile signature. A facsimile, telecopy or other reproduction of this Amendment may be executed by either party, and an executed copy of this Amendment may be delivered by either party by facsimile or similar instantaneous electronic transmission device pursuant to which the signature on behalf of such party can be seen, and such execution and delivery shall be considered valid, binding and effective for all purposes.

8. Except as modified hereby, all other provisions of the VPA shall remain in full force and effect.

IN WITNESS WHEREOF, each party has executed this document on the date(s) indicated below effective as of the Amendment Effective Date set forth in the first paragraph of this Amendment.

Silicon Graphics, Inc.

By _____

Name _____

Title  Acting - Sr. V.P Worldwide Sales

Date  8/11/06

SYNOPSYS, INC.

By  Rick Chapek

Name  Rick J. Chapek

Title  VP Engineering

Date  August 11, 2006

APPROVED BY SYNOPSYS
LEGAL DEPT.

# AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE** (the "Agreement") is made and entered into as of August 14, 2006, by and between Silicon Graphics, Inc. ("SGI") and United Properties LLC ("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to Real Estate Consulting Services Agreement, dated as of January 1, 2006 (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $13,723.67 (the "Claim"); and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

**I.**    **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

**II.**    **Payment of Cure Amount.** Subject to the assumption of the Contract the Parties agree that the Cure Cost is $7,000.00 (the "Cure Amount"). The Claim as evidenced by the Schedules or otherwise shall be amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure

Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III.** **Avoidance Actions.** Subject to the assumption of the Contract in accordance with the terms of this Agreement Relating to Assumption and Cure, any and all claims of SGI against the Claimant under Chapter 5 of the Bankruptcy Code are waived and released.

**IV.** **Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**V.** **Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.** **No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.** **Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII.** **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.** **Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.** **Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.** **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

3

**XII.  Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Name: <u>Kevin Farrell</u>
Title: <u>Executive Managing Director</u>

United Properties LLC
3500 American Blvd W, Suite 200
Minneapolis, MN 55431

Telephone: 952-893-8229
Fax: 952-893-8280

Dated: _August 14_ 2006

David Fairbanks
VP, Facilities/Information Services

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043-1351

Telephone: (650) 933-1234
Fax: (650) 933-0845

Dated: _August 15_, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE**
(the "Agreement") is made and entered into as of August 25, 2006, by and between Silicon
Graphics, Inc. ("SGI") and Versata Computer Industry Solutions, Inc., formerly known as
Trilogy Computer Industry Solutions, Inc. and Trilogy Computer Industry Solutions, Inc.
("Claimant" and, together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries
(collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11
of the United States Code (the "Bankruptcy Code") that are pending before the Honorable
Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court"), which cases are being jointly administered for procedural
purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to Amendment to License
Schedule #6 and Assignment Order #30, dated as of June 15, 2005, (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the
Bankruptcy Court its schedules of assets and liabilities, schedules of current income and
expenditures, schedules of executory contracts and unexpired leases, and statements of
financial affairs, as such schedules and statements may be supplemented or amended from
time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the
Debtors currently believe that the Claimant holds certain claims aggregating $632,967.03
(the "Claim"); and

**WHEREAS**, on or about August 7, 2006, the Claimant filed that certain
proof of claim in the Bankruptcy Cases designated Claim No. 654 (the "Proof of Claim")
asserting a general unsecured claim in the total amount of $632,967.03 (the "Asserted
Claim"); and

**WHEREAS**, in connection with the Debtors' proposed assumption of the
Contract, the Parties have agreed to fix the amount that must be paid to cure any and all
defaults under the Contract in connection with such assumption in accordance with section
365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained
in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and
promises set forth herein, and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally
bound, hereby agree as follows:

**I. Assumption of Contract.** Subject to and contemporaneously with the occurrence of
the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of
Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the

"Plan"), SGI shall assume the Contract. In the event that the Plan is not confirmed or the Effective Date does not occur, this Agreement shall not be binding upon the Parties.

