**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11 Case No.** |
| | : | |
| **SILICON GRAPHICS, INC., et al.,** | : | **06 - 10977 (BRL)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

### STIPULATION AND AGREEMENT BETWEEN THE
### REORGANIZED DEBTORS AND CRAY INC. IN RESPECT OF
### CERTAIN CLAIMS AND ASSUMPTION OF AN EXECUTORY CONTRACT

RECITALS:

A.       On May 8, 2006 (the "Commencement Date"), Silicon Graphics,

Inc. ("Silicon Graphics") and its direct and indirect subsidiaries in the above-referenced

chapter 11 cases (collectively the "Cases"), as debtors and debtors in possession

(collectively, the "Debtors" and, as reorganized, the "Reorganized Debtors"), each

commenced with this Court a voluntary case under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code").  Throughout the Cases, the Debtors were

authorized to continue to operate their businesses and manage their properties as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.       On September 15, 2006, the Debtors filed with this Court their

First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,

dated July 27, 2006, as Modified (the "Plan").  On September 19, 2006, this Court

entered an order confirming the Plan.  On October 17, 2006, the Effective Date (as

defined in the Plan) occurred and the Debtors emerged from chapter 11.

C.        Prior to the Commencement Date, Silicon Graphics and Tera

Computer Company, the predecessor to Cray Inc. ("Cray"), executed that certain Asset

Purchase Agreement, dated as of March 1, 2000 (the "APA"), and that certain

Technology Agreement, dated as of March 31, 2000 (the "Technology Agreement"),

among other documents, pursuant to which, among other things, Cray acquired certain

assets from Silicon Graphics and the parties cross-licensed certain intellectual property.

D.        On or about August 7, 2006, Cray filed proof of claim number 656

against Silicon Graphics (the "Proof of Claim"), which asserts an unliquidated general

unsecured claim against Silicon Graphics relating to the APA and the Technology

Agreement.

E.        The Proof of Claim states, in part, that Silicon Graphics failed to

turn over certain documents relating to patent and real estate assets transferred to Cray

under the APA.  Cray has since located and identified the documents relating to the

patent and real estate assets transferred under the APA, and SGI has no further

obligations in respect of such patent and real estate documents.

F.        On or about August 29, 2006, the Debtors filed and served

Schedules 8.1(A) and (B) of the Plan, which are the lists of executory contracts and

unexpired leases assumed on the Effective Date.  Schedules 8.1(A) and (B) identify

proposed cure amounts with respect to the identified contracts and leases.  Schedule

8.1(A) of the Plan listed the Technology Agreement with a proposed cure amount of $0.

Pursuant to the Disclosure Statement Order (as defined in the Plan), objections to

proposed cure amounts listed in Schedules 8.1(A) and (B) were required to be filed by

September 18, 2006. On September 15, 2006, Cray filed an objection to assumption of the Technology Agreement (the "Objection").

G.     To resolve the dispute regarding the assumption of the Technology Agreement and any and all other claims Cray has asserted or could have asserted in the Cases (including, without limitation, the Proof of Claim), the Reorganized Debtors, the SGI/Cray Subsidiaries (as defined in paragraph 5 below) and Cray (collectively, the "Parties") agree to the terms of this stipulation and agreement (the "Stipulation"). Pursuant to section 7.4 of the Plan, the Reorganized Debtors have the authority to compromise, settle, or otherwise resolve claims against the Debtors without approval of the Court.

AGREEMENT:

NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED:

A.  **Agreements by Cray.**  In consideration of and subject to the agreements of the Reorganized Debtors and the SGI/Cray Subsidiaries set forth in part B below, Cray agrees, subject to approval of the Stipulation by the Bankruptcy Court, as follows:

1.     Technology Agreement.  Cray hereby withdraws the Objection with prejudice and agrees that the Technology Agreement was validly assumed by the Reorganized Debtors on the Effective Date pursuant to the Plan.  Cray further agrees not to request, require, or insist upon, nor shall it be entitled to the payment of, any amount or the provision by any of the Debtors or the Reorganized Debtors of any form of assurance in connection with the assumption of the Technology Agreement, with all such acts or

amounts expressly waived, provided, however, that the Technology Agreement, as amended, remains enforceable by Cray and Silicon Graphics.

2.      Other Agreements.  Cray agrees that all agreements entered into by the Debtors and Cray prior to the Commencement Date that are not expressly listed on Schedules 8.1(A) and (B) of the Plan, including, without limitation, the APA, were rejected as of the Effective Date pursuant to the Plan, and Cray waives any and all Claims (as defined in section 101(5) of the Bankruptcy Code) arising out of or related to such agreements and the rejection thereof.

3.      Disallowance of Claim.  Cray agrees to the disallowance and expungement of the Proof of Claim in its entirety, and the Proof of Claim is hereby disallowed and expunged in its entirety.  Cray agrees that it shall have no right to (i) modify or amend the Proof of Claim or (ii) file any other proofs of claim or otherwise assert any other Claims, including, without limitation, administrative, priority, or secured Claims, against the Debtors or the Reorganized Debtors arising prior to the Effective Date.