**II.    Payment of Cure Amount.**    The Parties agree that Claimant shall accept $395,835.00 (the "Cure Amount") in satisfaction of the Cure Cost. Upon the Effective Date, the Claim and the Asserted Claim as evidenced by the Proof of Claim hereby are amended to the Cure Amount. SGI shall pay the Cure Amount in accordance with the following schedule:

| Date | Amount |
|------|--------|
| **Effective Date + 2 weeks** | **$79,000** |
| **Effective Date + 4 weeks** | **$79,000** |
| **Effective Date + 6 weeks** | **$79,000** |
| **Effective Date + 7 weeks** | **$79,000** |
| **Effective Date + 9 weeks** | **$79,835** |

Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract except for SGI's continuing obligations under the Contract and as provided herein. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III. Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**IV. No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**V.Construction.** The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of

the Parties.

**VI. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VII. Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**VIII. Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**IX. Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**X. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

      **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: _____ , CFO

Versata Computer Industry Solutions, Inc.
6011 West Courtyard Drive
Austin, TX 78730
voice: 1.512.874.3100
fax: 1.512.874.8900

Dated: _Aug 28_, 2006

By: _____

By: _____
David Fairbanks
VP, Information Services

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain   View,   CA   94043-1351

Telephone: (650) 933-1234
Fax: (650) 933-0845

Dated: _8/28/06_, 2006

Approved
SGI Legal
ER

3

Name: _Sean Faller_

Trilogy Computer Industry Solutions, Inc.
6011 West Courtyard Drive

Austin, TX 78730

voice: 1.512.874.3100

fax: 1.512.874.8900

Dated: Aug 28, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

THIS AGREEMENT RELATING TO ASSUMPTION AND CURE (the "Agreement") is made and entered into as of August 16, 2006, by and between Silicon Graphics, Inc. ("SGI") and Voltaire, Incorporated ("Claimant" and, together with SGI, the "Parties").

### WITNESSETH

WHEREAS, SGI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are pending before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

WHEREAS, SGI and the Claimant are parties to Supplier Agreement, dated as of January 20, 2004, (the "Contract"); and

WHEREAS, on June 21, 2006, each of the Debtors filed with the Bankruptcy Court its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs, as such schedules and statements may be supplemented or amended from time to time (collectively, the "Schedules"); and

WHEREAS, notwithstanding anything to the contrary in the Schedules, the Debtors currently believe that the Claimant holds certain claims aggregating $128,372 (the "Claim"); and

WHEREAS, the Claimant did not file a proof of claim in the Bankruptcy Cases; and

WHEREAS, in connection with the Debtors' proposed assumption of the Contract, the Parties have agreed to fix the amount that must be paid to cure any and all defaults under the Contract in connection with such assumption in accordance with section 365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained in this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

I.      **Assumption of Contract.** Subject to and contemporaneously with the occurrence of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the "Plan"), SGI shall assume the Contract.

II.     **Payment of Cure Amount.** The Parties agree that the Cure Cost is $80,000 (the

"Cure Amount"). Except as set out in Section III below, the Claim is amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied, except as set out in Section III below. Except as set out in Section III below, payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract as of or prior to the date of this Agreement. Except as set out in Section III below, Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III. General Unsecured Nonpriority Claim.** Claimant shall retain an allowed general unsecured nonpriority claim totaling $48,372.00 in Class 5 (General Unsecured Silicon Graphics Claims) under Debtors' Plan, which shall be satisfied in accordance with the terms and conditions of the Plan.

**IV. Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**V. Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto

2

and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**VI.**   **No Admissions.**   Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VII.**   **Construction.**   The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VIII. Entire Agreement.**   This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**IX.**   **Counterparts; Facsimile Signatures.**   This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**X.**   **Choice of Law.**   This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**XI.**   **Successors and Assigns.**   This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

3

**XII.**   **Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

By: _____

Name: _MARK FAVREAU_____

Voltaire, Incorporated
6 Fortune Drive
Billerica, MA 01821

Telephone: _978-439-5454_____
Fax: _978-439-5401___

Dated: _08-21_, 2006

By: _____
Dick Harnkness
VP, Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated: _9/18_, 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE**
(the "Agreement") is made and entered into as of August 27, 2006, by and between
Silicon Graphics, Inc. ("SGI") and Wild Open Source Corporation ("Claimant" and,
together with SGI, the "Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries
(collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11
of the United States Code (the "Bankruptcy Code") that are pending before the Honorable
Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court"), which cases are being jointly administered for procedural
purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to Altix Cluster Solution
Vendor Agreement, dated as of June 5, 2004 (the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the
Bankruptcy Court its schedules of assets and liabilities, schedules of current income and
expenditures, schedules of executory contracts and unexpired leases, and statements of
financial affairs, as such schedules and statements may be supplemented or amended from
time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the
Debtors currently believe that the Claimant holds certain claims aggregating $8,639.90 (the
"Claim"); and