**B.  Agreements by the Reorganized Debtors and the SGI/Cray Subsidiaries.**

In consideration of and subject to the agreements of Cray set forth in part A above, the Reorganized Debtors and the SGI/Cray Subsidiaries agree, subject to approval of the Stipulation by the Bankruptcy Court, as follows:

4.      Patent License Back to Cray under Patents Assigned to Silicon Graphics.  Silicon Graphics agrees to authorize, execute and deliver to Cray an "Amendment No. 2 to the Technology Agreement" in the form of Exhibit A attached

hereto (the "Technology Agreement Amendment") upon Bankruptcy Court approval of this Stipulation.

5.      Trademarks.  Subject to the Covenant Not To Sue set out in section 3.1 of the Technology Agreement, Silicon Graphics agrees to comply as soon as practicable, and remain in compliance, with the provisions of the APA and the Technology Agreement related to trademark rights assigned to Cray in the APA and the Technology Agreement to the extent such trademark rights existed as of the Commencement Date.  In furtherance and not limitation of the foregoing, the Reorganized Debtors and SGI/Cray Subsidiaries agree that, to the extent that any of them or their subsidiaries or affiliates is using the "Cray" name in association with or as part of its legal name or any trade name, they will cease or cause their subsidiaries or affiliates to cease their use of the "Cray" name as soon as practicable, and in any event by no later than December 31, 2008.  On the date of this Stipulation the Reorganized Debtors are aware of the following subsidiaries or affiliates to which such commitment to cease use of the "Cray" name applies:  Cray Research Limited, Cray Research (Canada), Cray Research (Israel), Cray Foreign Sales Corporation, Ltd. (Jamaica), Cray Research, L.L.C., Cray Research America Latina Ltd., Cray Research Eastern Europe Ltd., Cray Research India Ltd., Cray Research International, Inc., Cray Financial Corporation, and Cray Asia/Pacific, Inc. (collectively, to the extent not included in the Reorganized Debtors, the "SGI/Cray Subsidiaries").  Silicon Graphics and the Reorganized Debtors are currently not aware of any other subsidiaries or affiliates that use the "Cray" name in any manner.  In the event that Silicon Graphics or the Reorganized Debtors discover that there are additional subsidiaries or affiliates of Silicon Graphics or the Reorganized

Debtors using the "Cray" name, Silicon Graphics or the applicable Reorganized Debtor

will cause each such subsidiary or affiliate to cease such use of the "Cray" name within

six months of discovering such use.

6.     Additional Trademark and Patent Issues.  The Reorganized

Debtors agree to cooperate with Cray to effect the assignment and recording of the

following trademarks, both of which are to be recorded with the Russian trademark and

patent authority: (i) "Cray," Russian Federation registration no. 143242; (ii) "UNICOS,"

Russian Federation registration no. 142792.  The Reorganized Debtors further agree to

cooperate with Cray to effect the assignment and recording of one Japanese patent,

Japanese Patent no. JP3789937B2, docket no. 426JP1, which will be filed with the

Japanese patent authority.

7.     ISP Agreement.  The Reorganized Debtors agree to cooperate with

Cray to effect the transfer of the following Internet Protocol address block to Cray:

Internet Protocol version 4 address block 147.219.0.0-147.219.255.255, more commonly

known as IPv4 Network, Block NET-147-219-0-0-1 (the "IP Block").  Such cooperation

shall include, but not be limited to, executing Internet Service Provider registrations.

Cray will bear all costs and expenses incurred, and shall be solely responsible for all

required filings, in connection with the transfer of the IP Block.

8.     Further Assurances and Dispute Resolution.  Notwithstanding

Cray's agreement that the APA has been rejected by the Reorganized Debtors, Silicon

Graphics agrees that, from time to time after the date hereof, at the request of Cray and

without further consideration, Silicon Graphics will execute and deliver such other

instruments of transfer and take such other actions as Cray may reasonably require to

transfer the Assets (as defined in the APA) to, and vest title to the Assets in, Cray, and to put Cray in possession of the Assets. Silicon Graphics further agrees that the dispute resolution procedures set forth in paragraph 29 of the APA shall survive rejection of the APA to the extent that they are incorporated by reference in the Technology Agreement.

### C. **Mutual Agreements.**

9. Release. The Reorganized Debtors and Cray forever waive and release each other and all of their respective subsidiaries, affiliates, and successors in interest and all of their former, current, and future officers, directors, employees, attorneys, representatives, agents, and advisors from any and all claims or causes of action, whether known or unknown, in connection with, arising out of, or relating to the APA, the Technology Agreement, or any other document executed by the Parties in connection therewith as of the date of this Stipulation; provided, however, that notwithstanding anything herein to the contrary, nothing in this Stipulation shall release any claims or causes of action arising under the terms of this Stipulation.