**WHEREAS**, the Claimant did not file a proof of claim in the Bankruptcy
Cases; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the
Contract, the Parties have agreed to fix the amount that must be paid to cure any and all
defaults under the Contract in connection with such assumption in accordance with section
365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained
in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and
promises set forth herein, and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally
bound, hereby agree as follows:

**I.**     **Assumption of Contract.** Subject to and contemporaneously with the occurrence
of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of
Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the
"Plan"), SGI shall assume the Contract.

**II.**    **Payment of Cure Amount.** The Parties agree that the Cure Cost is $7,061.92 (the

"Cure Amount"). The Claim is hereby amended to the Cure Amount. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived.

**III.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

This Agreement is intended to cover all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or possible claims by Claimant, including, but not limited to those claims, demands, liabilities or causes of action arising out of or related to the Released Claims, whether the same are known, unknown, or hereafter discovered or ascertained. Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.

**V.     No Admissions.** Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.     Construction.** The Parties hereto hereby mutually acknowledge and represent that

2

they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.    Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.   Counterparts; Facsimile Signatures.** This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.    Choice of Law.** This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

3

**XI. Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

       **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

_____

Henry Hall
President

Wild Open Source
25 Mall Road, Suite 300
Burlington, MA 01803

Telephone: 781 238-0243
Fax: 176 371-0731

Dated: 8/24/ , 2006

_____

Terry Oberdank
VP Technology Solutions

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (650) 933-6296
Fax: (650) 933-0230

Dated: 8-30 , 2006

4

## AGREEMENT RELATING TO ASSUMPTION AND CURE

**THIS AGREEMENT RELATING TO ASSUMPTION AND CURE**
(the "Agreement") is made and entered into as of August ___, 2006, by and between
Silicon Graphics, Inc. ("SGI") and Xyratex ("Claimant" and, together with SGI, the
"Parties").

## WITNESSETH

**WHEREAS**, SGI and certain of its direct and indirect subsidiaries
(collectively, the "Debtors") are debtors in possession in cases under chapter 11 of title 11
of the United States Code (the "Bankruptcy Code") that are pending before the Honorable
Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court"), which cases are being jointly administered for procedural
purposes only under lead case number 06-10977 (BRL) (the "Bankruptcy Cases"); and

**WHEREAS**, SGI and the Claimant are parties to a Purchasing Agreement,
dated as of August 29, 2003 (as amended, the "Contract"); and

**WHEREAS**, on June 21, 2006, each of the Debtors filed with the
Bankruptcy Court its schedules of assets and liabilities, schedules of current income and
expenditures, schedules of executory contracts and unexpired leases, and statements of
financial affairs, as such schedules and statements may be supplemented or amended from
time to time (collectively, the "Schedules"); and

**WHEREAS**, notwithstanding anything to the contrary in the Schedules, the
Debtors currently believe that the Claimant holds certain claims aggregating $922,150.48
(the "Claim"); and

**WHEREAS**, on or about August 1, 2006, the Claimant filed that certain
proof of claim in the Bankruptcy Cases designated Claim No. 378 (the "Proof of Claim")
asserting a general unsecured claim in the total amount of $942,866.48 (the "Asserted
Claim") and also asserting, *inter alia*, that $173,007.00 of the Asserted Claim constitutes
an administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code; and

**WHEREAS**, in connection with the Debtors' proposed assumption of the
Contract, the Parties have agreed to fix the amount that must be paid to cure any and all
defaults under the Contract in connection with such assumption in accordance with section
365(b)(1) of the Bankruptcy Code (the "Cure Cost") on the terms and conditions contained
in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants and
promises set forth herein, and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally
bound, hereby agree as follows:

**I.**     **Assumption of Contract.** Subject to and contemporaneously with the occurrence
of the effective date (the "Effective Date") of the Debtors' First Amended Joint Plan of
Reorganization Under Chapter 11 of the Bankruptcy Code (as may be further amended, the

"Plan"), SGI shall assume the Contract.