10. Successors and Assigns. This Stipulation shall be binding upon and inure to the benefit of the assigns, representatives, heirs, and successors of the Parties hereto.

11. Modifications. This Stipulation can only be amended or otherwise modified by a signed writing executed by the Parties hereto.

12. Prior Agreements. This Stipulation contains the entire agreement between the Parties and supersedes all prior agreements and undertakings between the Parties relating to the subject matter hereof.

13.       <u>Further Assurances.</u>  Each Party to this Stipulation shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Stipulation.

14.       <u>Attorneys' Fees.</u>  Each Party shall be responsible for its respective costs and expenses (including, without limitation, attorneys' fees) incurred by it in negotiating, drafting, and executing this Stipulation and shall not be responsible for the payment of any such fees or costs incurred by any other party hereto.

15.       <u>Governing Law and Forum.</u>  Paragraphs 1 through 3 of this Stipulation shall be governed by, interpreted, and enforced exclusively by the United States Bankruptcy Court for the Southern District of New York in accordance with the laws of the State of New York.  The other terms of this Stipulation shall be governed by and interpreted under the substantive laws of the State of California, and any dispute concerning such other terms shall be subject to the dispute resolution procedures set forth in paragraph 29 of the APA.

16.       <u>Authorization.</u>  Each person who executes this Stipulation represents that he or she is duly authorized to execute this Stipulation on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to the terms and provisions hereof.  Each of the Reorganized Debtors further represents that it is duly authorized to execute this Stipulation pursuant to the applicable provisions of the Bankruptcy Code, the Plan and/or other orders entered in the Cases.

17.       <u>Headings.</u>  The headings of this Stipulation have been included only for convenience and shall not be deemed in any manner to modify or limit any of the

provisions of this Stipulation or be used in any manner in the interpretation of this Stipulation.

18.      <u>Drafting Ambiguities.</u>  Each Party and its legal counsel have reviewed and revised this Stipulation.  The rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Stipulation or any addendums, amendments, or exhibits to this Stipulation.

19.     Counterparts.  This Stipulation may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copy, copies, or facsimiles signed by the Parties hereto to be charged.

Dated: April 9, 2007
New York, New York

/s/ Stephen A. Youngman
Gary T. Holtzer, Esq. (GH 7732)
Stephen A. Youngman, Esq. (*pro hac vice*)
Shai Y. Waisman, Esq. (SW 6854)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Reorganized Debtors
and SGI/Cray Subsidiaries

Dated: April 6, 2007
Seattle, Washington

/s/ David B. Levant
David B. Levant, Esq. (WSBA No. 20528)
Erin L. Eliasen, Esq.  (EE 6682)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500

Attorneys for Cray Inc.

SO ORDERED:
this 23rd day of April, 2007

/s/Burton R. Lifland
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## Amendment No. 2 to the Technology Agreement

The Amendment No. 2 (the "Amendment") is dated as of March 30, 2007 by and between Cray Inc., a Washington corporation ("Purchaser"), and Silicon Graphics, Inc. a Delaware corporation ("Seller").

WHEREAS, the Purchaser and Seller entered into a Technology Agreement dated March 31, 2000;

WHEREAS, the Purchaser and Seller desire to amend certain provisions of the Technology Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants and conditions contained herein, the parties hereby agree as follows:

1.  Section 2.20 of the Technology Agreement, which relates to "Duty to Maintain Patents and Non-Patent Intellectual Property," is hereby replaced in its entirety with the following:

Section 2.20. <u>Duty to Maintain Patents and Non-Patent Intellectual Property and License-Back.</u>  In the event that the Purchaser decides not to file a Patent application or to abandon the prosecution of any such Patent application or not to maintain any granted Patent that is assigned to the Purchaser under this Technology Agreement, Purchaser will (i) notify the Seller within a reasonable time to permit the Seller to continue such prosecution or maintain such Patent (at the Seller's expense), and (ii) assign to the Seller the right, title and interest in and to such Patents ("Purchaser-Assigned Patents"). Purchaser shall take commercially reasonable actions necessary to maintain the validity and enforceability of the Non-Patent Intellectual Property Rights assigned to it herein. Seller grants back to the Purchaser, solely under such Purchaser-Assigned Patents assigned to Seller, a nonexclusive, royalty-free, fully-paid, non-assignable, worldwide license, without the right to grant sublicenses to others, to make, have made, use, import and sell any products branded with the Purchaser's Trademarks or designed with the substantial input of the Purchaser (collectively, "Purchaser-Branded Products"), and to practice any method of manufacture in connection with the Purchaser-Branded Products.

2.  This license back does not modify in any way any other Patent or Intellectual Property Right license between the Purchaser and the Seller and is subject to all other terms and conditions of the Technology Agreement, including the prohibition on the use of this license for foundry activities as set out at Section 2.21 of the Technology Agreement.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the date and year first above written.

CRAY INC.

By: _____

Its: _____

SILICON GRAPHICS, INC.

By: _____

Its: _____