**II.     Payment of Cure Amount.** The Parties agree that the Cure Cost is $450,000 (the "Cure Amount"). Subject to and contemporaneously with the occurrence of the Effective Date, the Claim and the Asserted Claim as evidenced by the Proof of Claim shall be amended to the Cure Amount; provided, however, that if SGI does not pay to Claimant the Cure Amount, the Claim and the Asserted Claim shall be deemed equal to $922,150.48 and $942,866.48, respectively. SGI shall pay the Cure Amount as soon as practicable after the Effective Date. Upon payment of the Cure Amount, the Claim and the Asserted Claim shall have been fully and finally satisfied. Payment of the Cure Amount will be in full and final satisfaction of any and all Cure Costs or any other claims (as such term is defined in section 101(5) of the Bankruptcy Code) arising under or in any way relating to the Contract. Claimant will not request, require or insist upon nor shall it be entitled to the payment of any other or additional amount or the provision by any of the Debtors of any other form of assurance in connection with the assumption of the Contract, with all such acts or amounts expressly waived. Claimant agrees to file any and all amendments to its Proof of Claim as may be requested by the Debtors to reflect the foregoing agreement.

**III.     Release of the Debtors and the Debtors' Estates.** On the Effective Date, in consideration of, among other things, the obligation of SGI to pay the Cure Amount and except as otherwise provided herein, Claimant, on behalf of itself and its affiliates, shall be deemed to release, acquit, and forever discharge each of the Debtors and its respective estate, and each and every past and present shareholder, subsidiary, affiliate, officer, director, agent, insurer, servant, employee, representative, and attorney, from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever (other than the right to enforce SGI's obligation to pay the Cure Amount), known or unknown, fixed or contingent, which Claimant may have or claim to have now against any of the Debtors or any of the Debtors' estates existing or occurring prior to the date of this Agreement arising under or related to the Contract (the "Released Claims").

Claimant acknowledges that it is familiar with the provisions of section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Claimant expressly, knowingly, and intentionally waives and relinquishes any and all rights which it has under the provisions of section 1542 of the Civil Code of the State of California, as well as under any other similar state or federal statute or common law principle.

**IV.     Due Authorization.** Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions

hereof.

**V.     No Admissions.**  Should the Effective Date not occur for any reason, nothing contained herein shall constitute an admission or be admissible in any subsequent litigation among any of the Debtors and the Claimant.

**VI.     Construction.**  The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Agreement and the expressed intent of the Parties.

**VII.     Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

**VIII.     Counterparts; Facsimile Signatures.**  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  This Agreement may also be executed and delivered through counterpart signature pages transmitted by telecopier, facsimile, e-mail or other electronic means or media.

**IX.     Choice of Law.**  This Agreement shall be interpreted under, and construed in accordance with, the laws of the State of California.

**X.     Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, successors, and assigns, without limitation.

**XI.    Jurisdiction.** The Parties hereby submit to the jurisdiction of and venue in the Bankruptcy Court for all disputes and litigation arising under or relating to this Agreement. To the extent that the Bankruptcy Court determines that it lacks jurisdiction over any such dispute or litigation, such suit shall be brought in the United States District Court for the Northern District of California or the state courts in and for Santa Clara County, California, as applicable.

        **IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

[NAME]  *Richard  Pearce*
[TITLE]  *C. F. O.*

[CLAIMANT]  *Xyratex.*
[CLAIMANT'S ADDRESS]
*2031 Concourse Drive  San Jose CA 95131*
Telephone: [*408 894 0800*]
Fax: [*408 894 0820*]

Dated: *30 August* 2006

Dick Harkness
VP Manufacturing Operations

Silicon Graphics, Inc.
1200 Crittenden Lane
Mountain View, CA 94043

Telephone: (715) 726-7005
Fax: (715) 726-7078

Dated: *8/30* , 2006

4